## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAWN ANGELIQUE RICHARD, <br><br> Plaintiff, <br><br> v. <br><br> SEAN COMBS, HARVE PIERRE, REMOTE PRODUCTIONS INC, NEW REMOTE PRODUCTIONS INC, THE NORDLINGER GROUP LLC, NOVEMBER 15 LLC, DADDY'S HOUSE RECORDING STUDIO, BAD BOY ENTERTAINMENT LLC, BAD BOY RECORDS LLC, BAD BOY ENTERTAINMENT HOLDINGS INC, BAD BOY PRODUCTIONS HOLDINGS INC, BAD BOY BOOKS HOLDINGS INC, THE SEAN COMB MUSIC INC, SEAN COMBS CAPITAL LLC, COMBS ENTERPRISES, LLC, UNIVERSAL MUSIC GROUP NV,  INTERSCOPE GEFFEN A&M RECORDS, DIAGEO AMERICAS SUPPLY INC D/B/A CIROC DISTILLING COMPANY D/B/A CIROC CANNING CO, COMBS WINES AND SPIRITS LLC, JANICE COMBS PUBLISHING INC, JANICE COMBS PUBLISHING HOLDINGS INC, SONY SONGS, a division of SONY MUSIC PUBLISHING LLC, LOVE RECORDS INC,  EPIC RECORDS, DOE CORPORATIONS  1-10, AND DOE DEFENDANTS 11-20, <br><br> Defendants. | CIVIL CASE NO. cv-24-6848 <br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

Plaintiff Dawn Angelique Richard ("Ms. Richard"), by and through her attorneys, The Bloom Firm and IP Legal Studio LLC, brings this action against Defendants.  Ms. Richard alleges upon knowledge concerning her own experience and upon information and belief as to all other matters.

## PRELIMINARY STATEMENT

1.       Dawn Angelique Richard, known professionally as Dawn Richard, is an American musician, singer, songwriter, and performer. She gained widespread recognition as a member of

the girl group *Danity Kane*, formed by Defendant Sean Combs ("Mr. Combs"), and later transitioned into a key member of Mr. Combs' band *Diddy – Dirty Money.*

2.      Defendant Sean Combs, a once-celebrated hip-hop mogul popularly known by his stage names Puff Daddy, Puffy, P. Diddy, Diddy, or Love, skyrocketed to fame in the late 1990s and became a powerful and enduring figure in the music and entertainment industry. In 1998, Mr. Combs explained the origins of his stage name in a *USA Today* interview: his nickname was "**Puff**" because he had a "**temper**" and was known to "**huff and puff**" when he was angry.

3.      Over the decades following his rise to fame, Mr. Combs' star-studded, larger-than-life persona overshadowed his vicious temper and pervasive acts of violence directed towards those in his inner circle – specifically, women.

4.      Mr. Combs' namesake temper frequently manifested in physical violence. Mr. Combs regularly hurled objects in fits of rage, often throwing items such as mobile phones, laptops, food, and studio equipment across the room or at people. On numerous occasions, Ms. Richard witnessed Mr. Combs brutally beat his girlfriend, Ms. Casandra ("Cassie") Ventura ("Ms. Ventura"). His persistent abuse included choking and strangling Ms. Ventura, striking her with his hands and with objects, slapping her, punching her, and throwing items at her, including a scalding hot pan.

5.      On many occasions, Ms. Richard tried to intervene, offering Ms. Ventura support and encouragement to leave Mr. Combs. Each time, Mr. Combs learned of her efforts to help Ms. Ventura and became enraged, threatening Ms. Richard's life with statements such as "**you want to die today,**" "**I make n***** go missing**" and "**I end people.**"

6.      Compounding Mr. Combs' violent acts and death threats, he flagrantly exploited Ms. Richard's musical talent as a singer and writer while withholding her rightful earnings, stealing her copyrighted works, and subjecting her to years of inhumane working conditions which included groping, assault, and false imprisonment, among other violations.

7.      For nearly a decade, Mr. Combs manipulated Ms. Richard with mantras that submission to his depraved demands was necessary for career advancement, instilling in her the belief that such abuse and exploitation were required for female artists to succeed in the music industry. It was not until Ms. Ventura's bravery in coming forward that Ms. Richard realized her own personal suffering was tied to the many years of abuse by Mr. Combs that had become normalized for her.

8.      As more women courageously come forward, Plaintiff has been empowered by this collective strength and now adds her voice to the growing chorus of victims bravely sharing their harrowing stories. Together, they seek justice and stand in solidarity, as the latest victims of the #Me Too movement in the music industry.

## PARTIES

9.      Ms. Dawn Angelique Richard is a resident of the State of California and was employed by Defendants Remote Productions Inc., New Remote Productions Inc., Bad Boy Entertainment LLC, Bad Boy Records LLC, Bad Boy Entertainment Holdings LLC, Bad Boy Productions Holdings Inc., Bad Boy Books Holdings Inc., The Sean Comb Music Inc., Sean Combs Capital LLC, and Combs Enterprises LLC (hereinafter collectively "Bad Boy Records") from 2005 until 2012. At all relevant times herein, Ms. Richard met the definition of an "employee" of Defendant Bad Boy Records and related entities. At all relevant times herein, Ms. Richard was a resident of the State of New York.

10.      Defendant Sean Combs, upon information and belief, resides within the State of California. At all relevant times herein, Mr. Combs met the definition of an "employer" of Ms. Richard under all relevant statutes.

11.      Defendant Harve Pierre ("Mr. Pierre"), upon information and belief, resides within the state of New Jersey. At all times relevant herein, Defendant Harve Pierre was the president of

Bad Boy Entertainment and Bad Boy Records in New York and met the definition of an "employer" of Ms. Richard under all relevant statutes.

12.     Defendants Remote Productions Inc. ("RPI") and New Remote Productions Inc. ("NRPI") are Delaware corporations and television production companies, which upon information and belief, were created by Mr. Combs to produce *Making The Band* in New York and in California. At all relevant times herein, RPI and NRPI employed Ms. Richard under all relevant statutes.

13.     Defendant The Nordlinger Group LLC is a finance firm with its principal place of business in New York, and on information and belief, is/was employed by other named defendants herein to pay and account to Ms. Richard pursuant to her employment with other named defendants.  On information and belief, The Nordlinger Group LLC formed November 15 LLC for purposes of disbursing funds relative to *Making The Band.*

14.      Upon information and belief, Defendant Daddy's House Recording Studio Inc. is a New York corporation and a music recording studio owned by Defendant Bad Boy Records, in New York.  At all relevant times herein, Ms. Richard was an employee required to work at said studio.

15.     Defendant Bad Boy Entertainment LLC is a music, media, and entertainment company founded by Defendant Sean Combs, which includes the record label Defendant Bad Boy Records LLC. Defendant Bad Boy Entertainment LLC is a Delaware limited liability company and successor-in-interest to RPI. At all relevant times herein, Bad Boy Entertainment LLC met the definition of an "employer" of Ms. Richard under all relevant statutes.

16.     Defendant Bad Boy Entertainment Inc. is a Florida corporation.  At all relevant times herein, Bad Boy Entertainment Inc. met the definition of an "employer" of Ms. Richard under all relevant statutes.

17.    Defendant Bad Boy Entertainment Holdings Inc. is a New York corporation. Upon information and belief, Defendant Bad Boy Entertainment Holdings Inc. is a successor-in-interest to Defendants Bad Boy Entertainment LLC, Bad Boy Records LLC, and Bad Boy Entertainment Inc. as alleged herein.

18.    Defendant Bad Boy Productions Holdings Inc. is a New York corporation.  Upon information and belief, Defendant Bad Boy Production Holdings Inc. is a successor-in-interest to other "Bad Boy" Defendants as alleged herein.

19.    Defendant Bad Boy Books Holdings Inc. is a New York corporation.  Upon information and belief, Defendant Bad Boy Books Holdings Inc. is a successor-in-interest to other "Bad Boy" Defendants as alleged herein.

20.    Defendant The Sean Comb Music Inc. is a company under which Ms. Richard was employed by Defendant Sean Combs.  Upon information and belief, The Sean Comb Music Inc. is a part or successor to other "Bad Boy" company Defendants as alleged herein.

21.    Defendants Sean Combs Capital LLC and Combs Enterprises LLC are New York limited liability companies, which upon information and belief are successor-in-interest companies to Defendant The Sean Comb Music, Inc.

22.    Defendant Universal Music Group N.V. ("UMG") is a Dutch–American multinational music corporation. UMG's corporate headquarters are located in Hilversum, Netherlands and its operational headquarters are located in Santa Monica, California.  Defendant Interscope Geffen A&M Records are subsidiaries of UMG, with operational headquarters in California.  At all relevant times herein, UMG and subsidiaries Interscope Geffen A&M Records financially benefited from, condoned and enabled Defendant Combs' misconduct as defined under all relevant statutes.

23.    Defendant Diageo Americas Supply Inc. was a New York corporation, and upon information and belief, currently is a Kentucky and/or an Illinois corporation, doing business as

Ciroc Distilling Company in New York. Ms. Richard conferred a benefit on these Defendants pursuant to the direction of Defendant Combs.

24.      Defendant Combs Wines and Spirits LLC is a New York limited liability company, which upon information and belief, is Defendant Combs' holding company for sponsorships by Defendant Diageo Americas Supply Inc. d/b/a Ciroc Distilling Company. At all relevant times, Ms. Richard was employed by Defendant Combs Wines and Spirits LLC under all relevant statutes.

25.      Defendant Janice Combs Publishing Inc. is a music publishing administrator and a New York corporation, who at all relevant times, held or holds the publishing copyrights of Ms. Richard pursuant to her employment with other defendants herein under all relevant statutes.

26.      Defendant Janice Combs Publishing Holdings Inc. is a music publishing administrator, a New York corporation, and a successor in interest to Janice Combs Publishing Inc., who at all relevant times, held or holds the publishing copyrights of Ms. Richard pursuant to her employment with other defendants herein under all relevant statutes.

27.      Defendant Sony Songs, a division of Sony Music Publishing LLC, is a New York limited liability company who is the assignee of Ms. Richard's publishing copyrights from Defendants Janice Combs Publishing Inc. and Janice Combs Publishing Holdings Inc.

28.      Defendant Love Records Inc. is a music record label owned and/or, upon information and belief, controlled by Defendant Sean Combs, with its principal place of business in California. Ms. Richard conferred a benefit on this Defendant pursuant to the direction of Defendant Combs.

29.      Defendant Epic Records, a record label currently managing other defendants' companies, interests and music, is a subsidiary of Sony Music Entertainment, with its principal place of business in New York. Ms. Richard conferred a benefit on these Defendants pursuant to the direction of Defendant Combs.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, as this action asserts violations of 18 U.S.C. § 1591 *et seq*., 18 U.S.C. § 1589 *et seq*., and 17 U.S.C. § 106 *et seq*., and therefore raises federal questions regarding the deprivation of Ms. Richard's rights. The Court has supplemental jurisdiction over Ms. Richard's related claims arising under state and city law pursuant to 28 U.S.C. § 1367(a).

31.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this District, and Defendants Sean Combs and Bad Boy Records conduct substantial business and/or are domiciled in this District.

## FACTUAL ALLEGATIONS

I.     **Ms. Richard is selected to be in Mr. Combs' all-female musical group *Danity Kane* after competing on MTV's *Making The Band***

32.     In or around 2004, Ms. Richard was selected to participate in Season 3 of MTV Networks' reality television show, *Making The Band*. The show centered around the formation and development of a new musical group under the mentorship of Mr. Combs. The contestants would compete and be chosen by Mr. Combs to form a band, which would go on to create albums and perform.

33.     For aspiring artists like Ms. Richard, *Making The Band* represented a concrete path to a career in the entertainment industry. Ms. Richard appeared in Seasons 3 and 4 of *Making The Band*, which first aired in 2005,[1] and in Season 5 of *Making His Band*, which aired in 2009.[2]

---

[1] *Making The Band* is a reality television series that premiered on MTV in 2000. The show has had several iterations, each featuring a different musical group. The stars of Season 3 and 4 were Aubrey O'Day, Wanita "D. Woods" Woodgett, Shannon Bex, Aundrea Fimbres, and Ms. Richard, known as the all-female group *Danity Kane*.

[2] Season 5 of *Making The Band* featured *Diddy – Dirty Money*, a trio consisting of Mr. Combs, Kalenna Harper, and Ms. Richard.

34.    Out of thousands of contestants, Ms. Richard along with approximately twelve other women were selected to participate in Season 3 of *Making The Band*. Five women, including Ms. Richard, were ultimately chosen to be in the group, *Danity Kane*, which was named by Ms. Richard.

35.    Prior to and including the first *Danity Kane* album, *Making The Band* was filmed entirely at Daddy's House Recording Studio at 3120 W. 44th Street, New York, New York. The *Making The Band* content that focused on *Danity Kane*'s work on its second album, *Welcome to the Dollhouse*, was filmed at Daddy's House and at Mr. Combs' Miami residence.  Other *Making The Band* episodes included Los Angeles as a third filming location.

36.    Upon information and belief, to create *Making The Band*, camera crews filmed 24 hours a day, gathering months' worth of footage to condense into mere hours of entertainment for viewers.

37.    *Danity Kane* released its self-titled debut album in August 2006 and its second album *Welcome to the Dollhouse* in March 2008.

38.    *Danity Kane's* first album sold over 4,000,000 copies; damages to Ms. Richard for unpaid salaries are estimated at $1,000,000.00; *Danity Kane's* second album *Welcome to the Dollhouse* sold over 2,000,000 copies; damages to Ms. Richard for unpaid salaries and royalties are estimated at $500,000.00.  Damages on unpaid wages for touring on over 100 dates for Ms. Richard with *Danity Kane* are estimated at $1,800,000.00.

39.    Mr. Combs fired bandmate Aubrey O'Day and Wanita "D. Woods" Woodgett from *Danity Kane* on live television at the height of its fame in 2008; which resulted in *Danity Kane* being disbanded in 2009.

//

//

## II.    Ms. Richard first encounters Mr. Combs' aggressive, intimidating behavior and animus toward women

40.    During the auditions and on the set of *Making The Band*, Mr. Combs projected an aura of superiority, wealth, and power. Mr. Combs regularly wore sunglasses and avoided looking the female contestants in the eyes, contributing to an atmosphere of uncertainty and intimidation.

41.    During auditions, Mr. Combs spoke to the female contestants in a hostile, condescending manner, making disparaging gender-based remarks such as calling them "fat," "ugly," "bitches," and "hoes." Ms. Richard felt threatened and intimidated by Mr. Combs' blatant disdain for the young women, like herself, who were excited for the opportunity to be on his show.

42.    Once the band was made, Mr. Combs' contempt for women was readily apparent as he continued to display aggressive and hostile behavior towards Ms. Richard and her all-female *Danity Kane* bandmates. Mr. Combs regularly referred to the five women as "bitches" and "hoes" and denigrated their physical appearances. By way of example, Mr. Combs stated that Ms. Richard was too skinny and needed to "do something about this [her face]."

43.    On one occasion in or around 2005, during the first season of *Making The Band 3*, Ms. Richard observed Mr. Combs' ex-partner and the mother of three of his children, Kim Porter, leaving Mr. Combs' recording studio in tears with visible facial injuries including a lacerated lip. Realizing that Mr. Combs was capable of committing acts of violence against women caused Ms. Richard to feel deep apprehension and fear that Mr. Combs could one day physically harm her.

44.    Ms. Richard was present when Mr. Combs was introduced to Casandra ("Cassie") Ventura for the first time, in or around 2006. The moment Mr. Combs first saw Ms. Ventura, his demeanor noticeably shifted. Mr. Combs positioned himself directly in front of Ms. Ventura's seat, invading her personal space, and fixated on her with an intense, unyielding stare, isolating her from the other people in the room including Ms. Ventura's then-boyfriend, music producer Ryan Leslie.

45.     Coincidentally, this first meeting between Mr. Combs and Ms. Ventura was the first time that Ms. Richard was in Mr. Combs' presence without a camera crew filming. Observing Mr. Combs behave in such an intimidating, predatory manner the first time that they were off camera made Ms. Richard feel deeply apprehensive and afraid of him.

46.     Subsequently, Ms. Ventura ended her relationship with Mr. Leslie and began dating Mr. Combs, who would become violent and abusive towards her.

### III.     _Danity Kane_: Sexual harassment, inhumane treatment, and denial of basic needs by Mr. Combs

47.     For the majority of Ms. Richard's tenure as a member of _Danity Kane_ and _Diddy – Dirty Money_, Mr. Combs required her to remain at his various residences and studios in New York, Los Angeles, Florida, and New Jersey for activities such as recording, rehearsing, dressing, preparing costumes, and exercising.

48.     Throughout the productions of _Making the Band_ 3 and 4, Mr. Combs deprived Ms. Richard and her _Danity Kane_ bandmates of basic needs such as adequate food and sleep. When Ms. Richard or her _Danity Kane_ bandmates requested meals or rest, Mr. Combs refused and chastised them with derogatory comments like "you bitches don't want this" or "y'all are not hungry enough" and "I'm paying you bitches to work." This demeaning behavior gradually undermined Ms. Richard's confidence and contributed significantly to her growing feelings of insecurity and fear of reprisal from Mr. Combs.

49.     Upon information and belief, Mr. Combs would regularly be awake for prolonged periods of time because he was high on drugs. During these periods, Mr. Combs demanded continuous access to Ms. Richard and her _Danity Kane_ bandmates, often forcing them to record and rehearse for stretches of 36 to 48 hours without breaks. Forced to choose between eating and sleeping, Ms. Richard lost a significant amount of weight, weighing approximately 100 pounds

at a height of 5'4". Ms. Richard began to normalize these extreme conditions and perceive them as standard requirements of her participation in *Danity Kane*.

50.    Mr. Combs regularly sent his associates to wake Ms. Richard and her *Danity Kane* bandmates in the overnight hours so he could watch them rehearse. The regularity of these disturbances led Ms. Richard to adapt by sleeping in a sitting position, fully dressed and with makeup on, heightening her anxiety. Over time, this abnormal sleeping arrangement came to feel routine, further normalizing Mr. Combs' invasive demands.

51.    In addition to exhausting rehearsals, Mr. Combs required Ms. Richard and her bandmates to participate in intense workouts with a personal trainer. On one occasion, while running on the beach, Ms. Richard became so dehydrated that she vomited. Instead of offering medical assistance, MTV Networks' camera crew filmed the incident – contributing to her acceptance of such treatment as part of her professional life.

52.    The unrelenting and rigorous schedule of rehearsals, performance, and near-constant filming that Mr. Combs imposed caused Ms. Richard to experience extreme weight loss, dehydration, fatigue, and painful rashes from the microphone pack she was required to wear on her back. These conditions intensified Ms. Richard's feelings of powerlessness, as she increasingly viewed them as part of her professional reality and feared the consequences of any resistance.

53.    In a further assertion of power and dominance, Mr. Combs insisted on holding meetings while dressed only his underwear. On one occasion in 2008 at his Miami residence, Mr. Combs emailed Ms. Richard directing her to meet him in the living room. When she arrived, he was wearing only his underwear. Ms. Richard asked Mr. Combs to put clothes on, but he refused, stating "This is my fucking house." Mr. Combs then conducted a meeting lasting approximately an hour while dressed in his underwear, causing Ms. Richard to feel violated and embarrassed, and amplifying her feelings of powerlessness.

54.     Following the official *Danity Kane* breakup in early 2009 effectuated by Mr. Combs, Ms. Richard experienced significant financial hardship.  With no prospective opportunities for employment within the entertainment field, Ms. Richard spent several months traveling from Baltimore to Daddy's House Recording Studio in New York, without pay or allocated budget.  Mr. Combs promised that Ms. Richard's compositions would result in payment of license fees and royalties pursuant to her contract with Bad Boy Records; however, no such compensation was ever reported or paid to Ms. Richard. Damages relative to these continuing copyright infringements will be proved at trial.

IV.     **_Diddy – Dirty Money_: Ms. Richard experiences Mr. Combs' gender-based physical violence, criminal acts, sexual assault, threats, and intimidation**

55.     By approximately the fall of 2009, many of Ms. Richard's compositions had been recorded by other Bad Boy Records artists.  Due to the success of her compositions, Ms. Richard was invited to meet with musical artist Kalenna Harper ("Ms. Harper") and shortly thereafter Mr. Combs, Ms. Richard and Ms. Harper formed a new group: *Diddy – Dirty Money*.

56.     Initial recording for *Diddy – Dirty Money*'s album *Last Train to Paris* took place in Mr. Combs' home on Doheny Drive in Los Angeles, California. On the first day of recording, Ms. Richard and Ms. Harper arrived at Mr. Combs' home and waited in the kitchen, where Mr. Combs' girlfriend, Ms. Ventura, was frying eggs for him.

57.     Ms. Richard observed Mr. Combs come down the stairs looking high on drugs, enter the kitchen, approach Ms. Ventura, and scream, "I've been asking you for my shit; I can't stand you bitch, you never do it right!" Mr. Combs pushed Ms. Ventura against the wall and choked her, then picked up the scalding hot pan of eggs and threw it at her, causing her to fall to the ground in a fetal position.  Cursing and screaming, Mr. Combs dragged Ms. Ventura up the stairs.

58.     Frozen in shock and terror, Ms. Richard heard glass shattering, crashing, and banging noises as Mr. Combs dragged Ms. Ventura up the stairs. Ms. Richard wanted to intervene and help Ms. Ventura, but Ms. Harper adamantly refused to interfere in Mr. Combs' relationship, and physically led Ms. Richard out of the residence. Terrified and shaken, Ms. Richard returned to her hotel where she was unable to sleep due to worrying about Ms. Ventura and her own safety.

59.     The following day, Ms. Richard received a call demanding that she return to Mr. Combs' residence to continue recording. Mr. Combs brought Ms. Richard and Ms. Harper into the recording room at his studio, locked the door, dimmed the lights, and gave each of them flowers. Mr. Combs went on at length, stating: "this is normal, this was just a lover's argument where no one was hurt . . . this is what love is… I'm giving you an opportunity, if you want to make it you'll shut your mouth…*if you say anything, there will be consequences."* Mr. Combs further warned that "*people end up missing."* Being threatened while locked for over 20 minutes in a small, enclosed space with Mr. Combs after observing Mr. Combs violently assault Ms. Ventura the day before, Ms. Richard was terrified and genuinely believed that Mr. Combs would follow through on his threats.

60.     In or around November 2009, after the Soul Train Awards in Atlanta, Georgia, Mr. Combs flew Ms. Richard and Ms. Harper to his house in New York on his private jet for an afterparty. There were many well-known celebrities at the afterparty, and copious amounts of illegal drugs were being openly consumed. Upon information and belief, Mr. Combs had arranged for dozens of young women and girls – some of whom appeared to be underage – to be transported to the party. The women arrived wearing little to no clothing and were given drugs and alcohol. Many of them appeared lethargic or passed out while Mr. Combs and his guests performed sexual acts on them. Ms. Richard believed that her presence at the party was a test to see whether Mr. Combs could trust her.

61.     Mr. Combs repeatedly said things like "this is a buffet, enjoy yourselves; this is what we do, this is how we party." Ms. Richard felt shocked and horrified at the sight of Mr. Combs and his guests violating incapacitated young women, and implored Mr. Combs' personal assistant Capricorn Clark to allow her to leave. Ms. Clark insisted that Ms. Richard wait 15 minutes for Ms. Clark to "make it make sense" – that is, to make Ms. Richard's exit less conspicuous so that Mr. Combs would not notice that she had left. Knowing that she was not free to leave and had to wait for Ms. Clark to help her orchestrate her departure, Ms. Richard experienced feelings of panic and being trapped against her will.

62.     Mr. Combs regularly placed Ms. Richard in similar situations with no means to escape. At Mr. Combs' drug-fueled parties, his guests, including Ms. Richard, were required to surrender their phones upon entry. Mr. Combs kept the doors locked and guarded by security personnel, making it impossible for Ms. Richard to leave without alerting Mr. Combs that she had done so. Mr. Combs hired police officers to attend his parties, sending a clear message to guests that his influence extended to law enforcement officers, and creating a climate of fear and a tacit warning that reporting him to authorities would be both unacceptable and futile.

63.     On many occasions, Mr. Combs had parties at his Miami, Florida residence that lasted for several days. At one of the parties, Ms. Richard witnessed Mr. Combs openly stating that he had arranged for busloads of young "exotic" girls, such as mixed Black and Asian, Indonesian, and albino. Once again, Ms. Richard observed inebriated young girls being sexually violated by Mr. Combs and his guests. In a state of panic and terror, Ms. Richard fled to the bedroom Mr. Combs had insisted she stay in and barricaded the door shut with furniture.

64.     Mr. Combs openly assaulted Ms. Ventura in front of Ms. Richard and other witnesses on multiple occasions. On one occasion in or around the fall of 2009, *Diddy – Dirty Money* was in New York preparing to perform at a festival. Inside their vehicle, Mr. Combs grabbed Ms. Ventura's neck, pulled her out of the van onto the grass and pinned her head down,

choking her while yelling "you gonna get fucked up today." This incident took place in the backstage area just outside the festival and was entirely visible to passersby.

65.     In another instance, in or around early 2010, Mr. Combs punched Ms. Ventura in the face in the bathroom of a party in Los Angeles. Frequently, when Ms. Ventura attempted to voice an opinion or stand up to Mr. Combs, he would strike her or wrap his hands around her throat and choke her.

66.     On the first several occasions that they observed Mr. Combs assault Ms. Ventura, Ms. Richard and Ms. Harper spoke with Ms. Ventura to support and encourage Ms. Ventura in escaping her abusive relationship with Mr. Combs. Every time that Ms. Richard and Ms. Harper tried to intervene, Mr. Combs learned of the conversation and became irate. Mr. Combs screamed at the women: "Y'all bitches don't get in my relationship," "Don't tell my bitch [Ms. Ventura] what she need to be doing," "Just make money and shut the fuck up," "I end artists," "I shelve careers," "*You could be missing*," and "*You bitches want to die today*," among other threats.

## V.    <u>Interscope Records Enabled Mr. Combs' Gender-Motivated Violence</u>

67.     In or around late 2009 or early 2010, Bad Boy Entertainment ("Bad Boy") entered an agreement with Interscope Geffen A&M Records ("Interscope"). Upon information and belief, Bad Boy was paid $50 million in exchange for Bad Boy's future releases being distributed through Interscope. In so doing, Mr. Combs intended to capitalize on Interscope's significant resources and enhance the promotion and sales of Bad Boy's releases, including *Diddy – Dirty Money*'s upcoming album.

68.     In the weeks and months leading up to the Bad Boy-Interscope deal, Mr. Combs had frequent meetings with producer and then-CEO of Interscope Records Jimmy Iovine. On one such occasion, Combs hosted a dinner at a West Hollywood, California restaurant, which Ms. Richard and Ms. Harper were required to attend. Among the guests at the dinner were celebrities like NeYo and Usher, as well as Mr. Iovine. At the dinner, Mr. Combs and Ms. Ventura had an

argument. In front of the dinner guests, Mr. Combs hissed at Ms. Ventura in a screaming whisper and forcefully punched her in the stomach causing her to double over in visible pain, crying. Ms. Clark escorted Ms. Ventura out of the restaurant, and Mr. Combs remained and continued socializing with the dinner guests. At this point, Interscope Records clearly had actual knowledge that Combs was dangerous around females and that Combs was willing to brazenly batter a female in public.

69.     Even after Mr. Iovine watched Mr. Combs commit a violent assault in front of numerous high-profile witnesses, the Bad Boy-Interscope deal took place and remained in effect, providing Mr. Combs with immense financial rewards and enabling him to commit further acts of violence without fear of repercussions. Watching Mr. Combs openly assault Ms. Ventura in front of Mr. Iovine and various celebrities – and observing that other powerful music industry representatives were complicit in Mr. Combs' behavior – amplified Ms. Richard's fears that Mr. Combs could one day harm her and that his actions would be accepted and normalized by everyone surrounding him.

70.     As part of the agreement between Bad Boy and Interscope, Interscope heavily promoted Diddy – Dirty Money's *Last Train to Paris* album. Mr. Iovine had presented Mr. Combs with a demo of "*Coming Home*" for him to produce – a song that would become a multi-platinum hit.[3] Mr. Iovine was encouraging Mr. Combs to develop a new sound for the album, into which Interscope was investing significant resources. Ms. Richard, Ms. Harper and Ms. Ventura all provided vocal performances for this project. Released in November 2010, the album "*Last Train to Paris*" became *Diddy – Dirty Money*'s most commercially successful project, providing vast financial rewards to both Interscope and Mr. Combs.

---

[3]  The album "*Last Train to Paris*" credits both Interscope Records and Bad Boy Records. https://www.discogs.com/master/347136-Diddy-Dirty-Money-Last-Train-To-Paris; https://www.revolt.tv/article/2020-12-14/64067/studio-sessions-never-before-heard-stories-of-diddy-dirty-moneys-last-train-to-paris-creation

## VI.     _Diddy- Dirty Money_: Mr. Combs subjects Ms. Richard to Labor Trafficking and Oppressive Working Conditions

71.     In or around the fall of 2009, _Diddy – Dirty Money_ began recording the song _Love Comes Down_. Upon information and belief, Mr. Combs continued to use drugs that caused him to remain awake for prolonged periods of time. When he was awake, he would demand that Ms. Richard and Ms. Harper record in the studio, where they would spend three to four consecutive days recording without a break to eat or sleep. Mr. Combs required Ms. Richard and Ms. Harper to remain at his home(s) continuously, denying the opportunity to return to their hotel rooms for breaks. The degree of control Mr. Combs exercised over Ms. Richard's daily life and basic needs exacerbated the significant power imbalance and threatening atmosphere that ensured Ms. Richard's compliance with his demands.

72.     Mr. Combs regularly left the studio and required Ms. Richard and Ms. Harper to stay and write verses to songs. Occasionally, Ms. Richard tried to leave to get something to eat or to go to her hotel. Whenever Ms. Richard tried to leave, Mr. Combs would call and demand, "where the fuck are you" and "we have an album to make." Mr. Combs frequently made threats, especially if they asked for food or rest, stating "you're a bitch," "I don't want to see your fucking face," "I make n****s go missing," and "I make things go away." Each time, Ms. Richard returned to the studio immediately, believing that Mr. Combs was capable of following through with his threats.

73.     Mr. Combs criticized Ms. Richard for being "too skinny," yet denied her requests for food and demanded that she drink only peanut butter shakes. Mr. Combs had full meals prepared by a chef and ate them in front of Ms. Richard and Ms. Harper, never offering them food.

74.     Ms. Richard and Ms. Harper begged for food and rest breaks, but Mr. Combs refused, making statements such as "absolutely fucking not" and "this is what it takes to be great."

Mr. Combs' responses underscored the threat he posed and heightened Ms. Richard's concerns for her safety and well-being.

75.    As Ms. Richard continued to work non-stop – transitioning between the studio, rehearsals, workouts, and back to the studio – she became severely dehydrated and experienced chronic stomach cramping from being undernourished and excessively thin. On the numerous occasions that she told Mr. Combs that she was not feeling well, he called her lazy and dismissed her health concerns, instilling in her further apprehension of communicating her needs.

76.    In or around the summer of 2010, Ms. Richard experienced abdominal pain, swollen glands and a fever. She was hospitalized and diagnosed with arthralgia (joint pain due to overuse, sprains, tendonitis and infection), anemia, and a low white blood cell count. Ms. Richard presented Mr. Combs with her medical records specifying that she needed to emphasize eating well, being adequately hydrated, and getting adequate rest, but Mr. Combs ordered her to report to the studio the next day for another multi-day recording session. Mr. Combs' blatant disregard for her health and well-being cemented Ms. Richard's fear of his authority and control over her career and health.

77.    Ms. Richard continued to witness Mr. Combs' abuse towards Ms. Ventura. Ms. Ventura often wore sunglasses and makeup in an attempt to hide visible injuries. These incidents further solidified Ms. Richard's fear of Mr. Combs, as they were constant reminders of the physical dangers she potentially could – and eventually would – face.

78.    Mr. Combs often exhibited uncontrollable anger during recording sessions, throwing objects like albums, laptops, and food against the wall or at individuals. Mr. Combs frequently flew into frenzied, unpredictable rages. Ms. Richard feared making any misstep that could direct his anger toward her. However, her fears went beyond her immediate physical safety. Because she had witnessed Mr. Combs' violent nature, a side of Mr. Combs that the world had not yet seen, she feared that falling out of Mr. Combs' good graces or worse, standing up to him

or speaking out against him, could result in serious harm to her. Ms. Richard frequently thought about Mr. Combs' threat about making people "go missing" and feared taking any action that could label her as a target.

79.    Despite Mr. Combs' violence, threats, and misogyny, *Diddy-Dirty Money* experienced significant sales of records, selling 2,000,000 copies of one single, 500,000 of another in the US, and in Australia 5,000,000 single copies. Ms. Richard's unpaid wages and royalties are estimated at $1,200,000.00. Ms. Richard's unpaid touring wages are estimated at over $350,000.00 for touring dates within the United States alone.

### VII.    CIROC / DiddyBeats / Nonpayment

80.    In or around the summer of 2009, Ms. Richard and Ms. Harper were required by Mr. Combs to perform as part of *Diddy – Dirty Money* and attend numerous promotional events, including late or overnight parties, all of which were under contract between Mr. Combs and CIROC Vodka, or between Mr. Combs and DiddyBeats pursuant to the Bad Boy – Interscope record deal.

81.    Ms. Richard was never compensated for the extra time she spent fulfilling Mr. Combs' promotional contracts, including the CIROC and the DiddyBeats campaign. Mr. Combs was paid approximately $250,000 per CIROC appearance. Mr. Combs did not compensate Ms. Richard or Ms. Harper for these appearances, other than just $5,000 each on a handful of occasions.  Mr. Combs' ongoing explanation for withholding compensation was that their appearances were a requirement for their tour. Additionally, Ms. Richard was required to appear, and to promote DiddyBeats, through parties, album songs and videos.

82.    Over time, Mr. Combs was paid $6.25 million for 25 CIROC shows that Ms. Richard was required to attend.[4]  Following each show, Ms. Richard and Ms. Harper approached

---

[4] Numerous videos depict Ms. Richard performing at CIROC events, such as the video available at https://youtu.be/HtIiNNsIgkw?si=4FFCB1tD6gCeX4R3. This video depicts Ms. Richard singing as part of *Diddy – Dirty Money* and is representative of her performances as part of Mr. Combs' CIROC campaign.

Mr. Combs to inquire about their insufficient and sporadic payments. Mr. Combs routinely responded with statements such as "You bitches aren't grateful" and "you don't want this."  Ms. Richard estimates losses from CIROC campaign promotions totaling at least $1,562,500.00. Upon information and belief, Mr. Combs received an advance on DiddyBeats for which Ms. Richard received no compensation.

### VIII.    Mr. Combs Sexually Harasses and Assaults Ms. Richard

83.    Between approximately 2009 and 2011, throughout *Diddy – Dirty Money*'s recording process, rehearsals, and performances, Mr. Combs repeatedly ordered Ms. Richard to strip down to her underwear. He frequently referred to her as a "bitch" or "whore" and made demeaning remarks about her body, alternatingly calling her lazy, fat, ugly, and skinny, particularly in front of his friends, producers, and bodyguards.

84.    Mr. Combs frequently held meetings with Ms. Richard wearing only his underwear, despite Ms. Richard's protests and repeated requests for him to put on clothing. In response, Mr. Combs called her a "bitch" and "whore" and reminded her that she should be grateful for the opportunity to be there.

85.    Often while they were recording in the studio, Mr. Combs would hold "parties" where he would invite young men and women, who were often scantily dressed and appeared underage, to use drugs and engage in sex acts. Ms. Richard observed Mr. Combs and his colleagues kissing, groping, and inappropriately touching the young women. Upon information and belief, the participants often left the immediate area to have sex and returned shortly thereafter.

86.     On numerous occasions between approximately 2009 and 2011, under the guise of preparing for performances, Mr. Combs would intrude into Ms. Richard's changing room at *Daddy's House* unannounced while Ms. Richard was undressed.

87.     Even though a female stylist was present and assisting Ms. Richard with her wardrobe, Mr. Combs would grope Ms. Richard's body, including her bare buttocks and her chest area near her breasts. With no legitimate purpose, and without Ms. Richard's consent, Mr. Combs caressed her buttocks to show the stylist where he wanted her high-waisted panties positioned, and attempted to touch her breasts, claiming to show the stylist where he wanted her bra straps to go.

88.     When Mr. Combs would enter the changing room, Ms. Richard would cover her chest with her hands to prevent Mr. Combs from seeing or touching her breasts. When Mr. Combs would touch her body, Ms. Richard would attempt to swat his hands away and state "don't touch me."

89.     Mr. Combs frequently smacked Ms. Richard's bare buttocks and often commented on her body, noting that although she was "too skinny," she had an "ass."

90.     Ignoring her visible and communicated discomfort, Mr. Combs persisted and continued to intrude when Ms. Richard was in the dressing room, continued to touch her buttocks and breast area under the guise of showing the stylist what to do, and continued to smack her buttocks without her consent.

91.     In or around October 2010, *Diddy – Dirty Money* performed in Glasgow, Scotland, where Mr. Combs engaged in overt sexual advances towards Ms. Richard. On numerous occasions when Ms. Richard exited the dressing room fully styled, Mr. Combs looked at her approvingly and smacked her buttocks while making comments such as "you're looking good," "OK Dawn, OK," and "I see what that is" in a flirtatious tone. Each time, Ms. Richard moved away and asked him not to touch her, but Mr. Combs disregarded her protests. Ms.

92.    On their last night in Glasgow, Ms. Richard witnessed Mr. Combs and several other males gang-banging Mr. Combs' female assistant at the hotel pool. Ms. Richard immediately left and went to her hotel room.

93.    On their flight back to the United States the next day, Ms. Richard asked Mr. Combs where his assistant was; Mr. Combs replied, "I don't give a fuck where that bitch is." Ms. Richard later learned that Mr. Combs had taken his assistant's passport with him to the United States, leaving the assistant stranded in the United Kingdom.

94.    In Glasgow, Ms. Harper confided in Ms. Richard that her husband and manager, Tony Vick ("Mr. Vick"), was abusive. After an especially severe assault, she confided in Ms. Richard that she wanted to leave Mr. Vick, and Ms. Richard helped her to plan her exit from the relationship. However, Ms. Harper and Mr. Vick reconciled, and both Mr. Combs and Mr. Vick – who had a close relationship – learned of Ms. Richard's role in helping Ms. Harper.  Both Mr. Combs and Mr. Vick became noticeably distrustful of Ms. Richard, which exacerbated her fears of harm and reprisal.

95.    When Mr. Combs would require his *Diddy – Dirty Money* bandmates to stay at his residence in Miami, Ms. Richard would barricade herself inside her room at night, placing heavy furniture against the door because she feared being harmed in her sleep.

96.    In or around late December 2010, Ms. Richard, Ms. Harper, and Ms. Ventura were in Mr. Combs' Los Angeles home when Mr. Combs stated "I want to gift you [fake] titties for Christmas." Mr. Combs reached out and cupped Ms. Richard's breasts without her permission and stated "You're an A; I'm thinking a D." Ms. Richard recoiled in shock and left the room.

97.    Throughout the abovementioned time period, when Ms. Richard resisted Mr. Combs' advances, Mr. Combs retaliated by denying her singing parts in songs, removing her from songs, refusing to allow her to sing in performances, and turning her microphone off during

performances. The more Ms. Richard rebuffed his advances, the more Mr. Combs' retaliatory behavior increased.

### IX.    Mr. Combs Assaults and Falsely Imprisons Ms. Richard

98.    In or around December 2010, *Diddy – Dirty Money* was preparing for an upcoming performance on *Saturday Night Live* ("SNL"). As usual, rehearsals lasted for days without the opportunity to eat or rest, and the rehearsal schedule was unpredictable.  After waiting all day for Mr. Combs to call or send a car, Ms. Richard received a phone call from Mr. Combs demanding "Where the fuck are you bitches?  You bitches don't want this; y'all don't deserve to have someone pick you up; get a cab." Ms. Richard and Ms. Harper immediately took a taxi to SIR Studios at 520 West 25th St, New York NY, anxious because Mr. Combs sounded enraged.

99.    Upon their arrival at SIR Studios, Mr. Combs and Harve Pierre were waiting for them in the lobby. Mr. Combs screamed obscenities at them: "**Where the fuck were you bitches? You bitches don't want to win . . . you don't want this . . . I'm so tired of y'all.**" Ms. Richard noticed that people in the lobby were reacting to Mr. Combs' tirade. Embarrassed, Ms. Richard asked Mr. Combs to stop swearing and calling them "bitches" in front of everyone.

100.    Mr. Combs' facial expression shifted as he stepped towards Ms. Richard, raised his arm, and swung his fist toward her face. Believing that Mr. Combs was going to hit her, Ms. Richard braced for the impact. Before Mr. Combs could strike her, Mr. Combs' bodyguard grabbed her, escorted her out of the studio and forced her into the Bad Boy Records Bentley that was parked outside. Ms. Harper ran after Ms. Richard, and Mr. Combs' bodyguard closed and locked the Bentley's doors with both women inside.

101.    Inside the vehicle, Ms. Richard realized there were no interior door handles, and that they were locked inside with no way to escape. Ms. Richard's belongings were in the studio, but she was able to call her father from Ms. Harper's cell phone. Ms. Richard relayed to her father what had happened, and that she needed help and feared that she would go missing. Moments

later, Mr. Combs' bodyguard removed only Ms. Harper from the Bentley, leaving Ms. Richard locked in the car alone for over two hours.

102.    Ms. Richard screamed as loudly as she could, but no one responded.  It was late evening in the wintertime, the windows were heavily tinted, and the interior of the car was dark except for faint interior lights. Ms. Richard's belongings and winter coat were in the studio, while the ignition was off and there was no heat. With Mr. Combs' prior threats and violence running through her mind, Ms. Richard felt sheer panic, terror, and feelings of claustrophobia at being locked in a small, dark, enclosed space with no way to communicate or call for help. She began to feel cold and feared for her life, not knowing when or if she would be released.

103.    Ms. Richard's father drove to New York from Baltimore and arrived at the studio approximately two hours later. Only after her father arrived and demanded to see her did Mr. Pierre order Mr. Combs' bodyguard to release Ms. Richard from the vehicle.  Mr. Pierre ushered Ms. Richard's father between several rooms at SIR Studios, where he waited for approximately two hours before being able to confront Mr. Combs.  Once Ms. Richard's father expressed that he intended to contact police, Mr. Combs warned him to "think about your family" and "think about your daughter's career." Her father appeared visibly frightened by Mr. Combs' threats and actions, which in turn made Ms. Richard feel terrified for herself and her family's safety.

104.    The next night, *Diddy – Dirty Money* performed on SNL. Mr. Combs subsequently called Ms. Richard, complimented her performance, and concluded with a threat: "you don't call your dad unless you're in the hospital."

//

//

//

//

//

X.    **Unjust Enrichment of Defendants by Breach of Contract and/or Copyright Infringement**

105.    As a member of *Danity Kane*, Ms. Richard has performed on over 15 songs[5] and holds composition credits for more than 3 songs.[6]  Defendants have failed to account to or pay Ms. Richard as agreed for her compositions and her performances and have breached contracts and infringed her copyrights, all of which has unjustly enriched Defendants.

106.    As a member of *Diddy-Dirty Money*, Ms. Richard has performances recorded on over 9 songs;[7] additionally Ms. Richard has composition rights and credits on more than 5 songs.[8] Defendants have failed to account to or pay Ms. Richard as agreed for her compositions and her

---

[5]  1. "Show Stopper" 2. "Ride for You" 3. "Damaged" 4. "Bad Girl" 5. "Pretty Boy" 6. "Striptease" 7. "Poetry" 8. "Lights Out" 9. "Sucka for Love" 10. "Ain't Going" 11. "2 of You" 12. "Do Me Good" 13. "Ecstasy" (featuring Rick Ross) 14. "Lemonade" (featuring Tyga) 15. "All in a Day's Work"

[6]
1."Bad Girl" (featuring Missy Elliott) Written by Dawn Richard, Mary Brown, Mary Brockert, Missy Elliott, Sean Combs, Quincy Jones, David Wolinski, Shanell Woodgett
2. "Secret Place" (Interlude) • Performed by Dawn Richard
3. "Infrared" Written by Dawn Richard, Kwame Holland

[7]  1. "Angels"
2. "Love Come Down"
3. "Yeah Yeah You Would"
4. "Hate That You Love Me"
5. "Your Love" (featuring Trey Songz)
6. "Ass on the Floor" (featuring Swizz Beatz)
7. "Yesterday" (featuring Chris Brown)
8. "I Hate That You Love Me"
9. "Shades" (featuring Lil Wayne and Justin Timberlake)

[8]  1."I Hate That You Love Me"
Written by Dawn Richard, Richard Butler, Warren Trotter, Arden Altino, Durrell Artaze Babbs
 2.  "Looking for Love" (featuring Usher)
Written by Dawn Richard, Usher Raymond IV, Sean Combs, Kalenna Harper, Kevin "KC" Cossom, Marcella
 Ms. Lago Araica, Eric "E-Class" Akon, Mario "Yellowman" Winans
3. "Strobe Lights" (featuring Lil Wayne)
Written by Dawn Richard, Lil Wayne, Sean Combs, Richard Butler, Warren Trotter, Arden Altino, Marcella Ms. Lago Araica, Kevin "KC" Cossom
4. "Loving You No More" (featuring Drake)
Written by Drake, Dawn Richard, Sean Combs, Richard Butler, Warren Trotter, Arden Altino, Mario Winans, Jerry "Wonda" Duplessis
5. Change" Written by Dawn Richard, Richard Butler, Warren Trotter, Arden Altino

performances and breached contracts and/or infringed her copyrights, unjustly enriching Defendants.

107. In 2020, Mr. Combs selected Ms. Richard for a reboot of *Making The Band*, and Ms. Richard spent hours preparing to be a judge on the new show. However, the COVID-19 pandemic halted those plans, and Ms. Richard was never compensated in any way.

108. On or about July 1, 2021, Mr. Combs and Bad Boy Records (or Holdings or both), directed Janice Combs Publishing Inc. to assign its administration rights of Ms. Richard's songs,[9]

[9]

| SONG TITLE | WRITER NAME | ARTIST |
|---|---|---|
| 86 | CARLA HAYNES-CARTER (20), **DAWN RICHARD (20)**, ANDREW SCOTT (60) | |
| 2 SIDES (TWO SIDES) | Ray Romulus (15), **Dawn Angelique Richard (13.34)**, Jeremy Reeves (15), Jonathan Yip (15), Malcolm McDaniel (13.33), Ray McCullough (15), Rosina Russell (13.33) | DANITY KANE |
| AIN'T GOING | Iyanna Dean (45), Bernard Malik (50), **DAWN RICHARD (2.5)**, WANITA WOODGETT (2.5) | DANITY KANE |
| ASS ON THE FLOOR | SEAN COMBS (5), KASSEEM DEAN (55), KALENNA HARPER (20), **DAWN RICHARD (10)**, LEROY WATSON (10) | DIDDY-DIRTY MONEY |
| Burn So Deep | James Michael Edgar (50), **DAWN RICHARD (50)** | Jimmy Edgar Feat. Dawn Richard |
| Dance | Noise Castle (25), Ester Dean (25), DAVID RYAN HARRIS (25), **Dawn Richard (25)** | DAWN RICHARD |
| Faith | Ricky Lewis (50), **DAWN RICHARD (50)** | |
| FIREFLIES | **DAWN RICHARD (25)**, HARMONY SAMUELS (50), ANDREW SCOTT (25) | ZENDAYA |
| FLASHBACK (INTERLUDE) | Romeo IX (50), **DAWN RICHARD (25)**, WANITA WOODGETT (25) | DANITY KANE |
| HATE YOU NOW | Marcela aracia (5), SEAN COMBS (10), JAMES FAUNTLEROY (35), KALENNA HARPER (2.5), Nathaniel Hills (45), **DAWN RICHARD (2.5)** | DIDDY-DIRTY MONEY |
| HOME FOR CHRISTMAS | **DAWN RICHARD (100)** | DANITY KANE |
| HURT (LOVING YOU NO MORE) | SEAN GARRETT (50), AUBREY GRAHAM (15), **DAWN RICHARD (5)**, MIKAL SNODDY (25), MARIO WINANS (5) | DIDDY |
| LIGHTS OUT | Craig Betz (20), Neil Betz (20), SEAN COMBS (5), **DAWN RICHARD (50)**, MARIO WINANS (5) | DANITY KANE |
| LOVE COME DOWN | Shawn Carter (7.5), SEAN COMBS (17), BERRY GORDY JR (1.5), KALENNA HARPER (10.63), ROB HOLLADAY (34), ALPHONSO MIZELL (1.5), FREDDIE PERREN (1.5), **DAWN RICHARD (10.62)**, DEKE RICHARDS (1.5), LEROY WATSON (12.75), KANYE WEST (1.5) | DIDDY |
| PERFECTLY BLIND | BRIAN ANDREWS (6.25), Robert Curry (6.25), MICHAEL MCCLUNEY (6.25), QWANELL MOSLEY (25), DIRK PATE (25), **DAWN RICHARD (25)**, Willie Taylor (6.25) | DAY26 |
| SECRET PLACE (INTERLUDE) | SHANNON BEX (10), AUNDREA FIMBRES (10), AUBREY O'DAY (10), **DAWN RICHARD (10)**, MARIO MENDELL WINANS (50), WANITA WOODGETT (10) | DANITY KANE |
| Stopwatch | Derek Scott Bergheimer (10), Jesse Dee Boykins III (33), **DAWN RICHARD (20)**, Karl Rubin (5), Travis Wayne Stewart (32) | |
| Stopwatch (Salva Remix) | Jesse Dee Boykins III (20), **DAWN RICHARD (10)**, PAUL SALVA (50), Travis Wayne Stewart (20) | |
| STRIP TEASE | Marcella Araica (5), SHANNON BEX (6), AUNDREA FIMBRES (6), NATE HILL (45), AUBREY O'DAY (6), **DAWN RICHARD (6)**, JAMES WASHINGTON (20), WANITA WOODGETT (6) | DANITY KANE |
| Strobe Lights | SEVEN AURELIUS (30), Dwayne Carter (10), Kenneth Coby (7.5), KALENNA HARPER (27.5), Tim McEwan (20), **DAWN RICHARD (5)** | DIDDY-DIRTY MONEY |
| TAILOR MADE SUIT | DANIEL BRYANT (0), PHILLIP BRYANT (0), CYNTHIA LOVING (0), **DAWN RICHARD (0)** | LIL MO |
| TELL ME | Ray Romulus (12.50), Briana Jackson (16.67), **Dawn Angelique Richard (16.67)**, Jeremy Reeves (12.50), Jonathan Yip (12.50), Ray McCullough (12.50), Rosina Russell (16.66) | DANITY KANE |
| YEAH YEAH YOU WOULD | MARCELLA ARACIA (5), RICHARD BUTLER (12), KALENNA HARPER (23), Floyd Hills (45), **DAWN RICHARD (5)**, LEROY WATSON (10) | DIDDY-DIRTY MONEY |

held from her tenure with Defendants in the years 2005-2012, to Sony Songs, a division of Sony Music Publishing LLC ("Sony"). The assignment, signed by Ms. Richard on October 22, 2024, purported to credit, through a semi-annual accounting, Ms. Richard's royalty account for Ms. Richard's compositions from between 80 to 90% of publisher's share. However, no statements were ever provided, no payments were ever made, and no reversions nor assignment were ever recorded with Performing Rights Organizations or other royalty collecting entities by Defendants or by Sony. Defendants have wholly failed to account to or pay Ms. Richard as agreed for her compositions and her performances in breach of the assignment and have thereby infringed her copyrights, resulting in Defendants being unjustly enriched.

109.    During the summer of 2023, Mr. Combs' new record company, Love Records Inc., tendered a contract for negotiation to Ms. Richard for the song entitled "*Deliver Me*," embodied as Track 3 on *The Love Album: Off The Grid*, officially released on September 15, 2023. Upon information and belief, *Deliver Me* sold well prior to Mr. Combs' legal troubles in November 2023. Continuing to the present, Ms. Richard sought to establish her rightful percentage as a 21% composer on *Deliver Me*, Mr. Combs personally called Ms. Richard and left a voicemail complaining about her fair requests. Upon information and belief, Mr. Combs directed his attorneys to avoid confirming the composition percentages on the song; and in fact, list composers who played no part in composing the song. As a result, the contract was never signed by either Ms. Richard or Love Records Inc. Nevertheless, Ms. Richard obtained a copyright registration certificate on a timely basis; said registration lists authors/claimants as agreed when the song was created in 2009. That registration is filed separately in the Court and supports Ms. Richard's claim of copyright infringement by Defendants herein. Defendants Love Records Inc. and Mr.

Combs infringed Ms. Richard's copyrights in the composition of *Deliver Me* by releasing *Deliver Me* without Ms. Richard's permission and without compensation.

## DAMAGES

110.    As a result of the acts and conduct complained of herein, Ms. Richard has suffered and will continue to suffer the loss of income, wages, benefits, royalties, promotional fees, touring fees and other compensation. Ms. Richard has also suffered, among other things, future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, post-traumatic stress disorder, anxiety disorder, insomnia, panic attacks and other non-pecuniary losses entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorney's fees and costs, and other remedies as this Court may deem appropriate.

### FIRST CAUSE OF ACTION
**Violation of The Victims of Gender-Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, *et seq*. ("VGMVPL")**
***Against Defendants Sean Combs, Harve Pierre, Interscope Records & Bad Boy Records***

111.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

112.    The above-described conduct of Mr. Combs, including but not limited to Mr. Combs' physical and sexual assaults, harassment, and unlawful imprisonment of Plaintiff in New York City constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103 of the New York City VGMVPL. The term "crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution or conviction; and the term "crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

113.    The above-described conduct of Mr. Combs, including, but not limited to, sexual assault, physical assault, threats, and false imprisonment, all conduct proscribed by PL 110/120.00(1), PL 120.15, PL 240.30(3), PL 135.05; PL 135.10 Pl 130.52, PL 240.30(1)(a), PL 120.14(2), PL S 135.5(3), constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103.

114.    Defendants Harve Pierre, Interscope Records, and Bad Boy Records have financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

115.    Defendants Harve Pierre, Interscope Records, and Bad Boy Records enabled, condoned, had knowledge of, and failed to act to prevent or mitigate Mr. Combs' commission of the abovementioned crimes of violence motivated by gender and are therefore also liable under the VGMVPL.

116.    As a direct and proximate result of the above mentioned crimes of violence and gender-motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate, as set forth in § 10-1104.

117.    Pursuant to § 10-1105(a), this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

## SECOND CAUSE OF ACTION
### Sexual Assault pursuant to The California Sexual Abuse and
### Cover Up Accountability Act, Cal. Civ. Proc. § 340.16
### *Against Defendants Sean Combs & Bad Boy Records*

118.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

119.    Mr. Combs subjected Plaintiff to sexual battery, as defined in Cal. Penal Code §§ 234.4(e)(1). In doing so, he intended to and did cause harmful and sexually offensive contact with their person and place them in imminent apprehension of such contact.

120.    Pursuant to California Code of Civil Procedure § 340.16, as amended by Assembly Bill 2777, this cause of action is timely because it is commenced within three years of the date Plaintiff discovered the injuries resulting from Defendants' acts, which Plaintiff did not discover, and could not have reasonably discovered, until November 2023 when Ms. Ventura filed a lawsuit against Defendant.

121.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

122.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

123.    Plaintiff also seeks reasonable attorneys' fees as provided under Cal. Civil Code § 52.5.

## THIRD CAUSE OF ACTION
### Forced Labor in Violation of 18 U.S.C. §§ 1589 and 1595
### *Against Defendants Sean Combs, Bad Boy Records & UMG Interscope Geffen A&M*

124.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

125.    Defendants knowingly obtained labor from Plaintiff through threats of serious harm, physical restraint, and other means of coercion, in violation of 18 U.S.C. § 1589.

126.    Defendants Bad Boy Records, UMG Interscope Geffen A&M Records knowingly benefited from the forced labor and the trafficking activities conducted by Mr. Combs.

127.    Under 18 U.S.C. § 1595, Plaintiff is entitled to bring a civil action against all Defendants for their violation of 18 U.S.C. § 1589.

128.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

129.    Plaintiff seeks compensatory damages for the harm suffered as a result of Defendants' forced labor practices.

130.    Plaintiff also seeks punitive damages to deter such conduct by Defendants in the future, along with reasonable attorney's fees and costs.

131.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### FOURTH CAUSE OF ACTION
### Violation of New York Services for Victims of Human Trafficking, N.Y. Servs. Law § 483-bb(c)
### *Against Defendants Sean Combs & Bad Boy Records*

132.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

133.    Plaintiff is a victim of labor trafficking within the meaning of N.Y. Penal Law 135.35 and is therefore entitled to bring a civil action under N.Y. Soc. Serv. § 483-bb.

134.    The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of N.Y. Soc. Serv. § 483-bb. Specifically, Defendant Sean Combs

perpetrated labor trafficking of Ms. Richard by inducing her to engage or continue to engage in labor activity by means of instilling a fear in her that, if she refused to comply, he would cause physical injury, serious physical injury, or engage in other conduct constituting a felony or unlawful imprisonment in the second degree in violation of New York Penal Law 135.05, and Defendant Bad Boy Records benefitted from Mr. Combs' venture by holding Ms. Richard, an artist signed with Defendant Bad Boy Records and otherwise employed by other Defendant Doe Corporations, captive to Mr. Combs' demands and desires. At all relevant times, Defendant Bad Boy Records participated in and facilitated the obtainment of Plaintiff's labor induced by force, fraud, or coercion.

135.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

136.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### FIFTH CAUSE OF ACTION
#### Sex Trafficking under 18 U.S.C. § 1591, *et seq.*
#### *Against Defendant Sean Combs & Bad Boy Records*

137.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

138.    Mr. Combs, one of the most prominent musical artists and producers in the industry, recruited and enticed Plaintiff by initiating a professional relationship with her and inviting her to join his band *Diddy- Dirty Money* as a singer, songwriter, and performer. This opportunity instilled in Plaintiff the hope and expectation of advancing her career and achieving greater success in the music industry.

139.    Mr. Combs, through a pattern of coercive threats and displays of brutal violence, caused Plaintiff to engage in commercial sex acts, as defined by 18 U.S.C. § 1591(e)(3). These acts were carried out to further Mr. Combs' financial gain from Ms. Richard's participation in *Diddy-Dirty Money*, to exert control over her, and to satisfy his own sexual gratification.

140.    Mr. Combs used fraud and force to coerce and entice Ms. Richard into commercial sex acts. Mr. Combs did so by making threats of career derailment and promises of career advancement in exchange for Ms. Richard acquiescence to Mr. Combs' sexual batteries and assaults.

141.    Mr. Combs acted with knowledge or in reckless disregard of the fact that Plaintiff was forced to engage in these acts through coercion and that these acts were in exchange for her continued place in the band and her financial stability.

142.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

143.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

144.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### SIXTH CAUSE OF ACTION
### Violation of the California Trafficking Victims Protection Act,
### Cal. Civil Code § 52.5
### *Against Defendants Sean Combs & Bad Boy Records*

145.    Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

146.    Plaintiff is a victim of trafficking within the meaning of Cal. Penal Code § 236.1 and is therefore entitled to bring a civil action under Cal. Civil Code § 52.5.

147.    The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of Cal. Civ. Code § 52.5. Specifically, Defendant Sean Combs perpetrated human trafficking of Ms. Richard by depriving or violating her personal liberty with the intent to obtain forced labor, and Defendant Bad Boy Records benefitted from Mr. Combs' venture by holding Ms. Richard, an artist signed with Defendant Bad Boy Records and otherwise employed by other Defendant Doe Corporations, captive to Mr. Combs' demands and desires. At all relevant times, Defendants participated in and facilitated the obtainment of Plaintiff's labor induced by force, fraud, or coercion.

148.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

149.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

150.    Pursuant to Cal. Civ. Code § 52.5(d)(3), Defendants' continuous death threats and coercion induced Plaintiff to delay the filing of this action and asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

151.    Pursuant to Cal. Civ. Code § 52.5(d)(4), the suspension of the statute of limitations due to estoppel applies to all other related claims arising out of the trafficking situation, including but not limited to, Violation of The Victims of Gender-Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, *et seq*., Forced Labor in Violation of 18 U.S.C. §§ 1589 and 1595,  New York Services for Victims of Human Trafficking, N.Y. Servs. Law § 483-bb(c), Sex Trafficking under

18 U.S.C. § 1591, Assault Under New York Law, Battery/Sexual Battery Under New York Law, False Imprisonment under New York Law, False Imprisonment under California Law, Intentional Infliction of Emotional Distress, Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq*., Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New York City Human Rights Law, N.Y. Exec. Law §§ 8-101, *et seq*., Retaliation in Violation of New York State Human Rights Law, ("NYSHRL") Section 296 and California Government Code Section 12940(h), Hostile Work Environment in violation of California Government Code §12940, Gender Discrimination in violation of California Government Code §12940,Violation of Right of Publicity Under New York Civil Rights Law § 50 and § 51, Unjust Enrichment, Copyright Infringement 17 U.S.C. § 106, Breach of Contract, Breach of Implied Covenant of Good Faith & Fair Dealing, Fraud, Intentional Misrepresentation, False Promise.

152.    Pursuant to Cal. Civ. Code § 52.5(e), the running of the statute of limitations may be suspended as Plaintiff could not have reasonably discovered the cause of action due to circumstances resulting from the trafficking, including psychological trauma.

**SEVENTH CAUSE OF ACTION**
**Assault Under New York Law**
*Against Defendants Sean Combs, & Bad Boy Records*

153.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

154.    In engaging in the conduct described above, Mr. Combs committed an assault against Plaintiff because he intentionally placed Plaintiff in reasonable apprehension of imminent harmful or offensive contact, and Plaintiff reasonably feared immediate bodily harm as a result of Defendant's conduct. Defendant's actions amount to violations under N.Y. Penal Law §§ 110/120.00(1), 120.15, as well as analogous California law and the common law of New York and California.

155.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

156.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

157.    The conduct of Mr. Combs described above was willful, wanton, and malicious. At all relevant times, Mr. Combs acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant Combs according to proof at trial.

158.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**EIGHTH CAUSE OF ACTION**
**Battery/Sexual Battery Under New York Law**
*Against Defendants Sean Combs & Bad Boy Records*

159.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

160.    In engaging in the conduct described above, Mr. Combs committed a battery against Plaintiff because he intentionally engaged in unlawful, intentional, and offensive touching or application of force to Plaintiff's person. Mr. Combs repeatedly and without consent touched Ms. Richard's body including her buttocks and chest area. Defendant's actions amount to violations under N.Y. Penal Law §§ 150.50, 130.52, 130.55, and 130.65, as well as analogous California law and the common law of New York and California.

161.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

162.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

163.    The above-described conduct by Mr. Combs was willful, wanton, and malicious. At all relevant times, Mr. Combs acted with conscious disregard of Ms. Richard's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Ms. Richard, and intended to cause fear, physical injury, and/or pain and suffering to Ms. Richard. By virtue of the foregoing, Ms. Richard is entitled to recover punitive and exemplary damages from Mr. Combs according to proof at trial.

164.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### NINTH CAUSE OF ACTION
### False Imprisonment under New York Law
#### *Against Defendants Sean Combs, Harve Pierre & Bad Boy Records*

165.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

166.    Defendants Mr. Combs and Mr. Pierre falsely imprisoned Plaintiff in New York as alleged in this Complaint, by suddenly and without provocation, willfully and maliciously falsely imprisoning Ms. Richard against her will in the Defendants' corporate vehicle for over two hours.

167.     Following Plaintiff's false imprisonment in the Defendants' corporate vehicle, Defendant Mr. Combs issued a clear retaliatory threat of future injury and bodily harm to Plaintiff, underscoring the intent to both control and to silence Plaintiff as to Defendant's crimes.

168.     Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

169.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

170.     Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## TENTH CAUSE OF ACTION
### False Imprisonment under California Law
#### *Against Defendants Sean Combs & Bad Boy Records*

171.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

172.     Defendant Mr. Combs falsely imprisoned Ms. Richard in California as alleged in this Complaint, by demanding, under false pretenses, that Ms. Richard appear for work, and subsequently, willfully and maliciously falsely imprisoning and threatening Ms. Richard in Mr. Combs' home studio against her will for over twenty minutes.

173.     Following Plaintiff's false imprisonment in Mr. Combs' home studio, Defendant Mr. Combs issued a clear retaliatory threat of future injury and bodily harm to Plaintiff, underscoring the intent to both control and to silence Plaintiff as to Defendant's crimes.

174.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

175.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

176.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### ELEVENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
#### *Against Defendants Sean Combs, Harve Pierre & Bad Boy Records*

177.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

178.    Defendants Sean Combs and Harve Pierre's conduct, which included abuse, death threats, sexual assault, false imprisonment, deprivation of basic necessities in the workplace, nonpayment or underpayments, and labor violations was extreme and outrageous, going beyond all possible bounds of decency and utterly intolerable in a civilized community.

179.    Defendants' conduct was intentional and reckless and Defendants knew or should have known that such conduct would cause Plaintiff severe emotional distress.

180.    Defendants Harve Pierre and Bad Boy Records have financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

181.    Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

182.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**TWELFTH CAUSE OF ACTION**
**Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL")**
***Against Defendants Sean Combs & Bad Boy Records***

183.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

184.    Defendants Sean Combs and Bad Boy Records discriminated against Plaintiff on the basis of her gender in violation of the NYSHRL by subjecting Plaintiff to disparate treatment, verbal abuse, systematic exclusion, failure to address complaints of discrimination and/or harassment, retaliation, derogatory gender-based slurs and comments, insults and offensive gender-based language, intimidation and bullying, threats, unfair treatment, and denial of opportunities, promotions, or benefits based on gender.

185.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has sustained and will continue to sustain, monetary and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

186.    Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

187.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendant should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

//

**THIRTEENTH CAUSE OF ACTION**
**Sexual Harassment, Gender Discrimination, and Hostile Work Environment under**
**New York City Human Rights Law, N.Y. Exec. Law §§ 8-101, *et seq.* ("NYCHRL")**
*Against Defendants Sean Combs & Bad Boy Records*

188.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

189.    Defendant Sean Combs and Bad Boy Records discriminated against Plaintiff on the basis of her gender in violation of the NYCHRL by subjecting Plaintiff to unwanted touching of her intimate parts, forcing Plaintiff to endure derogatory name-calling, and exposing Plaintiff to sex trafficking and sex acts, constituting a hostile work environment. Defendants engaged in a pattern of criminal conduct in the workplace that created an offensive, intimidating, and hostile atmosphere for Plaintiff based on her gender.

190.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

191.    Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

192.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

//

//

//

//

41

**FOURTEENTH CAUSE OF ACTION**
**Retaliation in Violation of New York State Human Rights Law, ("NYSHRL")**
**Section 296 and California Government Code Section 12940(h).**
*Against Defendants Sean Combs & Bad Boy Records*

193.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

194.    Plaintiff engaged in protected activity by rejecting Defendant's sexual advances, which constitutes opposition to unlawful sexual harassment under New York State Human Rights Law (NYSHRL), Section 296. This rejection is protected activity under NYSHRL and California Government Code, as it opposes discriminatory conduct in the workplace.

195.    Defendants Sean Combs and Bad Boy Records' persistent denial of prominent or continuing singing/writing/performing roles as to Plaintiff constitutes adverse employment actions. Plaintiff's rejection of Combs' sexual advances subjected her to an increasingly hostile work environment based on her gender. These actions materially and detrimentally affected Plaintiff's terms and conditions of employment, and were in direct response to Plaintiff's protected activity of rejecting Defendant's sexual advances.

196.    Further, Defendants' failure to pay Ms. Richard earned wages, royalties, and concert and promotional appearance fees according to contracts and other promises constitute adverse employment actions based on gender and were done in retaliation by Defendants.

197.    There is a direct causal connection between Plaintiff's protected activity and Defendants' adverse employment action. The timing and circumstances indicate Defendant's retaliatory motives.

198.    As a direct and proximate result of Defendants' retaliation, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

199.    Defendants' unlawful and retaliatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

200.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**FIFTEENTH CAUSE OF ACTION**
**Hostile Work Environment in violation of California Government Code §12940**
*Against Defendants Sean Combs & Bad Boy Records*

201.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

202.    Defendants Sean Combs and Bad Boy Records subjected Plaintiff to sexual harassment on the basis of her gender in violation of California Government Code § 12940, including unwanted touching of her intimate parts, forcing Plaintiff to endure derogatory name-calling, and exposing Plaintiff to sex trafficking and sex acts, all of which constituted a hostile work environment.

203.    The conduct of Defendants Sean Combs and Bad Boy Records created an intimidating, hostile, and offensive working environment in violation of California Government Code §12923.

204.    As a direct and proximate result of Defendants' unlawful conduct in violation of Cal. Gov. Code § 12940, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

205.    Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Cal. Gov. Code § 12940 for which Plaintiff is entitled to an award of punitive damages.

206. Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**SIXTEENTH CAUSE OF ACTION**
**Gender Discrimination in violation of California Government Code §12940**
*Against Defendants Sean Combs & Bad Boy Records*

207. Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

208. Defendants Sean Combs and Bad Boy Records discriminated against Plaintiff on the basis of her gender in violation of California Government Code § 12940 by subjecting Plaintiff to disparate treatment, verbal abuse, systematic exclusion, failure to address complaints of discrimination and/or harassment, retaliation, derogatory gender-based slurs and comments, insults and offensive gender-based language, intimidation and bullying, threats, unfair treatment, and denial of opportunities, promotions, or benefits based on her gender.

209. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Cal. Gov. Code § 12940, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

210. Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Cal. Gov. Code § 12940 for which Plaintiff is entitled to an award of punitive damages.

211. Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

//

//

44

### SEVENTEENTH CAUSE OF ACTION
### Violation of Right of Publicity Under New York Civil Rights Law
### § 50 and § 51 and Unjust Enrichment
***Against Defendants Sean Combs, Bad Boy Records, Universal Music Group NV, Interscope Geffen A&M Records, Diageo Americas Supply Inc. d/b/a Ciroc Distilling Company d/b/a Ciroc Canning Co., Combs Wines and Spirits LLC***

212.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

213.    Mr. Combs required Ms. Richard to perform at and attend numerous promotional events as part of *Diddy – Dirty Money*, including late or overnight parties  which were under contract between Mr. Combs and CIROC Vodka, or were between Mr. Combs and DiddyBeats pursuant to the aforementioned deal between Bad Boy Records and  Interscope Records.

214.    Defendants knowingly used Plaintiff's voice, likeness, image, and persona without Plaintiff's consent for advertising and promotion purposes and for the purpose of trade.

215.    Defendants have been unjustly enriched at Plaintiff's expense by using Plaintiff's voice, image, likeness, and persona without compensating Plaintiff.

216.    It would be inequitable for Defendant to retain the benefit conferred by the unauthorized use of Plaintiff's voice, image, likeness, and persona.

217.    As a result of Defendants' unauthorized use of Plaintiff's likeness, image, and persona, Plaintiff has suffered damages and is entitled to restitution in an amount to be determined at trial.

218.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

//

//

//

## EIGHTEENTH CAUSE OF ACTION
## Copyright Infringement
## 17 U.S.C. § 106
### *Against Defendants Sean Combs, Bad Boy Records & Love Records, Inc.*

219.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

220.    Plaintiff wrote, created and performed on the music composition and sound recording of the song *Deliver Me* in 2009, as included on Defendants' 2023 released album *The Love Album: Off the Grid*.

221.    The composition and recording of *Deliver Me* was published by Defendants absent agreement on terms; thus, Defendants have no signed or enforceable agreement with Plaintiff. Plaintiff registered the musical composition and sound recording pertinent thereto with the Register of Copyrights and received the certificate of registration therefor.  Plaintiff owns copyrights in the musical composition, rights of performance therein, and the exclusive rights to reproduce and distribute to the public by sale or other transfer of ownership, or by lease, lending or license, reproductions of the copyrighted works under Copyright Act, 17 U.S.C.§ 106.

222.    Plaintiff is informed and believes and thereon alleges that on September 14-15, 2023, and continuing to the present, Defendants, and each of them, knowingly and willfully and without securing Plaintiff's permission or license: embodied, adapted, used, reproduced, marketed, distributed and sold Plaintiff's copyrighted material on *Deliver Me* as affixed in the Defendants' album *The Love Album: Off the Grid*.

223.    Accordingly, Plaintiff alleges her claim for copyright infringement based on each Defendant's publication of *Deliver Me* as Plaintiff's copyrighted musical composition without license, permission or approval.

224.    Each Defendant unquestionably had access to Plaintiff's work through Defendants previous companies, Bad Boy Records, et al.  or other of Defendants' holders of recorded

compositions, and each Defendant knowingly and willfully ratified and confirmed said access thereafter.

225.    In undertaking the conduct complained of in this action, Defendants knowingly and intentionally violated Plaintiff's rights.

226.    At no time did Plaintiff authorize Defendants to use, license, own, reproduce, adapt or distribute Plaintiff's copyrighted material.  At the times of the acts of infringement complained of, Plaintiff was and is the owner of the copyright in the music composition identified and named above.

227.    After the respective dates of first publication and continuing to the present, the Defendants, and each of them, have infringed and continue to infringe Plaintiff's copyrights in the music composition by reproducing or causing, contributing to, and participating in the unauthorized reproduction of the copyrighted music composition and by causing, contributing to, and participating in the distribution of the unauthorized reproductions of the music composition as recorded to the public.

228.    Despite their actual or constructive knowledge through their individual and collective recording industry experience and knowledge of copyright laws, enforcement of intellectual property rights in other instances and their duties to view and examine licenses for uses of copyrighted works, Defendants have used and promoted and continue to use and promote, reproduce and to enable others to reproduce Plaintiff's copyrighted music composition in its complete or substantial entirety as and for the commercial profit of Defendants without any ongoing payment to or authorization by Plaintiff (i.e. no accountings have been received).

229.    As a direct and proximate result of the Defendants' knowing and willful infringing use of the copyrights, Plaintiff has sustained and will continue to sustain substantial injury, loss and damage to her ownership, publishing and performance rights in her music composition, which is copyrighted material.

230.    As a result of all of Defendants' joint, several, willful and deliberate acts of copyright infringement, Plaintiff is further entitled to recover from Defendants all of the damages sustained by Plaintiff permitted by federal copyright law, including but not limited to compensatory damages and the profits derived by Defendants as a result of their infringing acts, in an amount to be determined according to proof at trial.

231.    Plaintiff is further entitled to recover from Defendants the gains, profits and advantages Defendants, and each of them, have obtained as a result of their acts of copyright infringement.

232.    Plaintiff is entitled to the maximum statutory damages which copyright registration confers upon a copyright owner, pursuant to 17 U.S.C. §504(c), in the amount of $150,000.00 with respect to each Defendant for each work infringed, or for such other amounts as may be proper under 17 U.S.C. §504(c).

### NINETEENTH CAUSE OF ACTION
#### Breach of Contract
*Against Defendants Sean Combs, Bad Boy Records, The Sean Comb Music Inc, The Nordlinger Group LLC, November 15, LLC, Janice Combs Publishing Inc & Sony Songs*

233.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

234.    Under the initial Participant Agreement signed by Plaintiff in 2005 with Defendant Remote Productions Inc., on information and belief, a company owned by Sean Combs, Plaintiff was promised transportation to and from venues, adequate meals, rest and sleep, medical care and impliedly, safety from a hostile workplace.  Despite that Plaintiff fulfilled all of her duties and beyond, Defendants breached its duty to provide these basic remunerations.  Defendants also failed to pay salary, royalties, profit participation, promotions, and touring to Plaintiff.

235.    In late 2007, Plaintiff signed The Performer Agreement with Defendant Remote Productions, Inc. which promised minimum compensation to Plaintiff of $4,000 per episode of

*Making The Band,* travel and transportation costs, promotions pay at $3,000 per episode after 6 free, $250 per day for voiceovers or remixes, and performance rights. Despite Plaintiff's working overtime and double-time, wages or other promised compensation was withheld at least 80% of the time.

236.    Defendant Bad Boy Records, LLC, naming itself as successor-in-interest to Remote Productions, Inc, and Plaintiff signed an agreement entitled The Danity Kane Letter Amendment [the "DK Letter"] in late 2007. The DK Letter promised Plaintiff approval rights, advances, concert remuneration, royalties at 12.5% payable by Defendant The Nordlinger Group and/or November 15, LLC. Such payments were not made in accordance with contract, if at all, despite demands to Defendants' attorneys.

237.    Defendants not only breached terms of the agreements listed above, but additionally breached the implied covenants of an employer-employee relationship by acting in bad faith and unfairly frustrating Plaintiff's right to receive the benefits of the agreements actually made.

238.    Plaintiff entered a contract with Defendants "The Sean Comb Music, Inc." on January 1, 2009, promising payment to Plaintiff of 12.5% on sound recording masters in the US and 10% of Net Tour Revenues or 5% per performance; Plaintiff was required to exclusively license her music compositions to Defendants and assign the publishing administration to Defendants.

239.    On information and belief, at an unknown point in time, Defendant The Sean Comb Music Inc. assigned its publishing administration to Janice Combs Publishing, Inc. and such administration rights are alleged to be held by Janice Combs Publishing Holdings Inc.

240.    On July 1, 2021, Defendants Janice Combs Publishing Inc. granted exclusive administration rights in Plaintiff's compositions to Sony Songs, a division of Sony Music Publishing LLC. Plaintiff signed her assent to the assignment on October 22, 2021. The

assignment provided that Plaintiff would receive 90% of publisher's share of performance income, 80% of synchronization income and 90% of all other income.

241.    Since a music publisher owes a duty to a writer to account to the writer for royalties earned, each of the Defendants named in this count have wholly failed to provide accountings, statements, payments nor validly register, administer, exploit or oversee the Plaintiff's copyrights they were entrusted with via the contracts and thereby breached the contracts with Plaintiff.

242.    Plaintiff provided her talent as a singer, writer, performer, dancer and recording artist.  Defendants received significant benefits and compensation from Plaintiff's services. Yet none of the wages, royalties, publishing, touring, promotional fees and other profits promised by Defendants were paid as agreed; conversely,  Defendants routinely refused to pay despite Plaintiff's requests, nor was Plaintiff made whole at any time.

243.    Defendants' failure to perform the required duties set forth in the terms and conditions of the contracts was foreseeable in causing Plaintiff to suffer general, consequential and incidental damages, including economic damages.  Defendants' conduct is a breach of contract.

244.    As an actual and proximate result of Defendants' unlawful and unconscionable conduct in breaching its fiduciary duties, Plaintiff has lost wages, profits, benefits, royalties, and has incurred other out of pocket expenses.

245.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

//

//

//

//

## TWENTIENTH CAUSE OF ACTION
## Breach of Implied Covenant of Good Faith & Fair Dealing
### *Against All Defendants*

246.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

247.    Plaintiff entered several contracts with Defendants.

248.    Plaintiff did all, or substantially all of the significant things the contracts required her to do.

249.    The allegations set forth in this complaint detail the malevolent and intentional behavior by Defendants repeated throughout a 20 year span, all of which constitute breaches of the implied covenant of good faith and fair dealing and demonstrate the bad faith of Defendants at all relevant times.

250.    Defendants did not pay Plaintiff her salary as agreed.

251.    Defendants did not pay Plaintiff her royalties, nor extraneous promotions in any instance.

252.    Defendants did not pay Plaintiff her share of income for her contributions to musical compositions, her publishing, as agreed, despite the assignments to various companies.

253.    Not only have Defendants failed to pay Plaintiff, they have failed to promote Plaintiff's works, and infringed her copyrights.

254.    Defendants' unfair interference with Plaintiff's right to receive the benefits of each contract was foreseeable in causing Plaintiff to suffer general, consequential and incidental damages, including economic damages according to proof at trial.

255.    Defendants knew or could reasonably have foreseen that the harm and/or special circumstances were likely to occur in the ordinary course of events as a result of the breaches of Defendants' obligations to act in good faith, make Plaintiff's property productive and account for

and pay Plaintiff as agreed. Accordingly, Defendants' conduct was a breach of implied covenant of good faith and fair dealing.

256.    As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, and has lost wages, benefits, and other out of pocket expenses.

257.    As an actual and proximate result of Defendants' aforementioned acts, Plaintiff has suffered physical injury and became mentally upset, stressed and aggravated. Plaintiff has experienced post-traumatic stress disorder, mental anguish, aggravation, anxiety, humiliation, embarrassment, sleeplessness, loss of appetite, low self-esteem, depression, upset stomach, and other forms of extreme emotional distress.  Plaintiff claims damages for physical injuries and mental distress in an amount according to proof at trial.

258.    The above-described actions were perpetrated and/or ratified by a managing agent, employee or officer of Defendants, and each of them.  These acts were done with malice, fraud, oppression and in reckless disregard of Plaintiff's rights.  Further, said actions were despicable in character and warrant the imposition of punitive damages in a sum sufficient to punish and deter Defendants' future conduct.

259.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**TWENTY FIRST CAUSE OF ACTION**
**Fraud / Intentional Misrepresentation / False Promise**
***Against All Defendants***

260.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

261.    Plaintiff asserts this cause of action against all Defendants.

262.    Defendants represented to Plaintiff that certain facts relative to payments to Plaintiff were true in each of the contracts above-listed.  Further, Defendants made multiple promises in writing to Plaintiff.

263.    Defendants' representations were false; Defendants did not intend to perform these promises when they were made or at any time.

264.    Defendants knew that their representations were false when they were made and they made such representations recklessly and without regard for the truth in such representations.

265.    Defendants intended that Plaintiff rely on their representations and promises.

266.    Plaintiff reasonably relied on Defendants' representations and promises.

267.    Defendants did not perform the promised acts.

268.    Plaintiff was harmed.

269.    Plaintiff's reliance on Defendants' representations and promises was a substantial factor in causing Plaintiff to suffer general, consequential and incidental damages, including economic damages according to proof at trial.  Defendants knew or could reasonably have foreseen that the harm and special circumstances were likely to occur in the ordinary course of events as a result of the Defendants' breaches of contracts.  Accordingly, Defendants' conduct was intentional misrepresentation.

270.    As an actual and proximate result of Defendants' intentional and unlawful misrepresentation and false promises, Plaintiff has lost wages, profits, benefits, royalties, and has incurred other out of pocket expenses.

271.    As an actual and proximate result of Defendants' fraudulent acts, Plaintiff has suffered physical injury and became mentally upset, stressed and aggravated. Plaintiff has experienced post-traumatic stress disorder, mental anguish, aggravation, anxiety, humiliation, embarrassment, sleeplessness, loss of appetite, low self-esteem, depression, upset stomach, and

other forms of extreme emotional distress.  Plaintiff claims damages for physical injuries and mental distress in an amount according to proof at trial.

272.    The above-described actions were perpetrated and/or ratified by a managing agent, employee or officer of Defendants, and each of them.  These acts were done with malice, fraud, oppression and in reckless disregard of Plaintiff's rights.  Further, said actions were despicable in character and warrant the imposition of punitive damages in a sum sufficient to punish and deter Defendants' future conduct.

273.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## PRAYER FOR RELIEF ON CLAIMS

**WHEREFORE**, Ms. Richard prays that this Court enter judgment against Defendants herein and any other Defendants who may later be added to this action as follows:

1.    For a money judgment representing compensatory damages, including but not limited to:  consequential damages, lost wages, earning, royalties, publishing, touring and promotional income, and non-economic damages, and all other sums of money, together with interest on these amounts, according to proof;

2.    For a money judgment for mental pain and anguish and severe emotional distress, according to proof;

3.    For restitution;

4.    For disgorgement of all sums unjustly obtained from Plaintiff or inured to the benefit of Defendants;

5.    For civil penalties;

6.    For punitive and exemplary damages according to proof;

7.      For attorneys' fees and costs;

8.      For prejudgment and post-judgement interest; and

9.      For such other and further relief as the Court may deem just and proper.

### JURY DEMAND

1.  Ms. Richard demands a trial by jury on all issues triable of right by jury.

DATED:        September 10, 2024
              New York, New York

Respectfully submitted,

**THE BLOOM FIRM**

By: _____
        Lisa Bloom
        Arick Fudali
        Yasmine Meyer
        Devin Meepos
      Attorneys for Ms. Richard

**IP LEGAL STUDIO LLC**

By: _____
        Lisa A. Cervantes
      Attorneys for Ms. Richard