

November 13, 2024

Hon. Katherine Polk Failla
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re: *Richard v. Combs, et al.*; Case No. 1:24-cv-6848 (KPF)

Dear Judge Failla:

      We represent Plaintiff Dawn Angelique Richard in the above-captioned matter. We hereby respond to Defendant UMGR's October 21, 2024, pre-motion letter (Dkt. No. 73).

      UMGR contends that dismissal is warranted as "the Complaint barely mentions any UMGR entities" and that the claims against UMGR "require proving direct acts or statements by UMGR, or contracts between Plaintiff and UMGR." UMGR offers no bases for these purported requirements and Plaintiff otherwise sufficiently pleads all the elements for the claims at issue.

**Count One: Violation of The Victims of Gender-Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, et seq.**

      UMGR's assertion that the Victims of Gender-Motivated Violence Protection Law ("GMVL") did not allow for corporate liability prior to the 2022 amendment and therefore cannot be applied retroactively to impose liability on it for conduct occurring before that date is unsupported. UMGR's reliance on *Gottwald v. Sebert*, No. 653118/2014, 2016 WL 1365969, is misplaced. *Gottwald* was decided prior to the 2022 amendment which introduced provisions expanding liability to include corporate entities. As such, *Gottwald* only examined the statute as it existed at that time – in 2016 – and naturally did not consider any retroactivity issues stemming from subsequent amendments. *Gottwald* did not address retroactivity in the context of a statutory amendment expanding liability to include corporations.

      An analysis of the 2022 amendment to the GMVL's text, legislative history, and judicial principles supports its retroactive application. The text itself contains a two-year lookback window allowing survivors to file civil lawsuits regardless of when the violence occurred. This provision indicates a clear legislative intent to address past incidents to achieve justice for survivors, which inherently provides for retroactivity. During the legislative discussions, it was emphasized by the thirty council members that the amendment was intended to ensure that survivors of gender-motivated violence could seek justice regardless of how many years had elapsed since the incident.

      UMGR's reliance on *J.L. v. Rockefeller Univ.*, No. 950131/2020, 2023 WL 3757389, to argue that the GMVL does not apply retroactively misinterprets the case's conclusion. In fact, the *J.L.* court reached the opposite conclusion. *J.L.* merely clarified that the Child Victims Act (CVA) revival window could not revive a GMVL claim where the GMVL did not exist at the time of the plaintiff's alleged abuse in the 1960s. This ruling is irrelevant to our case, as Plaintiff is not attempting to use the CVA to revive a GMVL

Our attorneys are admitted to practice law in California, New York, Florida, Ohio and Illinois
26565 Agoura Road., Suite 200, Calabasas, CA 91302 | Office: (818) 914-7397 | Fax: (818) 884-8079 | TheBloomFirm.com

claim, nor do her alleged incidents predate the GMVL. Thus, *J.L.* offers no support for Defendant's position that the GMVL cannot be applied retroactively in the present context.

The *J.L.* court initially acknowledged its prior 2005 interpretation that the statute did not apply retroactively. However, upon analyzing the 2022 amendments, which introduced a two-year lookback window, the court concluded that these changes provided survivors with a renewed opportunity to file claims regardless of when the incidents occurred, reinforcing a clear legislative intent to apply the statute retroactively. Moreover, citing *Landgraf v. USI Film Products*, 511 US 244 (1994), the *J.L.* court reasoned that the amendments did not impose new duties on defendants but rather provided a remedial avenue for redress for victims of past gender-motivated violence. Thus, the *J.L.* court upheld the retroactive application of the GMVL amendments, aligning with the legislature's purpose to remedy past injustices.

In *Landgraf*, *supra,* the U.S. Supreme Court outlined the factors used to determine the retroactive effect of a statute, specifically: "… whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.*, at 245. Applying this rule to the GMVL amendment, the retroactive application does not impair any rights that UMGR possessed when it acted. UMGR had no vested right to be immune from liability for gender-motivated violence, as such conduct was already subject to legal consequences under numerous laws, e.g., Title VII of the Civil Rights Act of 1964; New York State Human Rights Law (NYSHRL); and common law torts such as assault and battery. The 2022 amendment to the GMVL did not impose any new substantive duties on UMGR. Consequently, UMGR was always on notice of its obligations.

Lastly, Plaintiff has sufficiently alleged how and why UMGR should be liable under the GMVL. Plaintiff alleged that UMGR's subsidiary, Interscope, 1) was present at a dinner where Mr. Combs assaulted a woman, *i.e.*, engaged in gender-motivated violence, 2) it knew that "[Mr.] Combs was dangerous around females" (Complaint, at ¶ 68), 3) it knew that his company employed Plaintiff and 4) it nonetheless later entered into a distribution deal "providing Mr. Combs with immense financial rewards and **enabling** him to commit further acts of violence without fear of repercussions." (Complaint, at ¶ 69) (Emphasis added).

### Count Three: Forced Labor in Violation of 18 U.S.C. §§ 1589 and 1595

Plaintiff's claim for Forced Labor is timely because the continuous death threats and coercive tactics used against Plaintiff effectively prevented her from exercising her rights within the statutory period. Should it be necessary, this claim can be realleged with more specificity as to how UMGR knowingly benefitted from the forced labor in an amended complaint.

### Count Seventeen: Violation of Right of Publicity Under New York Civil Rights Law § 50 and § 51 and Unjust Enrichment

It is well established that a pre-answer motion to dismiss on timeliness grounds "may be granted *only* if it is clear on the face of the complaint that the statute of limitations has run." *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014). Plaintiff's claims are timely due to the continuous death threats and coercion that prevented Plaintiff from asserting her rights within the statutorily proscribed period. Should it be necessary, UMGR's violation of Plaintiff's right of publicity based on ongoing exploitation of Plaintiff's intellectual property can be realleged with more specificity in an amended complaint that would allow equitable tolling to apply.

Our attorneys are admitted to practice law in California, New York and Florida
26565 Agoura Road., Suite 200, Calabasas, CA 91302 | Office: (818) 914-7397 | Fax: (818) 884-8079 | TheBloomFirm.com

B

In 2009, UMGR/Interscope partnered with Bad Boy Records, LLC because of *Diddy Dirty Money*, a band formed by Mr. Combs, of which Plaintiff was a key member. Plaintiff's face, name, picture and voice were continually used by Interscope within the state of New York and elsewhere for purposes of promotion of the group for both advertising and trade by Bad Boy Records, Interscope and UMGR.[1] Plaintiff did not consent to any of these uses.

Plaintiff has sufficiently alleged claims pursuant to New York Civil Rights Law §§ 50 and 51. This Court has held that "To establish liability under Section 51, a plaintiff must demonstrate each of four elements: (i) usage of plaintiff's name, portrait, picture, or voice, (ii) within the state of New York, (iii) for purposes of advertising or trade, (iv) without plaintiff's written consent." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 249 (2d Cir. 2021). In *Ratermann v. Pierre Fabre USA, Inc.*, No. 1:22-cv-00930-GHW, 2023 WL 7627425 (S.D.N.Y. Feb. 28, 2023), the Court found that the plaintiff's Fifth Amended Complaint sufficiently alleged that the defendant used her image "for purposes of ... trade," namely that it "sold, transferred, distributed, and traded to [Defendant] portraits and pictures of [the plaintiff] for use outside of the scope of the relevant license. Like the plaintiff in *Ratermann*, Plaintiff's claims survive as Plaintiff properly pled that "Defendants knowingly used Plaintiff's voice, likeness, image, and persona without Plaintiff's consent for advertising and promotion purposes and for the purpose of trade." Complaint, ¶ 214. At this stage, that allegation suffices to state a claim under Sections 50 and 51. *See, e.g.*, *Passelaigue v. Getty Images (US), Inc.*, No. 16-CV-1362 (VSB), 2018 WL 1156011, at *6 (S.D.N.Y. Mar. 1, 2018) (denying a motion to dismiss because the plaintiff had adequately pleaded that the sale of her images was not "for use in a manner lawful under Section 51 by virtue of the fact she did not knowingly authorize their use.")

These continuing actions by Interscope resulted in profits to Mr. Combs, Bad Boy Records, LLC, and ultimately UMGR until at least 2015 and likely to the present. Equitable tolling applies due to Mr. Combs' threats and coercion, which UMGR enabled through its continued business partnership with Mr. Combs despite knowledge of his unlawful conduct.

NYCRL §§ 50 and 51 preempts Plaintiff's claim for unjust enrichment, and Plaintiff's cause of action for unjust enrichment is withdrawn against UMGR only.

**Counts Twenty and Twenty-One:  Good Faith/Fair Dealing and Fraud**

Plaintiff withdraws these claims against UMGR only.

Dated: November 13, 2024                                        THE BLOOM FIRM

                                                                                        *Lisa Bloom*
                                                                                        _____
                                                                                        LISA BLOOM
                                                                                        Attorneys for Plaintiff,
                                                                                        DAWN RICHARD

[SIGNTURES CONTINUED ON NEXT PAGE]

---

[1] UMGR engaged in other unauthorized commercial exploitation of Plaintiff's image and likeness through promotional activities such as the May 26, 2010 launch of *Diddybeats* in a New York City store, a brand developed from Beats by Dre and endorsed by Jimmy Iovine and UMGR.  See also: https://youtu.be/TgcIQd5S8n0?si=NcPEjyYprFyElMus, https://www.youtube.com/watch?v=XlgijeW8jvw, https://www.youtube.com/watch?v=RRUlufWg7ik

DATED: November 13, 2024				IP LEGAL STUDIO, LLC


						/s/  Lisa A. Cervantes
						LISA A. CERVANTES
						Attorney for Plaintiff,
						DAWN RICHARD

Our attorneys are admitted to practice law in California, New York and Florida
26565 Agoura Road., Suite 200, Calabasas, CA 91302 | Office: (818) 914-7397 | Fax: (818) 884-8079 | TheBloomFirm.com

B