

December 4, 2024

Hon. Katherine Polk Failla
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, New York, NY 10007

      **Re: *Richard v. Combs, et al.*; Case No. 1:24-cv-6848 (KPF)**

Dear Judge Failla:

      We represent Plaintiff Dawn Angelique Richard in the above-captioned matter. We hereby respond to Defendant Harve Pierre's November 8, 2024, pre-motion letter (Dkt. No. 85).

**Count One: Violation of The Victims of Gender-Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, et seq.**

**1.  The New York City Gender-Motivated Violence Act Can Be Applied Retroactively**

      Mr. Pierre's assertion that the 2022 amendment to the Victims of Gender-Motivated Violence Protection Law ("GMVL") cannot be applied retroactively to impose liability on third parties is unsupported. An analysis of the 2022 amendment to the GMVL's text, legislative history, and judicial principles supports its retroactive application. The text itself contains a two-year lookback window allowing survivors to file civil lawsuits regardless of when the violence occurred. This provision indicates a clear legislative intent to address past incidents to achieve justice for survivors, which inherently provides for retroactivity. The amendment ensured that survivors of gender-motivated violence could seek justice regardless of how many years had elapsed since the incident.[1]

      In *J.L. v. Rockefeller Univ.*, No. 950131/2020, 2023 WL 3757389, the court analyzed the 2022 amendments and concluded that these amendments provided survivors with a renewed opportunity to file claims regardless of when the incidents occurred, reinforcing a clear legislative intent to apply the statute retroactively. Moreover, citing *Landgraf v. USI Film Products*, 511 US 244 (1994), the *J.L.* court reasoned that the amendments did not impose new duties on defendants but rather provided a remedial avenue for redress for victims of past gender-motivated violence. Thus, the *J.L.* court upheld the retroactive application of the GMVL amendments, aligning with the legislature's purpose to remedy past injustices.

      In *Landgraf*, *supra,* the U.S. Supreme Court outlined the factors used to determine the retroactive effect of a statute, specifically: "… whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.*, at 245. Applying this rule to the GMVL amendment, retroactive application does not impair any rights that Mr. Pierre possessed when he acted. Mr. Pierre had no vested right to be immune from liability for gender-motivated violence, as such conduct was already subject to legal consequences under numerous laws, e.g., Title VII of the Civil Rights Act of 1964; New York State Human Rights Law (NYSHRL); and common law torts proscribing false imprisonment. The 2022 amendment to the GMVL

---

[1] https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=5072017&GUID=BA4C2A62-23E0-4AB2-B3A1-AC18F53C9993

did not impose any new substantive duties on Mr. Pierre. Consequently, Mr. Pierre was always on notice of his obligations.

Mr. Pierre's reliance on *Bensky v. Indyke*, No. 24-cv-1204, F. Supp. 3d, 2-24 WL 3676819 (S.D.N.Y Aug. 5 2024) is misplaced. Faced with a motion to dismiss the GMVL claim, the plaintiff in *Bensky* only made the conclusory argument that "the 2022 amendments also revived time-barred claims" without addressing whether its retroactive application would make new substantive obligations retroactive. Mr. Pierre's reliance on *Doe v. The Lee Strasberg Theatre & Film Inst.*, No. 952014/2023, 2023 WL 8895417 (Sup. Ct. N.Y. Cty. Dec. 21, 2023) is inapposite because that case involved a negligence claim for conduct that took place in 1974, *prior* to the GMVL's enactment in 2000. In the instant matter, the relevant conduct took place after the GVML was enacted.

### 2. Mr. Pierre Affirmatively Participated in Mr. Combs' Gender-Motivated Violence

Mr. Pierre contends that he did not "enable" the gender-motivated violence—namely, the false imprisonment of Ms. Richard. However, he conveniently disregards the additional language in the 2022 amendment to the GMVL, which explicitly extends liability to those who "**direct, enable, participate in, or conspire** in a gender-motivated act of violence" while also granting survivors more time to pursue civil actions by extending the statute of limitations. N.Y.C. Admin. Code §§ 10-1101 et seq. (emphasis added).

As alleged in the Complaint, after Mr. Combs verbally berated Ms. Richard and Ms. Harper in front of others, calling them derogatory names, Mr. Combs attempted to strike Ms. Richard when she asked him to stop. Before he could hit her, his bodyguard intervened, forcibly escorted her out of the studio, and trapped her in the Bentley owned by Bad Boy Records that was parked outside. (Compl. ¶¶ 98–100). Mr. Pierre did not allow her to leave. Two hours later, Ms. Richard's father arrived from Baltimore to demand her release. Only then did Mr. Pierre order the bodyguard to free Ms. Richard from the vehicle. (Compl. ¶ 103).

Mr. Pierre's actions, in concert with Mr. Combs and the bodyguard, clearly fall within the scope of the GMVL 2022 amendment. By conspiring with Combs and directing the bodyguard to imprison Ms. Richard for hours, Mr. Pierre actively participated in and facilitated Ms. Richard's false imprisonment. Ms. Richard was confined in freezing temperatures without access to her belongings, including her cell phone. She was confined without any means of escape, as the vehicle had no interior handles. Mr. Pierre's direct control over the timing and the delay of Ms. Richard's release from the locked car demonstrates his role in perpetrating the harm.

### Counts Nine and Eleven: False Imprisonment and Intentional Infliction of Emotional Distress

"When duress is part of the cause of action alleged, the limitations period is tolled until the termination of the duress…. Although such duress does not prevent the accrual of the cause of action, it tolls the running of the limitations statute because the offensive conduct is regarded as a ***continuous wrong.***" *Baratta v. Kozlowski*, 94 A.D.2d 454, 458–59 (N.Y. App. Div. 2d Dep't 1983) (emphasis added). Here, Mr. Pierre's infliction of duress upon Ms. Richard is integral to her underlying claims of false imprisonment, GMVL, and hostile work environment. Mr. Pierre actively ratified and participated in Ms. Richard's confinement in a car after she protested being called a "bitch," following Mr. Combs' attempt to assault her. This act of confinement constitutes duress inflicted on Ms. Richard and supports the tolling of the limitations period under the doctrine of duress, thereby invoking estoppel.

Our attorneys are admitted to practice law in California, Nevada, New York, Florida and Texas
26565 Agoura Road., Suite 200, Calabasas, CA 91302 | Office: (818) 914-7397 | Fax: (818) 884-8079 | TheBloomFirm.com

B

As President of Bad Boy Records, where Ms. Richard was employed, Mr. Pierre owed her a duty of loyalty. Instead, he actively participated in and ratified Mr. Combs' campaign of intimidation and coercion, fostering a hostile, intimidating workplace for female employees. Acts of aggression were normalized and tolerated, particularly when women spoke out or resisted abuse—facts of which Mr. Pierre was fully aware. This continuous pattern of abuse created an atmosphere of duress, with Mr. Pierre's actions directly contributing to and reinforcing the harm.

Courts recognize that equitable tolling can apply where there is "a sufficiently close connection between the duress and the conduct of each defendant." *Zimmerman v. Poly Prep Country Day School*, 888 F. Supp. 2d 317, 337 (E.D.N.Y. 2012). Mr. Pierre's actions were not isolated or discrete. As President of Bad Boy Records, he was deeply connected to and complicit in Mr. Combs' wrongful conduct, as demonstrated by their coordinated effort to silence Ms. Richard. His conduct was part of a broader, ongoing scheme characterized by threats and coercion, which prevented Ms. Richard from asserting her rights against the involved parties. Tolling is thus appropriate and justified here.

Mr. Pierre argues that his liability is grounded in mere nonfeasance. This argument is false because Mr. Pierre *actively* participated in the false imprisonment of Ms. Richard as discussed above.

### Counts Twenty and Twenty-One: Breach of Implied Covenant of Good Faith and Fair Dealing and Fraud, Intentional Misrepresentation, False Promise

Mr. Pierre argues that the Complaint does not allege a contractual relationship between Pierre and Plaintiff. Yet Plaintiff signed an 18-page agreement with Bad Boy Records LLC in November 2007, and another 29-page agreement with Sean Combs Music Inc. on January 1, 2009, ratified by Bad Boy Records LLC, all during Pierre's 2007-2017 presidency with Bad Boy defendants and Mr. Combs.

Mr. Pierre, the Bad Boy defendants' president, can be liable for breach of the implied covenant of good faith and fair dealing with respect to Plaintiff's employment contracts with his companies. Mr. Pierre's direct complicity in the hostile workplace violates multiple other legal duties and creates other forms of liability since federal and state anti-discrimination laws prohibit hostile work environments. Accordingly, Mr. Pierre bears direct liability for his active participation and personal engagement in the harassment and discrimination against Plaintiff. As a high-level supervisor, Mr. Pierre had a heightened responsibility to prevent and address hostile workplace conditions. Since Mr. Pierre was fully aware of hostile conditions and failed to take corrective action, he can be personally liable.

Plaintiff will amend her complaint to specify the contractual relationship between Plaintiff and Mr. Pierre and include the particularity required by Fed. R. Civ. P. 9(b) for her fraud/misrepresentation claim.

Respectfully submitted this 4th day of December 2024:

| | |
|---|---|
| THE BLOOM FIRM | IP LEGAL STUDIO, LLC |
| _____ | _____ |
| DEVIN MEEPOS | LISA CERVANTES |
| Attorneys for Plaintiff DAWN RICHARD | Attorneys for Plaintiff DAWN RICHARD |