**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DAWN ANGELIQUE RICHARD,

                          Plaintiff,

           v.

SEAN COMBS, HARVE PIERRE, DADDY'S
HOUSE RECORDING STUDIO, BAD BOY
ENTERTAINMENT LLC, BAD BOY RECORDS
LLC, BAD BOY ENTERTAINMENT
HOLDINGS INC, BAD BOY PRODUCTIONS
HOLDINGS INC, BAD BOY BOOKS
HOLDINGS INC, 1169 CORP f/k/a SEAN
COMBS MUSIC INC, SEAN COMBS CAPITAL
LLC, CE OpCo, LLC f/k/a COMBS
ENTERPRISES, LLC, UMG RECORDINGS,
INC., JANICE COMBS PUBLISHING LLC,
JANICE COMBS PUBLISHING HOLDINGS
INC, LOVE RECORDS INC, TRI STAR
SPORTS AND ENTERTAINMENT GROUP
INC, DOE CORPORATIONS 1-10, AND DOE
DEFENDANTS 11-20,

                      Defendants.

Case No. 24-cv-06848 (KPF)

**Oral Argument Requested**

 

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' CONSOLIDATED MOTION TO DISMISS THE FIRST AMENDED**
**COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTS ALLEGED IN THE COMPLAINT ....................................................................... 4

PROCEDURAL HISTORY ............................................................................................... 7

STANDARD OF REVIEW ............................................................................................... 7

ARGUMENT .................................................................................................................... 8

I.      PLAINTIFF'S FIRST SEVENTEEN CAUSES OF ACTIONS ARE UNTIMELY .......... 8

        A.      New York's Shorter Statutes of Limitations Govern Plaintiff's
                State Law Claims ........................................................................................... 8

        B.      Plaintiff's GMVL (COA 1) Claim Is Time-Barred and Any Purported
                Revival Is Preempted ...................................................................................... 9

                1.      The CVA and ASA Occupy the Field of Revival of Sexual
                        Offense Claims.......................................................................... 11

                2.      The GMVL Revival Provision Conflicts With the CVA and ASA ........... 11

        C.      The Statute of Limitations Bars Claims for Assault (COAs 2, 7),
                Battery (COA 8), False Imprisonment (COAs 9, 10) and Intentional Infliction of
                Emotional Distress (COA 11) ......................................................................... 12

        D.      Plaintiff's Trafficking and Forced Labor Claims (COAs 3–6) Are Untimely ...... 13

                1.      Forced Labor and Sex Trafficking Under Federal Law ......................... 13

                2.      Human Trafficking Under State Law.............................................. 14

        E.      Plaintiff's Employment Claims (COAs 12–16) Are Time-Barred....................... 14

        F.      Plaintiff's Right of Publicity and Unjust Enrichment Claim Is Time-Barred....... 15

        G.      No Tolling Doctrine Applies to Save the Time-Barred COAs............................ 15

II.     CLAIMS SHOULD BE DISMISSED AGAINST THE SO-CALLED "BAD BOY"
        ENTITIES AND THE SO-CALLED "COMBS ENTITIES" BECAUSE THEY
        REST ON IMPROPER GROUP PLEADINGS ................................................... 17

III.    PLAINTIFF'S GMVL CLAIM (COA 1) FAILS........................................................ 19

i

A.    The GMVL Claim Must Be Dismissed as to UMGR, the "Combs Entities," and Pierre Because, at the Relevant Time, GMVL Did Not Apply to Them and the 2022 Amendment is Not Retroactive ........................................................ 19

B.    Plaintiff Fails to Allege a GMVL Claim Against Any Defendant ........................ 20

      1.    No Gender Motivated Crime of Violence against Plaintiff in New York ............................................................................... 21

      2.    Plaintiff Fails to Allege a GMVL Claim Against Alleged Enabling Parties ................................................................... 22

IV.    PLAINTIFF FAILS TO STATE CLAIMS FOR FORCED LABOR ............................... 25

A.    Plaintiff Fails to State a Federal Claim for Forced Labor ...................................... 25

B.    Plaintiff Fails to Plead State Law Claims for Forced Labor ................................. 28

V.    PLAINTIFF FAILS TO STATE A CLAIM FOR SEX TRAFFICKING .......................... 29

VI.    NYSHRL DISCRIMINATION CLAIM IS INSUFFICIENTLY PLED .......................... 30

VII.    RIGHT OF PUBLICITY AND UNJUST ENRICHMENT CLAIMS ARE BASELESS. 31

VIII.    THE FORCED LABOR, EMPLOYMENT, RIGHT OF PUBLICITY, AND UNJUST ENRICHMENT CLAIMS ARE BARRED BY CONTRACTUAL RELEASES ............ 33

IX.    PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT ....... 34

A.    Both Copyright Claims Fail Because Combs Is a Co-Author ............................. 35

B.    Plaintiff's Secondary Infringement Claim Also Fails to Satisfy Rule 8 .............. 35

CONCLUSION ............................................................................................................. 36

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Jenkins*,
  No. 115745/03, 2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005) ........................... 17, 22

*Adorno v. Corr. Servs. Corp.*,
  312 F. Supp. 2d 505 (S.D.N.Y. 2004) ...................................................................... 18

*AJ Energy LLC v. Woori Bank*,
  No. 18-CV-3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019)................................... 8

*Arista Records LLC v. Lime Grp. LLC*,
  784 F.Supp.2d (S.D.N.Y 2011) ............................................................................ 36

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................... 7, 23

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ............................................................................. 17

*Bandler v. DeYonker*,
  174 A.D.3d 461 (1st Dep't 2019)........................................................................... 15

*Bardwil Indus. Inc. v. Kennedy*,
  No. 19-CV-8211 (NRB), 2020 WL 2748248 (S.D.N.Y. May 27, 2020)................................... 24

*Barlow v. Skroupa*,
  76 Misc. 3d 587 (Sup. Ct. N.Y. Cnty. 2022) .............................................................. 23

*Becerra v. San Diego Cmty. Coll. Dist.*,
  No. 17-CV-2489 (BAS), 2018 WL 4385370 (S.D. Cal. Sept. 14, 2018)................................... 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................ 7

*Bendit v. Canva, Inc.*,
  No. 23-CV-473 (RA), 2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023)....................................... 31

*Bensky v. Indyke*,
  743 F. Supp. 3d 586 (S.D.N.Y 2024) .................................................................... 20, 22

*Bermudez v. City of New York*,
  783 F. Supp. 2d 560 (S.D.N.Y. 2011)...................................................................... 14

*Beverley v. 1115 Health & Benefits Fund*,
　　420 F. Supp. 2d 47 (E.D.N.Y. 2005) ..................................................... 21

*Bistline v. Parker*,
　　918 F.3d 849 (10th Cir. 2019) ............................................................. 27

*Brown v. Daikin Am. Inc.*,
　　756 F.3d 219 (2d Cir. 2014) ................................................................ 30

*Bueno v. Eurostars Hotel Co.*,
　　No. 21-CV-535 (JGK), 2022 WL 95026 (S.D.N.Y. Jan. 10, 2022) ......................... 31

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
　　17 N.Y.3d 269 (2011) ......................................................................... 34

*Chambers v. Time Warner, Inc.*,
　　282 F.3d 147 (2d Cir. 2002) ............................................................. 8, 34

*Chwick v. Mulvey*,
　　81 A.D.3d 161 (2d Dep't 2010) ............................................................. 11

*Collins v. Pearson Educ., Inc.*,
　　721 F. Supp. 3d 274 (S.D.N.Y. 2024) .................................................. 17, 18

*Corrigan v. Town of Brookhaven*,
　　No. 22-CV-4688 (GRB), 2023 WL 7003936 (E.D.N.Y. Oct. 24, 2023) .................. 12

*Cortner v. Israel*,
　　732 F.2d 267 (2d Cir. 1984) ................................................................ 35

*Davis v. Blige*,
　　505 F.3d 90 (2d Cir. 2007) .................................................................. 35

*DJL Rest. Corp. v. City of New York*,
　　96 N.Y.2d 91 (2001) ........................................................................... 11

*Doe v. Alsaud*,
　　12 F. Supp. 3d 674 (S.D.N.Y. 2014) ...................................................... 18

*Doe v. Black*,
　　No. 23-CV-6418 (JGLC), 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) ............ 12

*Doe v. Bloomberg L.P.*,
　　36 N.Y.3d 450 (2021) ......................................................................... 31

iv

*Doe v. Combs*,
  No. 23-CV-10628 (JGLC), 2024 WL 4987044 (S.D.N.Y. Dec. 5, 2024) .................... 12, 19, 20

*Drob Collectibles, LLC v. Leaf Trading Cards, LLC*,
  No. 23-CV-63 (GHW) (JW), 2024 WL 897952 (S.D.N.Y. Feb. 15, 2024) ........................ 32, 33

*Edmondson v. RCI Hosp. Holdings, Inc.*,
  No. 16-CV-2242 (VEC), 2021 WL 4499031 (S.D.N.Y. Oct. 1, 2021) .................................... 15

*Fischer v. Forrest*,
  No. 14-CV-1304 (PAE) (AJP), 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017) ........................ 15

*Forest Park Pictures v. Universal Television Network, Inc.*,
  683 F.3d 424 (2d Cir. 2012) ........................................................................................... 7

*Gasery v. Kalakuta Sunrise, LLC*,
  422 F. Supp. 3d 807 (S.D.N.Y. 2019) ......................................................................... 35

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019) .................................................................. 16, 17

*Ghartey v. St. John's Queens Hosp.*,
  869 F.2d 160 (2d Cir. 1989) ........................................................................................... 8

*Gottwald v. Sebert*,
  2016 WL 1365969 (Sup. Ct. N.Y. Cnty. Apr. 06, 2016) ........................................... 19

*Hughes v. Twenty-First Century Fox, Inc.*,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018) ........................................................................ 21

*In re Gleason (Michael Vee, Ltd.)*,
  96 N.Y.2d 117 (2001) .................................................................................................... 20

*Klauber Bros., Inc. v. URBN US Retail LLC*,
  No. 21-CV-4526 (GHW), 2022 WL 1539905 (S.D.N.Y. May 14, 2022) ................................ 36

*Koral v. Saunders*,
  36 F.4th 400 (2d Cir. 2022) ........................................................................................ 16

*Krisko v. Marvel Ent., LLC*,
  473 F. Supp. 3d 288 (S.D.N.Y. 2020) ........................................................................ 36

*Kwan v. Schlein*,
  634 F.3d 224 (2d Cir. 2011) ........................................................................................ 35

*Leonhard v. U.S.*,
   633 F.2d 599 (2d Cir. 1980) ................................................................................. 13

*Leslie v. Thompson Reuters Corp.*,
   No. 22-CV-07936 (JHR), 2023 WL 6173511 (S.D.N.Y. Sept. 22, 2023) ................................ 10

*Levin v. Sarah Lawrence Coll.*,
   747 F. Supp. 3d 645 (S.D.N.Y. 2024) .................................................. 13, 25, 27, 28

*Liu v. New York City Police Dep't*,
   627 N.Y.S.2d 683 (1st Dep't 1995) ........................................................................ 24

*Muchira v. Al-Rawaf*,
   850 F.3d 605 (4th Cir. 2017) ................................................................................ 25

*Musiello v. CBS Corp.*,
   518 F. Supp. 3d 782 (S.D.N.Y. 2021) .................................................................... 30

*New London Assocs., LLC v. Kinetic Soc. LLC*,
   384 F. Supp. 3d 392 (S.D.N.Y. 2019) .................................................................... 36

*Nezaj v. PS450 Bar & Rest.*,
   719 F. Supp. 3d 318 (S.D.N.Y. 2024) .................................................................... 31

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) .................................................................... 29

*O'Rear v. Diaz et. al.*,
   No. 24-CV-1669, 2025 WL 283169 (S.D.N.Y. Jan. 23, 2025) ........................................... 23, 24

*Police Benevolent Ass'n of City of New York, Inc. v. City of New York*,
   40 N.Y.3d 417 (2023) ......................................................................................... 10

*Robinson v. Double R Records*,
   No. 04-CV-4120 (KMV), 2007 WL 2049724 (S.D.N.Y. July 16, 2007) ................................. 35

*Roeg v. Warner Music Grp. Corp.*,
   83 Misc. 3d 1288(A), 2024 N.Y. Slip Op. 51239(U) (Sup. Ct. N.Y. Cnty. 2024) ................... 23

*S.A. v. Bell*,
   No. 950279/2021, 2023 WL 8653131 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023) ........................... 12

*S.J. v. Choice Hotels Int'l, Inc.*,
   473 F. Supp. 3d 147 (E.D.N.Y. 2020) ................................................................. 14, 28

*Satina v. City of New York*,
 No. 24-CV-1842 (JGLC), 2025 WL 902893 (S.D.N.Y. Mar. 25, 2025) ................................. 14

*Spirt v. Spirt*,
 83 Misc. 3d 1210(A), 211 N.Y.S.3d 910 (N.Y. Sup. Ct. 2024) ................................................. 15

*Stuart v. Am. Cyanamid Co.*,
 158 F.3d 622 (2d Cir. 1998) ................................................................................................. 9, 14

*Tesfay v. Hanes Brands Inc.*,
 No. 19-CV-3889 (GHW), 2019 WL 6879179 (S.D.N.Y. Dec. 17, 2019) .............................. 32

*United States v. Dann*,
 652 F.3d 1160 (9th Cir. 2011) .................................................................................................. 26

*United States v. Sebastian*,
 No. 20-CR-10170 (DJC), 2023 WL 2187895 (D. Mass. Feb. 23, 2023) ................................ 29

*Walker v. Armco Steel Corp.*,
 446 U.S. 740 (1980) ..................................................................................................................... 9

*Wall v. Constr. & Gen. Laborers' Union, Loc. 230*,
 224 F.3d 168 (2d Cir. 2000) ..................................................................................................... 16

*Wiwa v. Royal Dutch Petroleum Co.*,
 No. 8386 (KMW), 2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) ................................................ 9

*Zoe G. v. Frederick F.G.*,
 208 A.D.2d 675 (2d Dep't 1994) .............................................................................................. 17

**Statutes**

18 U.S.C. § 1589 ............................................................................................................ 13, 25, 26

18 U.S.C. § 1591 ............................................................................................................ 13, 29, 30

18 U.S.C. § 1595 ........................................................................................................................ 13

18 U.S.C. 1589 ........................................................................................................................... 27

California Gov't Code § 12960 .................................................................................................. 15

California Penal Code § 236.1 ................................................................................................... 28

California Civil Code § 52.5 ................................................................................................ 14, 28

California Government Code § 12940 ................................................................. 14, 15

New York Civil Rights Law § 50 ..................................................................... 15

New York Civil Rights Law § 51 ..................................................................... 31

New York Penal Law § 135.35(3) .................................................................... 28

New York Social Services Law § 483bb(c) ...................................................... 14, 28

**Rules**

C.P.L.R. § 202 ................................................................................................. 9

C.P.L.R. § 214-g .......................................................................................... 10, 12

C.P.L.R. § 214-j ........................................................................................... 10, 12

C.P.L.R. § 215(3) ......................................................................................... 12, 13

Fed. R. Civ. P. 8 ...................................................................................... passim

**Other Authorities**

New York City Admin. Code § 2-201 .............................................................. 21

New York City Admin. Code § 10-1104 ................................................... 19, 20, 23

New York City Admin. Code § 10-1105 ............................................................ 10

Defendants Sean Combs ("Combs"), Harve Pierre ("Pierre"), Daddy's House Recordings, Inc.[1], Bad Boy Entertainment LLC, Bad Boy Entertainment Holdings Inc., Bad Boy Productions Holdings Inc., Bad Boy Books Holdings Inc., 1169 Corp f/k/a Sean Combs Music Inc., Sean Combs Capital LLC, CE OpCo, LLC f/k/a Combs Enterprises, LLC, UMG Recordings, Inc. ("UMGR"), Janice Combs Publishing LLC, Janice Combs Publishing Holdings Inc., Love Records Inc., and Bad Boy Records LLC ("BBRLLC") (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Consolidated Motion to dismiss the First Amended Complaint (ECF No. 130, the "FAC") with prejudice.

## PRELIMINARY STATEMENT

In her 266-paragraph, 19-count FAC against more than a dozen different defendants, Plaintiff Dawn Richard seeks to transform narratives of alleged injuries *against others* into a headline-grabbing sex trafficking conspiracy *as to her*. But Plaintiff does not claim she engaged in sex with anyone, much less that she was trafficked or compelled to do so. Instead, she tells an unsettling (were it true), but altogether non-actionable story about the challenging environment in which she struggled to achieve fame in the music industry some 20 years ago, and her frustrations, decades later, at allegedly being undercompensated for her contributions, when she again elected to do business with one of the Defendants. However challenging her career path may have been, there is no legal basis to hold every music industry player whose path she crossed liable to her for it. The allegations in the FAC fail to allege any timely and cognizable injuries as to Plaintiff.[2]

---

[1]    Incorrectly sued as ("i/s/a") Daddy's House Recording Studio.

[2]    The FAC is Plaintiff's second attempt to state viable claims. Her first attempt, the Original Complaint (ECF No. 2, the "OC"), was functionally dismissed when this Court declined to entertain a response from Plaintiff defending the OC's allegations and instead ordered her to file a new pleading. ECF No. 125. The FAC is substantially similar to the OC, except that it withdrew two claims, dropped certain defendants, added a new defendant, and added allegations about

First, with the exception of Plaintiff's (meritless) copyright claims, every single Cause of Action ("COA") is untimely. The conduct giving rise to all such COAs allegedly occurred between 2004 and 2011 – thirteen to twenty years *before* this lawsuit was filed. The relevant statutes of limitations range from 1 to 10 years. All have run. And Plaintiff does not plead any legally sufficient basis to toll them. Nor is her claim under the New York City Gender Motivated Violence Law, §§10-1101, ("GMVL") revived by the 2022 amendment (the "2022 Amendment") purporting to create a two-year revival window for time-barred GMVL claims (the "GMVL Revival"). As Judge Kaplan has now held twice, the GMVL Revival is preempted by New York State law which creates a comprehensive, detailed, and conflicting statutory scheme governing the revival of previously time-barred sexual assault claims and is not retroactive as against anyone not a perpetrator. Any remaining dispute on this issue is soon to be resolved by the Second Circuit in two related pending appeals, *Parker v. Alexander*, No. 25-486 and *Doe v. Black*, No. 25-564.

Second, even if timely, every COA against Daddy's House Recordings, Inc., Bad Boy Entertainment LLC, Bad Boy Entertainment Holdings Inc., Bad Boy Productions Holdings Inc., Bad Boy Books Holdings Inc., 1169 Corp f/k/a Sean Combs Music Inc., Sean Combs Capital LLC, CE OpCo, LLC, and Bad Boy Records LLC ("BBRLLC") suffers from the same fatal flaw: it rests on pleadings that indiscriminately group these disparate entities together – labeling them collectively as "Bad Boy" or the "Comb Entities" and failing to identify what each entity purportedly did to cause Plaintiff any harm or benefit therefrom.

Third, the GMVL claim against the "Combs Entities" (as defined in the FAC), UMGR and Pierre for supposedly enabling Combs's alleged violations also fails because, at all relevant times,

---

criminal proceedings that involve no allegations of injury to Plaintiff. The FAC is as deficient as the OC and should be dismissed with prejudice for the reasons set forth below.

the GMVL did not apply to parties other than the alleged individual perpetrator, and the 2022 Amendment expanding liability to other parties does not apply retroactively.  Every court that addressed the issue has recognized as much.  More broadly, the GMVL claim fails as to all Defendants because the FAC does not allege that any Defendant committed a gender-motivated crime against Plaintiff in New York City.

Fourth, other COAs suffer from numerous pleading deficiencies beyond being time-barred. For example, Plaintiff's federal sex trafficking claim fails because there are no allegations that Plaintiff engaged in any sex act at all, let alone a commercial sex act.  Her New York state trafficking claim cannot stand because, among other things, no such cause of action existed at the relevant time and the later-enacted statute is not retroactive.  She does not plead any claim for forced labor because the FAC alleges at most, that she was underpaid and/or subjected to difficult work conditions, not that she was subject to circumstances akin to indentured servitude.  Plaintiff's employment claims are not viable, because Plaintiff does not identify any particular entity that actually employed her.  Nor does she state a claim for violation of the right of publicity because the FAC does not identify any specific instances where any Defendant used Plaintiff's voice, likeness, or image for advertising purposes.  And Plaintiff's copyright COA is frivolous: The Copyright registration appended to the FAC confirms that Combs co-authored the work she claims he infringed: under settled law, a co-owner cannot sue another co-owner (or their licensees) for copyright infringement.  Moreover, the secondary infringement claim rests on facially deficient vague, conclusory and group pleadings that fail to identify what each entity purportedly did.

Finally, Plaintiff executed multiple contracts with several of the Defendants containing broad releases that bar her forced labor, employment, publicity, and unjust enrichment claims here.

## FACTS ALLEGED IN THE COMPLAINT

Plaintiff asserts nineteen COAs, including federal and state human trafficking claims, violations of New York City local law, copyright infringement, multiple torts, and various state employment claims.  *See generally* FAC.  Seventeen of those COAs – that is, all of the non-copyright claims – are based entirely on conduct that occurred between 2004 and 2011 and are brought against Combs, nine entities that Plaintiff group pleads as the "Combs Entities," Pierre, a group of eight entities that Plaintiff group pleads as "Bad Boy" which overlap with group encompassed within the "Combs Entities," and UMGR.  FAC ¶¶ 139–252.

Plaintiff's claims originate out of her decision in 2004 to participate in a reality TV show on MTV called *Making the Band*, which "centered around the formation and development of a new musical group under the mentorship of Combs."  *Id.* ¶ 30.  After filming one season of the show with Combs, Plaintiff and five other performers were chosen to form the musical group *Danity Kane*.  *Id.* ¶ 32.  Plaintiff opted to return to the show and work with Combs for two additional seasons, which aired in 2008 and 2009, respectively.  *Id.* ¶ 31.

According to Plaintiff, during this period, Combs refused requests for meals and rest from her and the other *Danity Kane* members.  *Id.* ¶ 46.  Pierre allegedly witnessed these "extreme conditions," and told them to continue following Combs' orders.  *Id.* ¶¶ 50–51.

*Danity Kane* disbanded in 2009.  *Id.* ¶ 56.  Plaintiff then chose to continue working with Combs.  *Id.*  Starting in the fall of 2009, Plaintiff joined a new musical group with Combs and Witness 1 named *Diddy – Dirty Money*.  *Id.* ¶ 57.  The bulk of Plaintiff's claims arise from this period, 2009–2011.  The FAC alleges that during her time as a member of *Diddy – Dirty Money*, Plaintiff witnessed Combs batter his then-girlfriend and attended parties where Combs performed sexual acts on inebriated women.  *Id.* ¶¶ 65–68.  The FAC does not allege Combs battered or engaged in any sexual acts with Plaintiff.

4

Plaintiff alleges that as a member of *Diddy – Dirty Money*, she once spent "three to four consecutive days recording without a break to eat or sleep." *Id.* ¶ 79. According to the FAC, Combs verbally threatened Plaintiff and Witness 1 when they asked for food or rest. *Id.* ¶ 80. Plaintiff alleges that sometimes, when people working with Combs stood up to him "and refused his demands," he would fire them. *Id.* ¶ 86.

Between 2009 and 2011, *Diddy – Dirty Money* recorded music, rehearsed and toured. *See id.* ¶ 92. The FAC alleges that (on unspecified occasions) while assembling Plaintiff's performance wardrobes, Combs ordered Plaintiff "to strip down to her underwear" and touched her breasts and buttocks. *Id.* ¶¶ 92, 95, 96, 99. The FAC asserts that these acts occurred in unidentified locations "including" in the states of "New York and California," but does not specify which of the alleged conduct occurred in New York or California. *Id.* ¶ 95. Plaintiff contends she resisted what she perceived as Comb's sexual advances, and alleges he retaliated by "depriving her of professional opportunities," including by "denying her vocal parts" and "removing her from songs," though the FAC does not identify any vocal parts or songs from which she was denied or removed. *Id.* ¶ 106.

The FAC alleges that on one occasion in New York in December 2010, Combs and Pierre raised their arms and swung their fists towards Plaintiff's face.[3] *Id.* ¶ 110. They did not strike Plaintiff. *Id.* A person alleged to be Combs' bodyguard then escorted Plaintiff to a car allegedly owned by the "Combs Entities" (apparently all nine of them). *Id.* According to the FAC, the car had "no interior door handles," and Plaintiff was "locked inside with no way to escape." *Id.* ¶ 111. Plaintiff claims that after being released from the vehicle, she was locked in a room at a recording

---

[3]    The allegation that Pierre "raised his hand" to Plaintiff appeared for the first time in the FAC.

studio for an unspecified amount of time. The FAC contains no allegations of actual or attempted physical or sexual assaults while Plaintiff was in the car. *Id.* ¶ 114.

During the time Plaintiff was a member of *Diddy – Dirty Money*, "Bad Boy" (which is defined to include eight entities (*id.* ¶ 13)) entered into a distribution agreement with Interscope Geffen A&M Records, LLC ("Interscope"), a subsidiary of UMGR. *Id.* ¶ 70. According to the FAC, the then-CEO of Interscope witnessed Combs assault his former girlfriend at a California restaurant. *Id.* ¶ 71.

During Plaintiff's working relationship with Combs, she entered into multiple "contracts with Combs Entities and Bad Boy." *Id.* ¶ 56; *see also id.* ¶¶ 230 (referencing "contracts" between Richard on the one hand and "Combs and Combs Entities" on the other hand). In one such agreement between Richard and BBRLLC executed on June 29, 2007 (relating to *Danity Kane*), Richard released BBRLLC and its successors, assigns, affiliates, partners, members, officers and agents from any and all claims – excepting royalties – existing of that date. *See* Declaration of Erica Wolff ("Wolff Decl.") Ex. A at ¶ 4(a). In another agreement, executed on October 22, 2021, with Janice Combs Publishing, Inc., Plaintiff released that entity and Combs, among others, from "all claims, demands, actions, causes of action, [and] suits" related to any of the parties' publishing contracts, or to any of her musical compositions as of that date. *See* Wolff Decl. Ex. B at ¶ 3.

In September 2023, following months of negotiations, a song co-authored by Combs and Plaintiff (with others), *Deliver Me*, was released on *The Love Album: Off the Grid* and Love Records paid Plaintiff $25,000 for her contributions. FAC ¶¶ 125–131. On November 6, 2023, a copyright registration was issued for the song. *See id.* ¶ 123 and ECF No. 130-1, Ex. A. Despite Combs being a co-author, Plaintiff alleges Combs and the "Combs Entities" infringed her copyright with that 2023 release.

## PROCEDURAL HISTORY

Plaintiff initiated the instant action on September 10, 2024 with the OC containing 21 causes of action and naming 24 different defendants and 20 Doe defendants. ECF No. 2. Between October 21, 2024 and January 22, 2025, 19, Defendants filed pre-motion letters conveying their intent to dismiss the OC on the grounds that Plaintiff's claims were time-barred and insufficiently pled. *See* ECF Nos. 73, 82, 85, 121–22. In response to Plaintiff's requests for a four-week extension to respond to two of Defendants' letters, ECF Nos. 123–24, the Court ordered Plaintiff to file an amended complaint. *See* ECF No. 125. The FAC is similar to the OC, but it dropped some defendants and removed two causes of action – one for fraud/intentional misrepresentation and one for breach of the implied convent of good faith – and added Tri Star Sports and Entertainment Group Inc. ("Tri Star") as a Defendant. *Compare* OC *with* FAC. The FAC also omits certain claims previously raised against UMGR, which is now named solely in COA 1. Plaintiff voluntarily dismissed Tri Star on May 13, 2025. ECF 143. Since the initial filing of the action, 6 of the 26 named Defendants have been voluntarily dismissed.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012) (citation omitted). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. While a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *see*

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), a court "is not required to credit conclusory allegations unsupported by facts, . . . or to suspend common sense in conducting its analysis." *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019), *aff'd,* 829 F. App'x 533 (2d Cir. 2020).

"Where the dates in a complaint show that an action is barred by a statute of limitations," a defendant may move for pre-answer dismissal on those grounds. *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Id*.

In considering a Rule 12(b)(6) motion to dismiss, a district court may consider "any statements or documents incorporated in [the complaint] by reference" and any document where the complaint "'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 152–53 (citation omitted).

## ARGUMENT

The chart appended as Exhibit A to the Declaration of Elizabeth Rodd dated May 16, 2025 sets forth the COAs, the Defendants named in each, and the grounds for dismissal.

## I.    PLAINTIFF'S FIRST SEVENTEEN CAUSES OF ACTIONS ARE UNTIMELY

The First through Seventeenth COAs should be dismissed with prejudice because they are untimely.

### A.    New York's Shorter Statutes of Limitations Govern Plaintiff's State Law Claims

Hoping to take advantage of California's longer statutes of limitations, Plaintiff invokes California law for six of her claims, many of them duplicative of her claims under New York law. *See* FAC ¶¶ 148–153, 175–182, 203–208, 227–234, 235–240, 241–45. However, New York's

borrowing statute requires application of New York's shorter statutes of limitations and tolling rules to each of Plaintiff's state law claims.

Subject matter jurisdiction in this case is based on questions of federal law and therefore, the Court's jurisdiction over Plaintiff's state law claims rests on supplemental jurisdiction. *See id.* ¶ 28. For state law claims based on supplement jurisdiction, "a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998); *see also Wiwa v. Royal Dutch Petroleum Co.*, No. 96-CV-8386 (KMW), 2002 WL 319887, at *20 (S.D.N.Y. Feb. 28, 2002). "This . . . also requires federal courts to apply state rules that are an integral part of the statute of limitations, including tolling rules." *Id.*, at *20 (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 & n.12 (1980)).

New York federal courts generally "apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York." *Stuart*, 158 F.3d at 627. The exception to this rule is where the plaintiff is *not* a resident of New York[4] *and* the foreign statute of limitations is **shorter** than New York's statute of limitations, in which case the shorter foreign period will be applied to prevent forum-shopping. *See id.* (citing the borrowing statute CPLR § 202). Where a foreign statute of limitations is **longer**, the New York statute of limitations must be applied. *Id.*

### B. Plaintiff's GMVL (COA 1) Claim Is Time-Barred and Any Purported Revival Is Preempted

Plaintiff's GMVL claim should be dismissed with prejudice because the statute of limitations has run and the revival window on which Plaintiff relies is preempted by state law.

---

[4]    Plaintiff alleges she is a resident of New York, while also claiming she "is/was" *simultaneously* a resident of California. FAC ¶ 9.

As relevant here, the GMVL carries a seven-year statute of limitations. N.Y.C. Admin. Code § 10-1105(a). Plaintiff's GMVL claim rests on conduct that allegedly occurred between 2009 and 2011. *See* FAC ¶¶ 92–116. As such, the statute of limitations on Plaintiff's GMVL claim expired in 2018 at the latest. Because she did not bring her claim until September 2024, her claim is time-barred. N.Y.C. Admin. Code § 10-1105(a).

Plaintiff's expired GMVL claim is not saved by the 2022 Amendment that purports to revive expired GMVL claims for a two-year period running from March 1, 2023 through March 1, 2025, (FAC ¶ 147), because that New York City local law is preempted by New York State law, which provides a conflicting, "comprehensive and detailed regulatory scheme" under the New York Child Victims Act, C.P.L.R. § 214-g ("CVA"), and the Adult Survivors Act, C.P.L.R. § 214-j ("ASA") for the revival of previously time-barred sexual assault claims. *See Parker v. Alexander*, 24-CV-4813 (LAK), 2025 WL 268436, at *2–3 (S.D.N.Y. Jan. 22, 2025) (holding GMVL's revival window is preempted by the CVA and ASA); *Bellino v. Tallarico*, 24-CV-0712 (LAK), 2024 WL 1344075, at *1 (S.D.N.Y. Feb. 21, 2024) (same).

"Local laws may be . . . preempted by state law either because the legislature has occupied the relevant field of regulation," *i.e.*, field preemption, "or because the local law conflicts with state law," *i.e.*, conflict preemption. *Police Benevolent Ass'n of City of New York, Inc. v. City of New York,* 40 N.Y.3d 417, 423 (2023).[5]

---

[5]     The preemption question presented in this Motion is currently before the Second Circuit in two separate appeals, *Parker v. Alexander*, No. 25-487 (2d Cir.) and *Doe v. Black*, 25-564 (2d Cir.). While the Court should adopt *Parker's* reasoning and dismiss Plaintiff's GMVL claim as time-barred, because the Court's decision on this issue will necessarily be affected by the Second Circuit's rulings on the *Parker* and *Black* appeals (which have been ordered to proceed in tandem, *see Parker v. Alexander*, No. 25-487 (2d Cir.) at ECF No. 1), Defendants respectfully submit that staying this case until those appeals have been decided would be an appropriate conservation of judicial resources. *See, e.g., Leslie v. Thompson Reuters Corp.,* No. 22-CV-

1.    <u>The CVA and ASA Occupy the Field of Revival of Sexual Offense Claims</u>

Implicit field preemption occurs when the state legislature has "enacted a comprehensive and detailed regulatory scheme in a particular area;" under such circumstances, the local government is "precluded from legislating on the same subject matter unless it has received 'clear and explicit' authority to the contrary." *DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 95 (2001) (citation omitted).

The CVA and ASA constitute comprehensive schemes because they "apply to all civil claims by child and adult victims" of "conduct constituting sexual offenses" and do so "notwithstanding" any limitations period "to the contrary." *Parker*, 2025 WL 268436, at *2 (internal citations omitted). Further, the CVA and ASA are "detailed": they "provide exact time frames during which claims may be brought." *Id.* Moreover, the timing of the ASA, which was passed four months *after* the 2022 Amendment was enacted, confirmed the legislature's intent to preempt local New York City law, as "the state easily could have carved the [GMVL] out of the ambit of the ASA" yet "opted not to do so." *Id.* at *3.

2.    <u>The GMVL Revival Provision Conflicts With the CVA and ASA</u>

"[C]onflict preemption occurs when a . . . state law prohibits what a local law explicitly allows." *Matter of Chwick v. Mulvey*, 81 A.D.3d 161, 168 (2d Dep't 2010). The CVA and ASA revived previously time-barred GMVL claims for a limited period, prohibiting such claims from being brought after August 13, 2021 (for claims by alleged child victims) or after November 23,

---

07936 (JHR), 2023 WL 6173511, at *2 (S.D.N.Y. Sept. 22, 2023) (staying a case pending the resolution of a Second Circuit case which clarified the scope of the Video Privacy Protection Act).

2023 (for claims by alleged adult victims). CPLR §§ 214-g, 214-j.[6]  The 2022 Amendment
purported to permit the revival of all previously time-barred GMVL claims through February 28,
2025 (N.Y.C. Admin. § 10-1105(a)), that is, almost a year and a half longer than the state law
deadline for adults, and more than three and half years longer than the state law deadline for
minors.

On its face, the 2022 Amendment conflicts with the revival windows of the CVA and the
ASA, which control "[n]otwithstanding any provision of law which imposes a period of limitation
to the contrary."  *Id.* (quoting CPLR § 214-j).

Thus, as Judge Kaplan has twice held, the CVA and ASA preempt the 2022 Amendment,
thereby warranting dismissal of Plaintiff's GMVL claim.  *See Parker*, 2025 WL 268436, at *2–3;
*Bellino,* 2024 WL 1344075 at *1.[7]

C.    **The Statute of Limitations Bars Claims for Assault (COAs 2, 7), Battery**
      **(COA 8), False Imprisonment (COAs 9, 10) and Intentional Infliction of**
      **Emotional Distress (COA 11)**

Intentional torts – including assault, battery, false imprisonment and intentional infliction
of emotional distress ("IIED") – are subject to a one-year statute of limitations under New York
State law. *See* CPLR § 215(3) (applying one year limitations period to "action[s] . . . for assault,
battery [and] false imprisonment"); *Corrigan v. Town of Brookhaven*, No. 22-CV-4688 (GRB),

---

[6]    The CVA and the ASA apply to expired GMVL claims, *See, e.g.*, CPLR §§ 214-g, 214-j
(applying to "every civil claim or cause of action . . . for . . . injury . . . suffered as a result of
conduct which would constitute a sexual offense"); *S.A. v. Bell*, No. 950279/2021, 2023 WL
8653131, at *1 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023).

[7]    Judge Jessica G. L. Clarke issued two decisions rejecting the argument that the CVA
preempts the GMVL.  *See Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 WL 4335453, at *3-7
(S.D.N.Y. Sept. 27, 2024); *Doe v. Combs*, No. 23-CV-10628 (JGLC), 2024 WL 4987044, at *2
(S.D.N.Y. Dec. 5, 2024).  Neither of those decisions substantively addressed, as *Parker* did, how
the GMVL's revival provision could be given effect when it is inconsistent with the CVA and
ASA's revival provisions.

2023 WL 7003936, at *2 (E.D.N.Y. Oct. 24, 2023) (observing that § 215(3)'s one-year limitations period applies also to "claims of intentional infliction of emotional distress").  In most situations, a plaintiff's claim "accrues" on the date of the alleged injury.  *Leonhard v. U.S.*, 633 F.2d 599, 613 (2d Cir. 1980).  In certain instances, however, a so-called "continuing wrong" claim is "deemed to have accrued on the date of the last wrongful act." *Id.*

Taking Plaintiff's tort allegations at face value, the last time that either Combs or Pierre interacted with Plaintiff – and, therefore, their last opportunity to commit a "wrongful act" for tort liability purposes – was "[i]n or around late December 2010."  FAC ¶ 105; *see also id.* at ¶ 108.  The claims therefore expired at some point before January 1, 2012.  By the time Plaintiff commenced this action in September of 2024, these claims were time-barred for over a decade.

### D.    Plaintiff's Trafficking and Forced Labor Claims (COAs 3–6) Are Untimely

Plaintiff's COAs for forced labor and sex trafficking under Federal law and human trafficking under state law should be dismissed because they are not timely.

#### 1.    Forced Labor and Sex Trafficking Under Federal Law

The FAC asserts two claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595 – the Third COA for forced labor pursuant to 18 U.S.C. § 1589 and the Fifth COA for sex trafficking pursuant to 18 U.S.C. § 1591.  *See* FAC ¶¶ 154–161, 167–174.  As relevant here, the "statute of limitations for civil claims under the TVPRA is ten years from the date the cause of action arises."  *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 669–70 (S.D.N.Y. 2024) (cleaned up) (citing 18 U.S.C. § 1595(c)).

Plaintiff's TVPRA claims involve alleged conduct that occurred, at the latest, between 2009 and 2011.  *See* FAC ¶¶ 92–116.  Any claim was time-barred by no later than 2021, three years before Plaintiff filed this lawsuit.

2.    Human Trafficking Under State Law

Plaintiff's Fourth and Sixth COAs assert nearly identical claims for human trafficking under New York's Social Services Law § 483-bb(c), and California Civil Code § 52.5.  *See* FAC ¶¶ 162–166, 175–182.  Although Section 483-bb(c) has a fifteen-year statute of limitations, it does not apply to this action because, among other things, as set forth *infra* Section IV.B, it did not exist at the time in question and does not apply retroactively.  *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 156 (E.D.N.Y. 2020).  Moreover, if there were a cause of action under Section 483-bb(c) (and there is not), to the extent Plaintiff is not a New York resident, *see* FAC ¶ 119, California's shorter statues of limitations would apply.  *Stuart*, 158 F.3d at 627.  Were the Court to apply California's statute of limitations, Plaintiff's trafficking claims would be time-barred.  The statute of limitations under Section 52.5 is "seven years [from] the date on which the trafficking victim was freed from the trafficking situation."  Cal. Civ. Code § 52.5.  The alleged conduct underlying Plaintiff's claims took place between 2009 and 2011, which means her claims expired in 2018 at the latest and are thus time-barred.

E.    **Plaintiff's Employment Claims (COAs 12–16) Are Time-Barred**

Plaintiff's COAs for sexual harassment, gender discrimination, and hostile work environment under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"); retaliation under the NYSHRL and California Government Code § 12940; and hostile work environment and discrimination under California Government Code § 12940 should be dismissed because the statutes of limitation have run.

Claims brought under the NYSHRL and NYCHRL "are subject to a three-year statute of limitations." *Satina v. City of New York*, No. 24-CV-1842 (JGLC), 2025 WL 902893, at *3 (S.D.N.Y. Mar. 25, 2025); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573–74 (S.D.N.Y. 2011) (collecting cases). Because the relevant conduct underlying Plaintiff's Twelfth through

Sixteenth COAs occurred between 2009 and 2011, her claims expired in 2015 and are now time-barred.  As explained *supra* in Section I.A, New York's statute of limitations applies to Plaintiff's California claims, which are also time-barred pursuant to New York's three-year statute of limitations.   Plaintiff's employment claims would also be time-barred under California Government Code § 12940, which "requires that a plaintiff file an administrative charge with either the EEOC or the California Department of Fair Employment and Housing ("DFEH") within one year of the alleged unlawful act."  *Becerra v. San Diego Cmty. Coll. Dist.*, No. 17-CV-2489 (BAS), 2018 WL 4385370, at *5 (S.D. Cal. Sept. 14, 2018) (citing Cal. Gov't Code § 12960(d)).  The FAC does not allege compliance with this statutory requirement.

Under both New York and California law, Plaintiff's claims should be dismissed.

### F.    Plaintiff's Right of Publicity and Unjust Enrichment Claim Is Time-Barred

Plaintiff's Seventeenth COA for violation of Plaintiff's right of publicity under Sections 50 and 51 of the New York Civil Rights Law and for unjust enrichment are also time-barred because the Civil Rights Law has a one-year statute of limitations.  *Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242 (VEC), 2021 WL 4499031, at *3 (S.D.N.Y. Oct. 1, 2021) ; *Fischer v. Forrest*, No. 14-CV-1304 (PAE) (AJP), 2017 WL 1063464, at *5 (S.D.N.Y. Mar. 21, 2017).  *See also Spirt v. Spirt*, 83 Misc. 3d 1210(A), 211 N.Y.S.3d 910 (N.Y. Sup. Ct. 2024) ("when a cause of action for unjust enrichment is based upon the same facts as . . . another cause of action, the unjust-enrichment claim is subject to the same statute of limitations as [that] cause of action")  (citing *Bandler v. DeYonker*, 174 A.D.3d 461, 462 (1st Dep't 2019)).

### G.    No Tolling Doctrine Applies to Save the Time-Barred COAs

Plaintiff concedes the statutes of limitations have run on her Third through Seventeenth COAs but argues that "Mr. Combs and Combs Entities are estopped from asserting the defense of the statute of limitations due to the duress they exerted upon Plaintiff which prevented her from

bringing her legal claims within the statutorily proscribed period." FAC ¶¶ 161, 166, 174, 180, 189, 195, 202, 208, 215, 220, 225–26, 234, 240, 245, 252. While it is unclear whether Plaintiff is invoking the tolling doctrine of equitable estoppel or duress, her attempt fails under either theory.

"To trigger the doctrine of equitable estoppel" under New York and Federal law, "a plaintiff must show that: (i) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (ii) the plaintiff reasonably relied on that misrepresentation to his detriment." *Wall v. Constr. & Gen. Laborers' Union, Loc. 230*, 224 F.3d 168, 176 (2d Cir. 2000); *Koral v. Saunders*, 36 F.4th 400, 409 (2d Cir. 2022). "The doctrine requires proof that the defendant made an actual misrepresentation . . ., that the plaintiff relied on the misrepresentation and that the reliance caused plaintiff to delay bringing timely action." *Koral*, 36 F.4th at 410. The FAC contains no allegations that any Defendant made misrepresentations of fact that Plaintiff relied upon which caused her to delay bringing suit. Thus, equitable tolling is not applicable. *See DeWitt Gilmore v. Sean Combs, et al.* 24-CV-8440 (JPO), ECF No. 43, at 5–6 (S.D.N.Y. May 16, 2025) (rejecting plaintiff's invocation of equitable estoppel where, like here, he did not identify any communications with defendants following the date of the conduct at issue).

Plaintiff's generalized allegations of duress also do not save her time-barred claims. Although New York courts recognize "duress" as a potential basis for tolling, the allegations in the FAC do not come close to pleading duress. Duress cannot toll a limitations period absent "a course of conduct involving threats or force that continued without interruption" against the plaintiff from the time of the alleged incident until the time the action was brought. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 175 (S.D.N.Y. 2019). "'Duress' involves both threats or force by the defendant, and the submission of the plaintiff's free will to those threats. Both elements of duress must continue in order for a duress-based tort to persist as a 'continuous wrong." *Gilmore*,

24-CV-8440 (JPO), ECF No. 43, at 7 (internal citation and quotation marks omitted) (dismissing where plaintiff did not identify "specific instances that would constitute ongoing duress").   A plaintiff raising duress must "specify any acts by the defendant[s] occurring subsequent to [the alleged injury]," *Zoe G. v. Frederick F.G.*, 208 A.D.2d 675, 675 (2d Dep't 1994), and continuing "without interruption." *Geiss*, 383 F. Supp. 3d at 175.   Plaintiff's vague and conclusory allegations of threat of force fail to toll the limitations periods. *See Gilmore*, 24-CV-8440 (JPO), ECF No. 43, at *7 (rejecting duress tolling argument based on "vague allegations.")   Further, general psychological stress, like Plaintiff's alleged fear of speaking out, does not provide a basis for tolling.  *See id.* at 7–8 ("tolling is not available for "general claims of psychological stress, even when allegedly caused by defendant.") (quoting *Adams v. Jenkins*, No. 115745/03, 2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005).

## II.   CLAIMS SHOULD BE DISMISSED AGAINST THE SO-CALLED "BAD BOY" ENTITIES AND THE SO-CALLED "COMBS ENTITIES" BECAUSE THEY REST ON IMPROPER GROUP PLEADINGS

All of Plaintiff's claims against "Bad Boy" and the "Combs Entities" (as defined in the FAC), as well as Love Records, Inc., Janice Combs Publishing LLC, and Janice Combs Publishing Holdings Inc. rest on vague, group pleadings, which fails the Rule 8(a)(2) notice pleading standard. *See, e.g.*, *Collins v. Pearson Educ., Inc.,* 721 F. Supp. 3d 274, 284 (S.D.N.Y. 2024) (Rule 8 "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'") (citation omitted); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).

Plaintiff inexplicably employs two definitions to generically identify what she alleges are all entities supposedly owned and controlled by Combs: "Bad Boy" and the "Combs Entities" (these definitions exclude UMGR but include BBRLLC).  (FAC ¶¶ 10, 13.)  Plaintiff then sometimes uses "Bad Boy" and sometimes uses the "Combs Entities" to refer collectively to these

ten different Defendants. By using such group definitions, Plaintiff ignores that the alleged members of the groups do different things, may not have existed or may have been operationally inactive at times relevant to the claims in the FAC and, are not all "owned and controlled" by Combs. Plaintiff employs the group definition in lieu of pleading any facts showing what each entity supposedly did with respect to the alleged conduct spanning from 2005 through 2011. Such group pleading is manifestly improper. It fails to give each of these ten defendants any notice, let alone "fair notice," of the factual basis on which each claim rests. *Collins*, 721 F. Supp. 3d at 284.

As for BBRLLC, Plaintiff has not alleged – and cannot allege – any facts supporting any claim against it. BBRLLC did not have any employees and was no longer active after 2009. Declaration of Erica Bellarosa ("Bellarosa Decl.") ¶¶ 6–7. Plaintiff assumes that BBRLLC is "Bad Boy" or a "Combs Entity," apparently solely because it has "Bad Boy" in its name. In fact, while operationally inactive, BBRLLC is co-owned and has been exclusively managed by Bad Boy Investments LLC ("BBI"), which is owned by Atlantic Recording Corporation, not by Combs.

Further, nowhere does the FAC plead "facts" supporting any claim that any business purpose of any (let alone all) of the "Combs Entities" was advanced by the alleged actions of Combs. *Doe v. Alsaud*, 12 F. Supp. 3d 674, 678 (S.D.N.Y. 2014) ("[even] [i]f Plaintiff had sufficiently pleaded that [company defendant] had direct knowledge of prior sexual misconduct on the part of [employee assailant], which she has not, that still would not give rise to *respondeat superior* liability in the absence of an allegation that the misconduct was part of any actual responsibility [employee] had to [company]"); *Adorno v. Corr. Servs. Corp.*, 312 F. Supp. 2d 505, 517 (S.D.N.Y. 2004) (company's alleged "notice of [employee's] propensity to commit sexual acts" from prior complaints was irrelevant to vicarious liability) (internal citation omitted)). Plaintiff's assertion that BBRLLC – an entity which ceased active operations years before the

alleged wrongful conduct and whose sole connection to the alleged perpetrator of the misconduct was through a joint venture between Combs' company, Bad Boy Records (with no LLC) – could be liable for the alleged perpetrator's alleged actions years later defies any principle of law. The same is true for allegations against Bad Boy Entertainment LLC, having been formed in 2014, *did not even exist* at the time it is alleged to have enabled wrongdoing (between 2004 and 2011 (see FAC ¶¶ 30–116)). Wolff Decl. ¶¶ 3–4 and Ex. C attached thereto. It is thus not surprising that Plaintiff would try to conceal the absence of a viable claim through group pleadings against thirteen entities.[8]

## III.    PLAINTIFF'S GMVL CLAIM (COA 1) FAILS

### A.    The GMVL Claim Must Be Dismissed as to UMGR, the "Combs Entities," and Pierre Because, at the Relevant Time, GMVL Did Not Apply to Them and the 2022 Amendment is Not Retroactive

Prior to the 2022 Amendment, the GMVL provided a cause of action against only "an *individual* who commits a *crime of violence motivated by gender*." N.Y.C. Admin. Code § 10-1104 (2000) (*previously codified at* § 8-904) (the "2000 GMVL") (emphases added). Courts have consistently held that the 2000 GMVL did not provide for liability except against an individual perpetrator. *See Doe v. Combs*, No. 23-CV-10628 (JGLC), 2024 WL 4987044, at *2 (S.D.N.Y. Dec. 5, 2024) ("Corporate Defendants, as corporations, would not be liable under the terms of the 2000 [GMVL]."); *Gottwald v. Sebert*, 2016 WL 1365969, at *9 (Sup. Ct. N.Y. Cnty. Apr. 06, 2016) ("the statute, on its face, is limited to violence committed by 'an individual.'").

---

[8]    Similarly, according to Plaintiff's group pleadings, the sole "benefit" supposedly obtained by every one of the "Combs Entities" from the alleged misconduct of Combs is that: by "facilitating his (Combs') behavior" it kept his "volatile and explosive" nature "satisfied." FAC ¶¶ 151, 172, 178, 192, 200, 206, 213.

The 2022 Amendment expanded the scope of liability to also include any "party" who "directs, enables, participates in, or conspires in" such a crime.  N.Y.C. Admin. Code § 10-1104.

While the 2022 Amendment expanded the reach of the statute, it did not do so retroactively. Statutory amendments like the 2022 Amendment "are presumed to have [only] prospective application unless the [l]egislature's preference for retroactivity is explicitly stated or clearly indicated[.]"  *In re Gleason (Michael Vee, Ltd.)*, 96 N.Y.2d 117, 122 (2001) (internal quotation marks and citations omitted).  The "language of the 2022 [Amendment] does not mention . . . retroactivity."  *Combs*, 2024 WL 4987044, at *3.

Thus, not surprisingly, every court to consider whether the 2022 Amendment applies retroactively (such that it creates a cause of action against entities or individuals not the perpetrator) has uniformly held that it does *not*.  *See Bensky v Indyke,* 743 F. Supp. 3d 586, 599–600 (S.D.N.Y. 2024) (2022 Amendment did not retroactively apply to allegations between 1995-2019 against parties who allegedly directed, enabled, participated in, or conspired in a crime); *Combs*, 2024 WL 4987044, at *3 (2022 Amendment did not apply retroactively to corporate entities alleged to have enabled alleged 2003 assaults).[9]  Accordingly, Plaintiff's GMVL claim fails as to UMGR, the "Combs Entities," and Pierre.

### B. Plaintiff Fails to Allege a GMVL Claim Against Any Defendant

The GMVL claim also fails in its entirety as to all Defendants, including Combs, because the FAC does not allege a gender motivated crime of violence against Plaintiff that occurred in

---

[9]     This question is presently pending before the New York State Appellate Division in *Stein et al. v. The Rockefeller University Hospital*, 2024-03637 (2023). While the Court should, consistent with every court to address this issue, dismiss the GMVL claim as to UMGR, the "Combs Entities", and Pierre, those Defendants respectfully submit that staying the action pending resolution of that appeal would be an appropriate conservation of judicial resources.

New York City, let alone plead any facts to support its conclusory allegation that UMGR, the "Combs Entities" (including BBRLLC), or Pierre enabled such a crime.

           1.     <u>No Gender Motivated Crime of Violence against Plaintiff in New York</u>

To state a GMVL claim, a Plaintiff must plausibly allege: (1) an "act [that] constitutes a misdemeanor or felony ***against the plaintiff***; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and ([5]) resulted in injury." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018) (emphasis added).

The GMVL only applies to alleged acts of violence occurring within New York City. *See* N.Y.C. Admin. Code § 2-201 ("jurisdictions and powers" of New York City are limited to the five boroughs); *Beverley v. 1115 Health & Benefits Fund*, 420 F. Supp. 2d 47, 56 (E.D.N.Y. 2005) (NYC Administrative Code "applies only to acts occurring within the boundaries of New York City.") (citation omitted).

While the FAC is filled with allegations about conduct directed at persons *other* than Plaintiff (*see, e.g.,* FAC ¶¶ 57-78) and conduct occurring outside of New York City (*see, e.g.*, FAC ¶¶ 58-60; 71-72, 100-101), the only allegations involving conduct directed at *Plaintiff* in New York City are: (1) in December 2010, Combs and Pierre swung their hands towards Plaintiff, but never hit her (FAC ¶ 110); (2) on unspecified "occasions between approximately 2009 and 2011 . . . Combs . . . groped Ms. Richard's body, including her bare buttocks and her chest area near her breasts" (*id.* ¶¶ 95–96); and (3) that an individual alleged to be Combs' bodyguard, acting without any instruction from Combs and Pierre, placed Plaintiff in a car that allegedly lacked interior door handles and locked the doors, *id.* ¶¶ 110–11.

These allegations do not constitute crimes of violence motivated by gender. A "crime of violence" is defined as "an act . . . that would constitute a misdemeanor or felony . . . if the conduct

presents a serious risk of physical injury." *Id.* § 10-1103.  The FAC does not plead the alleged conduct (i) amounts to a violation of a misdemeanor or felony statute, or (ii) presented a serious risk of physical injury.  Nor are there allegations supporting the inference that these incidences were motivated by gender animus.  Courts have found similar conduct to be insufficient to support a GMVL claim.  *See Bellino*, 2024 WL 1344075, at *1 ("readily" granting motion to dismiss GMVL claim because complaint, which alleged defendant forcibly kissed plaintiff, and touched her breasts, buttocks, and genitals, did not "allege conduct presenting a serious risk of physical injury and therefore fails to state a legally sufficient claim under the [GMVL]");*Adams*, 2005 WL 6584554, at *3 (dismissing GMVL claim "based on [plaintiff's] allegations that defendant pushed and slapped her" and noting plaintiff did "not identify any felony statute allegedly violated, or otherwise show that the alleged assault was motivated by gender bias.").  Moreover, to the extent Plaintiff seeks to hold Combs or Pierre liable for the alleged acts of a purported bodyguard who allegedly forced Plaintiff into a car, such conduct – in addition to not constituting a crime presenting a serious risk of physical injury – also was not perpetrated *or* directed by Combs or Pierre.

### 2.    Plaintiff Fails to Allege a GMVL Claim Against Alleged Enabling Parties

Even assuming the 2022 Amendment applied retroactively to non-perpetrators such as UMGR or the "Combs' Entities," Plaintiff must show that such party directed, enabled, participated, or conspired to commit that GMVL violation.  *Bensky*, 743 F. Supp. 3d at 600.  The FAC does not plead any facts showing how UMGR, the "Combs Entities" (including BBRLLC) and Pierre purportedly directed, participated,[10] or conspired to commit a *crime of violence* against Plaintiff.

---

[10]    Plaintiff's only other allegations concerning UMGR executives allege (at most) a stressful working environment, not any crimes of violence *See* FAC ¶¶ 75-77.

Nowhere does Plaintiff allege what each of the individual "Combs Entit[y]" specifically did to "commit[], direct[], enable[], participate[] in, or conspire[] in the commission" of alleged misconduct, as is required.  *See* N.Y.C. Admin. Code § 10-1104; *Delgado v. Donald J. Trump for President, Inc.,* No. 952333/2023, Dkt. No. 127 at 4 (Sup. Ct. N.Y. Cnty. Jan. 30, 2025) (granting motion to dismiss GMVL claim against entity defendant because "a simple conclusory statement that [the entity] so enabled" purported misconduct was insufficient"); *O'Rear v. Diaz et. al.*, No. 24-CV-1669, 2025 WL 283169, at *9 (S.D.N.Y. Jan. 23, 2025); *see also Barlow v. Skroupa,* 76 Misc. 3d 587, 591 (Sup. Ct. N.Y. Cnty. 2022) ("By pleading the [GMVL] claim against all defendants collectively, without any specification of the conduct charged to particular defendants, plaintiff[] deprive[d] defendants of the notice regarding 'the material elements of each cause of action'"); *Roeg v. Warner Music Grp. Corp.,* 83 Misc. 3d 1288(A), 2024 N.Y. Slip Op. 51239(U) at 3 (Sup. Ct. N.Y. Cnty. 2024) (dismissing GMVL claim against corporate defendants who could not have done anything to commit, direct, enable, participate in, or conspire in the commission of the purported misconduct).

Plaintiff's conclusory assertions that all the "Combs Entities" "should have had knowledge" of Combs's alleged personal misconduct, and somehow "enabled" such personal misconduct, is not adequately pled under Rule 8 or plausible.  *See, e.g.*, *Iqbal*, 556 U.S. at 678. There is no factual basis to show what any of the entities knew or should have known of the alleged misconduct before it purportedly occurred (in 2004 through 2011) nor how any of them supposedly "enabled" such alleged conduct.  Indeed, there are not even any facts alleged to show such alleged conduct was publicly known at any point in time prior to 2023.

Plaintiff's attempt to hold each of the so-called "Combs Entities" liable based on the allegation that a car in which Plaintiff was purportedly locked was owned by the "Combs Entities"

(apparently all nine of them) (FAC ¶¶ 110-111) is patently insufficient. *See Bardwil Indus. Inc. v. Kennedy,* No. 19-CV-8211 (NRB), 2020 WL 2748248, at *3 (S.D.N.Y. May 27, 2020) (dismissing claim where allegations in the complaint impermissibly "lump[ed] defendants together without providing any factual basis for distinguishing among them").

Similarly, the only specific allegation made in furtherance of Plaintiff's assertions that UMGR, *enabled* gender-motivated crimes, is that Interscope's then-CEO purportedly witnessed Combs assault his ex-girlfriend at an event in California, and thereafter (1) entered into a record distribution agreement with Combs and (2) secured promotional opportunities for Combs. FAC ¶¶ 70–72, 107.[11]

Such allegations fail to state a GMVL claim as a matter of law. First, a single instance of violence alone cannot establish a propensity to commit crimes of violence *motivated by gender*. *See, e.g. O'Rear v. Diaz*, No. 24-CV-1669, 2025 WL 283169, at *9 (S.D.N.Y. Jan. 23, 2025) (allegations were insufficient to establish knowledge of a predilection to commit a *gender-based* crime). Second, there are no facts supporting an inference that UMGR's (or any of the "Combs Entities'") decision to enter into business relationships with Combs enabled *any* crime **toward Plaintiff**. *See Liu v. New York City Police Dep't*, 627 N.Y.S.2d 683, 686 (1ˢᵗ Dep't 1995) ( "vague and conclusory [allegations] . . . fail[] to demonstrate any nexus between the specific evidence purportedly supporting the complaint and the acts of the defendants").

---

[11]    The FAC also provides conclusory statements that there were other instances of "violent conduct" purportedly witnessed by UMGR's then CEO involving Mr. Combs "engag[ing] in aggressive outbursts during meetings" where he "screamed at female employees, kicking women out of the room, and reducing female staff to tears." FAC ¶ 78. But even if true, screaming or reducing individuals to tears does not constitute a crime involving serious risk of *physical* injury that is motivated by gender animus.

**IV.    PLAINTIFF FAILS TO STATE CLAIMS FOR FORCED LABOR**

**A.    Plaintiff Fails to State a Federal Claim for Forced Labor**

In her Third COA, Plaintiff asserts a claim of forced labor under the TVPRA, 18 U.S.C. § 1589, against Combs and the "Combs Entities." "Section 1589 was passed to implement the Thirteenth Amendment against slavery or involuntary servitude." *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) (internal citation and quotation marks omitted). "Typically, therefore, 'forced labor' situations involve circumstances such as squalid or otherwise intolerable living conditions, extreme isolation . . . , threats of inflicting harm upon the victim or others . . . , and exploitation of the victim's lack of education and familiarity with the English language, all of which are 'used to prevent [vulnerable] victims from leaving and to keep them bound to their captors.'" *Id.* at 618–19 (internal citation and quotation marks omitted). None of the allegations in the FAC come close to meeting the type of conduct the statute is intended to address. At most, Plaintiff alleges that she was underpaid and/or subjected to difficult work conditions.

Under Section 1589, a plaintiff may bring a cause of action against "[w]hoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of" several enumerated means, which include: means of force, threats of force, physical restraint, or threats of physical restraint, and means of serious harm or threats thereof. 18 U.S.C. § 1589(a). This is referred to as perpetrator liability. The TVPRA also provided for participant liability. *See* 18 U.S.C. § 1589(b) *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 679 (S.D.N.Y. 2024). To plead participant liability, a plaintiff must allege: "(1) a venture has engaged in an act in violation of [the TVPRA], (2) the defendant knew or should have known that the venture had violated [the TVPRA], (3) the defendant participated in that venture, and (4) the defendant knowingly benefited from its participation." *Id.* (internal citation and quotation marks omitted). Plaintiff alleges Combs engaged in perpetrator liability, stating that he "knowingly obtained labor from Plaintiff through

25

threats of serious harm, physical restraint, and other means of coercion," and that the so-called "Combs Entities" engaged in participant liability, stating that they "knowingly benefitted from the forced labor and the trafficking activities conducted by Mr. Combs." FAC ¶¶ 155–56. Neither allegation is supported.

1. <u>Dismissal as to Combs</u>

Regarding Combs, Plaintiff fails to demonstrate that he obtained Plaintiff's labor or services through "threats of serious harm, physical restraint, and other means of coercion." First, "other means of coercion" – in addition to being vague and conclusory – is not one of the enumerated means of conduct prohibited by Section 1589 and therefore, cannot form the basis of Plaintiff's forced labor claim.

Second, the FAC contains no allegations that Combs obtained Plaintiff's labor through physical restraint. In fact, in the section of the FAC where Plaintiff alleges "Combs "Subjects Ms. Richard to Labor Trafficking and Oppressive and Hostile Working Conditions," Plaintiff does not mention physical restraint at all. *See* FAC ¶¶ 79–91. Moreover, the contracts that Plaintiff incorporates by reference in the FAC demonstrate she actually agreed to do the very things she claims were "forced." *See, e.g.* Wolff Decl. Ex. A at ¶ 4(a).

Finally, none of the allegations in the FAC support an inference that Combs threatened Plaintiff with "serious harm." For a defendant to violate Section 1589 by threatening serious harm, they must have "intend[ed] to cause a person in his employ to believe that if she does not continue to work, she will suffer the type of serious harm . . . that would compel someone in her circumstances to continue working to avoid that harm." *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011). The FAC alleges only that Combs verbally insulted Plaintiff and made hyperbolic statements that no reasonable person would construe as presenting a risk of serious

26

harm. *See, e.g.,* FAC ¶ 80 (alleging Combs said, "'you're a bitch,' 'I don't want to see your fucking face,' 'I make n****s go missing,' and 'I make things go away.'").

Plaintiff alleges that after hearing such alleged statements, she "returned to the studio immediately, fearing that Mr. Combs was capable of following through with his threats." *Id.* While these alleged statements are unpleasant, Plaintiff fails to allege that (a) Combs said them with the intent to cause her to suffer harm if she does not work or, more importantly, (b) that Plaintiff was compelled to continue providing labor or services against her will. There are simply no allegations supporting an inference that Plaintiff was forced to work for Combs under conditions even remotely akin to what this statute was intended to prevent (i.e. slavery). In fact, the FAC acknowledges that when individuals "stood up to [Combs] and refused his demands, it was typical for him to fire them in a fit of rage." *Id.* ¶ 86. This demonstrates both that Plaintiff knew Combs did not force people to work for him and that he did not harm those with whom he worked when they failed to follow his commands.

### 2.    Dismissal as to **the "Combs Entities" (including BBRLLC)**

First, because Plaintiff has failed to state a claim for perpetrator liability, her participant liability claim against the "Combs Entities" must also be dismissed. *See* 18 U.S.C. §§ 1589(a)–(b); *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019). Second, her claim against the "Combs Entities" fails for the additional reason that the FAC impermissibly lumps the entities together, *see supra* Section II.

Third, the FAC is devoid of any facts regarding how any (let alone all) of the "Combs Entities" (1) participated in a forced labor venture; (2) engaged in the alleged forced labor conduct; (3) knew or should have known that their actions violated the TVPRA; and (4) knowingly benefited from participating in the venture. *See Levin* 747 F. Supp. 3d at 679. As noted above, there are no facts to support the supposed benefit (i.e. placating Mr. Combs). Plaintiff was given

the chance to plead facts and has still failed to identify the who, what, where, when and how of her claims. *See id.*

### B.    Plaintiff Fails to Plead State Law Claims for Forced Labor

Plaintiff's Fourth and Fifth COAs assert forced labor claims under New York's human trafficking law, New York Social Services Law § 483bb(c), and California's human trafficking law, California Civil Code § 52.5.  They too must be dismissed for failure to state a claim.

Plaintiff has no claim under New York Social Services Law § 483bb(c) because at the time of the events in question, no such cause of action existed, and the statute is not retroactive.  The "the provision in § 483-bb that establishes a civil right of action only became effective on January 19, 2016."  *Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d at 156.  Retroactive application of statutes is disfavored "by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it."  *Id.*  As the court in *Choice Hotels* found, no such language exists with respect to Section 483bb(c).  The alleged conduct underlying Plaintiff's human trafficking claims took place between 2009 and 2010, at least five years prior to January 19, 2016; accordingly, Plaintiff has no claim at all under § 483-bb(c) and COA Four must be dismissed. *See id* (dismissing plaintiff's Section 483-bb(c) claim and holding that it "necessarily fails" where the alleged sex trafficking occurred "more than six years prior to January 19, 2016").

Even if § 483-bb(c) did supply a private right of action (and it does not), Plaintiff has failed to plead the essential elements of both her state law trafficking claims.  Both statutes require a plaintiff to plead that: (1) the defendant *intended* to (2) cause the plaintiff to engage in labor (3) through acts or threats of acts physical injury.  N.Y. Penal Law § 135.35(3)(a), (c); Cal. Penal Code § 236.1(a), (h)(5).  As with Plaintiff's federal forced labor claim, the FAC fails to allege any facts showing that Combs or any of the so-called "Combs Entities" threatened, forced, or coerced Plaintiff into providing labor against her will.  Plaintiff's state forced labor claims fail for the

28

additional reason that the FAC contains no non-conclusory allegations that Combs or the "Combs Entities" engaged in any conduct with the *intent* to make Plaintiff provide labor.  At most, the FAC alleges that Plaintiff was underpaid and/or subjected to difficult work conditions, not that she was an indentured servant.  *See* FAC ¶¶ 79–91.

## V.  PLAINTIFF FAILS TO STATE A CLAIM FOR SEX TRAFFICKING

Plaintiff's Fifth COA asserts a claim of sex trafficking under the TVPRA, 18 U.S.C. § 1591, against Combs and the "Combs Entities."  As with her claim for forced labor under the TVPRA, she alleges perpetrator liability against Combs and participant liability against the "Combs Entities."  To state a claim under the Section 1591, a plaintiff must plead, *inter alia*, that the defendant knowingly "recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person. . . to cause the person to engage in a commercial sex act." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018) (quoting 18 U.S.C. § 1591).  Under the statute, "commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person," 18 U.S.C. § 1591(e)(3).

There are no allegations in the FAC that Plaintiff engaged in any sexual act with Combs or anyone else, let alone a commercial sex act.  The closest Plaintiff comes to alleging any sexual conduct involving her is her allegation that on a few occasions, Combs groped Plaintiff's buttocks and breasts.  *See* FAC ¶¶ 96, 99, 100, 105.  This conduct does not constitute a commercial sex act.

The undersigned counsel is not aware of any court finding that a defendant's alleged groping of body parts other than genitalia and without any sexual gratification meets the statutory definition of "any sex act."  *Cf. United States v. Sebastian*, No. 20-CR-10170 (DJC), 2023 WL 2187895, at *14 (D. Mass. Feb. 23, 2023) (collecting cases of courts interpreting "any sex act" to include masturbation in addition to oral and genital intercourse).  Accordingly, because Plaintiff

fails to allege that she and Combs engaged in any sexual acts, much less a commercial sex act, her cause of action under Section 1591 should be dismissed.

As with her TVPRA forced labor claim, because Plaintiff failed to state a claim for perpetrator liability, her participant liability claim against the "Combs Entities" should also be dismissed.  *See supra* IV.B; 18 U.S.C. § 1591(b).

## VI.    NYSHRL DISCRIMINATION CLAIM IS INSUFFICIENTLY PLED

In addition to being time-barred, Plaintiff's Twelfth COA against Combs and the "Combs Entities" for sexual harassment, gender discrimination, and hostile work environment under the NYSHRL fails because Plaintiff cannot establish an employment relationship with any of the Defendants.

"An essential element of a claim under the NYSHRL or NYCHRL is the existence of an employer-employee relationship."  *Musiello v. CBS Corp.*, 518 F. Supp. 3d 782, 789 (S.D.N.Y. 2021) (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) (internal quotation marks omitted)).  Here, Plaintiff states conclusory that at all relevant times, "Combs met the definition of an 'employer'" and that she "met the definition of an 'employee'" of multiple different "Combs Entities."  FAC ¶ 10.  These threadbare allegations are insufficient.

First, the FAC fails to explain how either Combs or the "Combs Entities" were her "employer[s]" as defined in the NYSHRL. Instead of identifying Plaintiff's supposed employer and when she was employed, as discussed *supra* in Section II, Plaintiff impermissibly relies on group pleadings to lump the multiple "Combs Entities" together, in violation of FRCP Rule 8(a)(2). Plaintiff offers no facts to support the assertion that she had an employee-employer relationship with any of the "Combs Entities," much less all of them.  Indeed, the contracts referenced in the FAC demonstrate Richard had recording agreements – not employment agreements.  *See* Wolff Decl. Ex. A.

Second, her claim against Combs fails as a matter of law.  Even if Plaintiff had adequately pled that any of the "Combs Entities" were her employers, Combs would still not be liable for her claims under the NYSHRL because the New York Court of Appeals made clear that "where a corporate entity is the plaintiff's employer, an individual affiliated with the entity cannot himself qualify as the employer, that is so even if the individual holds a high post at the employer or owns the entity." *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 329 (S.D.N.Y. 2024) (citing *Doe v. Bloomberg L.P.*, 36 N.Y.3d 450, 459 (2021);  *Bueno v. Eurostars Hotel Co.*, 21-CV-535 (JGK), 2022 WL 95026, at *7 (S.D.N.Y. Jan. 10, 2022) ("a corporate employee—even its owner and CEO—no longer qualifies as an 'employer' under [NYSHRL].") (citations omitted).

## VII.    RIGHT OF PUBLICITY AND UNJUST ENRICHMENT CLAIMS ARE BASELESS

Plaintiff's Seventeenth COA alleges violations of Plaintiff's right of publicity under Sections 50 and 51 of the New York Civil Rights Law and for unjust enrichment against Combs, "Bad Boy" and the "Combs Entities."  Again, Plaintiff resorts to group pleadings in lieu of actually identifying anything the entities did that would constitute a violation of the New York Civil Rights Law.

In addition to the improper group pleading, and the claim being time-barred, this cause of action fails for at least five additional reasons.

First, Plaintiff fails to make any specific allegation that any of the "Bad Boy" entities, "Combs Entities," and especially not BBRLLC which has had no active operations since 2009 or Bad Boy Entertainment LLC or Janice Combs Publishing LLC which were not formed until 2014, used Plaintiff's voice, likeness or image for advertising purposes between 2004 and 2011, as such claim requires.  *Bendit v. Canva, Inc.,* No. 23-CV-473 (RA), 2023 WL 5391413, at *8–9 (S.D.N.Y. Aug. 22, 2023).  Instead, Plaintiff alleges only that "Bad Boy" and "Combs Entities" knowingly

31

used Plaintiff's voice, likeness, image, persona and services without Ms. Richard's consent for advertising and promotion [sic] purposes and for the purpose of trade." FAC ¶ 248. Not a single fact nor a single date nor any specific alleged use is provided in the FAC. And the FAC certainly does not specify how the same were used for "advertising and promotion [sic] purposes and for the purpose of trade" by any of these defendants. *Id.*

These bare, conclusory assertions warrant dismissal, particularly where, as here, Plaintiff has already been given a second chance to make particularized allegations with the FAC. *Tesfay v. Hanes Brands Inc.,* No. 19-CV-3889 (GHW), 2019 WL 6879179, at *6 (S.D.N.Y. Dec. 17, 2019) (dismissing right of publicity claim where complaint "contains the conclusory allegation that [defendant] 'has been using Plaintiff's image, likeness, and picture for advertising or trade purposes within the State of New York ... without Plaintiff's written consent.'").

Second, there are no allegations that any of the "Bad Boy" entities or "Combs Entities" made or published advertisements in the State of New York, as is required. *Id*. Third, the FAC seems to allege that Combs required Plaintiff to "perform at and attend numerous parties and promotional events as part of Diddy – Dirty Money." FAC ¶ 247. This is self-defeating, as Plaintiff alleges that such activities were performed pursuant to her contractual obligations to Combs and her objection seems to be that she was supposedly not paid, not that she had failed to provide her consent. This provides no basis for a right of publicity cause of action, because the use of any of Plaintiff's voice, likeness, image or persona would be pursuant to such agreement or obligations to Combs and any alleged misuse of these things would, at most, constitute a contract dispute between these parties.

Fourth, any unjust enrichment is duplicative of Plaintiff's New York Civil Rights Law claim and must be dismissed. *Drob Collectibles, LLC v. Leaf Trading Cards, LLC*, No. 23-CV-63

(GHW) (JW), 2024 WL 897952, at *6 (S.D.N.Y. Feb. 15, 2024) (dismissing unjust enrichment claim where "the case law is clear that even where the N.Y. Civ. Rights Law claims fail, unjust enrichment claims are still preempted.") (citations omitted), *report and recommendation adopted*, No. 1:23-CV-00063-GHW-JW, 2024 WL 895315 (S.D.N.Y. Mar. 1, 2024).

Fifth, Plaintiff alleges that she "was/is a resident of the States of California and New York" at "all relevant times herein," including the time of any alleged violations of the New York Civil Rights Law.  FAC ¶ 9.  The law is clear that it is "absolutely and indisputably the case that an individual who does not reside in New York cannot bring a claim under New York's Right of Publicity Law."  *Drob*, 2024 WL 897952, at *6 (citation omitted).  Plaintiff fails to provide notice of when she was a resident of New York, and when the alleged violations of the New York Civil Rights Act took place.  Plaintiff's failure provides yet another basis for dismissal of the Seventeenth COA.

## VIII.  FORCED LABOR, EMPLOYMENT, RIGHT OF PUBLICITY, AND UNJUST ENRICHMENT CLAIMS ARE BARRED BY CONTRACTUAL RELEASES

Plaintiff's forced labor, employment, right of publicity, and unjust enrichment claims should also be dismissed for the independent reason that Plaintiff released such claims in at least two separate, binding contracts which are incorporated in, and integral to, the FAC.  In October 2021, Plaintiff signed an agreement with Janice Combs Publishing, Inc. pursuant to which she recovered certain publishing rights and, in consideration, released Janice Combs Publishing, Inc. and Sean Combs and each of their predecessors, successors, assigns, officers, and affiliates from "all claims, demands, actions, causes of action, [and] suits" which Richard had as of that date "by reason of any matter, cause of thing whatsoever arising from or related to" any of the musical compositions she had authored as of that date or to any of her prior agreements with Janice Combs Publishing, Inc.  Wolff Decl. Ex. B at ¶ 3.  Plaintiff's claims for forced labor, employment

discrimination/hostile work environment, violation of the right of publicity, and unjust enrichment – all of which are premised on allegations that she was injured in connection with her authorship and performance of musical compositions and her agreements relating thereto between 2004 and 2011 (*see* FAC ¶¶ 30–116) – fall squarely within this unambiguous release.

In addition, even if not related to such contracts or compositions, Plaintiff's claims would be barred to the extent premised on conduct preceding June 29, 2007 because she entered into an agreement with BBRLLC releasing and discharging BBRLLC and its successors, assigns, affiliates, partners, members, officers and agents from any and all claims – of any sort whatsoever – that she had excepting certain royalty payments (which are not the subject of any claims asserted in this action) as of June 29, 2007. Wolff Decl. Ex. A at ¶ 4(a).

Both contracts may be considered in this motion because they are referenced in and integral to the FAC. *See, e.g.*, FAC ¶¶ 56, 230 (referencing Richard's multiple "contracts with "Combs Entities" and Bad Boy"); *Chambers v. Time Warner, Inc.*, 282 F.3d at 152–53 (on Rule 12(b)(6) motion, court may consider "any statement or documents incorporated in [the complaint] by reference" and any document where the complaint "relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.") (citations omitted).

The releases require dismissal of those claims – that is COAs Three, Four, Six, and Seventeen – that fall under their ambit. *See, e.g., Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) (contractual release required dismissal).

## IX.    PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

Plaintiff asserts that her purported copyright in a song she co-authored with Combs and three other authors, *Deliver Me*, was infringed when it was included on Combs' 2023 album and in related marketing of that song. *See* FAC ¶¶ 122, 125, 130, 132, 134. Plaintiff brings claims for direct copyright infringement against Combs and Love Records (Eighteenth COA) and for

34

secondary (vicarious or contributory) copyright infringement against these same Defendants as well as the two Janice Combs Publishing entities (Nineteenth COA). *Id.* ¶¶ 253–59, 260–66.

### A.    Both Copyright Claims Fail Because Combs Is a Co-Author

Whether styled as "direct" or "secondary" infringement, Plaintiff's copyright allegations fail as a matter of established law. "[C]oauthors cannot sue one another for copyright infringement." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011). The Copyright Registration that Plaintiff attaches to her FAC confirms she is just one of five co-authors—along with Combs, and that Love Records holds the relevant "Rights and Permissions" to the work. *See* ECF No. 131, Ex. A; FAC ¶ 122. This alone defeats Plaintiff's allegations of infringement: "the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him; nor can a joint owner of a copyright sue his co-owner for infringement." *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) (citations omitted). "[E]ach joint author has the right to use or to license the work," *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007), and Combs, as co-owner, did just that. *See Robinson v. Double R Records*, No. 04-CV-4120 (KMV), 2007 WL 2049724, at *2 (S.D.N.Y. July 16, 2007) (dismissing infringement claim against co-owner and imposing Rule 11 sanctions). Nor can Combs' label, Love Records, be liable. As a co-author, Combs had the right to grant them an implied, non-exclusive license to use *Deliver Me* in connection with marketing and releasing his 2023 album. *See Davis*, 505 F.3d at 100; *Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807, 817 (S.D.N.Y. 2019) (dismissing infringement claims because a co-owner may unilaterally license use of a work to others). Plaintiff's Certificate acknowledges that Love Records held the Rights and Permissions to *Deliver Me.* ECF No. 131, Ex. A.

### B.    Plaintiff's Secondary Infringement Claim Also Fails to Satisfy Rule 8

Even if Plaintiff could plausibly plead direct infringement, her secondary infringement claim, which is asserted against Combs, Love Records, Inc., Janice Combs Publishing LLC, and

Janice Combs Publishing Holdings Inc., would still be subject to dismissal on two additional grounds.

*First*, Plaintiff's claims for vicarious and contributory infringement rest on the sort of "vague and conclusory" allegations that courts routinely dismiss. *New London Assocs., LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 410 (S.D.N.Y. 2019). To plead contributory copyright infringement, Plaintiff was required to plead facts to plausibly establish that each Defendant knowingly and materially contributed to infringing acts; to plead vicarious infringement, Plaintiff was required to plead that each Defendant had both the ability to control the alleged infringement and a direct financial interest in it. *Arista Records LLC v. Lime Grp. LLC*, 784 F.Supp.2d at 432 (S.D.N.Y 2011). Instead, Plaintiff pleads only that each of the four Defendants collectively "committed vicarious and/or contributory copyright infringement with actual or constructive knowledge of, or have recklessly disregarded, Ms. Richard's copyrights" (FAC ¶ 265) and "had the right and ability to supervise the creation and exploitation of *Deliver Me* and/or had a direct financial interest in the same" (FAC ¶ 262). These boilerplate allegations of secondary infringement must be dismissed. *Klauber Bros., Inc. v. URBN US Retail LLC*, No. 21-CV-4526 (GHW), 2022 WL 1539905, *10-11 (S.D.N.Y. May 14, 2022).

*Second*, Plaintiff's disjunctive "and/or" pleading (FAC ¶ 262) is also insufficient to plead vicarious infringement because the two elements for vicarious liability for infringement are *conjunctive*. *See Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 308 (S.D.N.Y. 2020) ("Vicarious liability for copyright infringement exists where the defendant has the right and ability to supervise the infringing activity *and also* has a direct financial interest in such activities.") (citations omitted).

## CONCLUSION

For all the reasons set forth above, Defendants respectfully request that the Court dismiss the First Amended Complaint in its entirety with prejudice and grant such other and further relief as the Court deems proper and just.

Dated:  New York, New York
        May 16, 2025

Respectfully submitted,

SHER TREMONTE LLP

_____/s/_____

Erica A. Wolff
Michael Tremonte
Michael Bass
90 Broad Street, 23rd Floor
New York, NY 10004
(212) 202-2600
mtremonte@shertremonte.com
ewolff@shertremonte.com
mbass@shertremonte.com

*Attorneys for Defendants Sean Combs,
Daddy's House Recording, Inc., Bad Boy
Entertainment LLC, Bad Boy Entertainment
Holdings, Inc., Bad Boy Productions
Holdings, Inc., Bad Boy Books Holdings, Inc.,
Sean Combs Capital LLC, Janice Combs
Publishing Holdings, Inc., Love Records, Inc.,
1169 Corp. f/k/a Sean Combs Music, Inc., CE
OpCO, LLC f/k/a Combs Enterprise LLC, and
Janice Combs Publishing LLC*

LAW OFFICES OF SCOTT E. LEEMON PC

_____/s/_____

Scott E. Leemon
41 Madison Avenue, 31st Floor
New York, NY 10010
(212) 696-9111
scott@leemonlaw.com

Jonathan Savella, Esq.
40 Exchange Place, Ste. 1800
New York, NY 10005
(646) 801-2184
jon@jonathansavella.com

*Attorneys for Defendant Harve Pierre*

MCDERMOTT WILL & EMERY LLP

_____/s/_____

Edward B. Diskant
Lisa A. Linsky
One Vanderbilt Avenue
New York, NY 10017
(212) 547-5754

PRYOR CASHMAN LLP

_____/s/_____

Donald S Zakarin
Nicholas George Saady
William Laurence Charron
7 Times Square
New York, NY 10036

ediskant@mwe.com

llinsky@mwe.com

Elizabeth A. Rodd
200 Clarendon Street, Floor 58
Boston, MA 02116
(617) 535-4000
erodd@mwe.com

*Attorneys for Defendant UMG Recordings, Inc.*

(212) 326-0806
DZakarin@pryorcashman.com
nsaady@pryorcashman.com
wcharron@pryorcashman.com

*Attorneys for Defendant Bad Boy Records LLC*