**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DAWN ANGELIQUE RICHARD,

      Plaintiff,

  v.

SEAN COMBS, HARVE PIERRE, JANICE
COMBS PUBLISHING LLC, JANICE COMBS
PUBLISHING HOLDINGS INC., LOVE
RECORDS INC., DOE CORPORATIONS 1-10,
AND DOE DEFENDANTS 11-20,

      Defendants.

Case No. 24-cv-06848 (KPF)

**Oral Argument Requested**

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' CONSOLIDATED MOTION TO DISMISS THE SECOND AMENDED</u>
## <u>COMPLAINT</u>

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

PROCEDURAL HISTORY ................................................................................................ 2

FACTS ALLEGED IN THE SAC ..................................................................................... 3

STANDARD OF REVIEW ................................................................................................ 6

ARGUMENT ...................................................................................................................... 7

I.      PLAINTIFF'S FIRST THROUGH SIXTEENTH CAUSES OF ACTIONS ARE UNTIMELY ................................................................................. 7

      A.    Assault, Battery, False Imprisonment, and Intentional Infliction of Emotional Distress (COAs 2, 6–10) Are Time-Barred ............................. 7

      B.    Forced Labor and Sex Trafficking Claims Under Federal Law (COAs 3, 4) Are Time-Barred ........................................................................ 7

      C.    State Law Trafficking Claim (COA 5) Is Time-Barred ............................. 8

      D.    Employment Claims (COAs 11–15) Are Time-Barred ............................. 8

      E.    Right of Publicity and Unjust Enrichment Claim (COA 16) Is Time-Barred ........................................................................................... 9

      F.    GMVL Claim (COA 1) Is Time-Barred ................................................... 9

      G.    No Tolling Doctrine Applies to Save the Time-Barred COAs ................. 10

          1.    Duress ........................................................................................ 10

          2.    Equitable Estoppel .................................................................... 11

      H.    The GMVL Revival Provision Does Not Revive Any Time-Barred Claims ..................................................................................................... 13

          1.    Conflict Preemption .................................................................. 13

          2.    Field Preemption ....................................................................... 14

II.     PLAINTIFF FAILS TO STATE A GMVL CLAIM ............................................. 15

III.    PLAINTIFF FAILS TO STATE CLAIMS FOR FORCED LABOR................... 18

    A.    Federal Forced Labor Claim ....................................................... 18

    B.    State Law Claims for Forced Labor........................................... 20

IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR SEX TRAFFICKING ............. 21

V.    NYSHRL DISCRIMINATION CLAIM IS INSUFFICIENTLY PLED.............. 21

VI.    RIGHT OF PUBLICITY AND UNJUST ENRICHMENT CLAIM IS
BASELESS ................................................................................................ 22

VII.    FORCED LABOR, EMPLOYMENT, RIGHT OF PUBLICITY, AND
UNJUST ENRICHMENT CLAIMS ARE BARRED BY
CONTRACTUAL RELEASES ................................................................. 24

VIII.    PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT
INFRINGEMENT..................................................................................... 24

    A.    Both Copyright Claims Fail Because Combs Is a Co-Author .................. 25

    B.    Plaintiff's Secondary Infringement Claim Also Fails to Satisfy
Rule 8 ......................................................................................... 25

CONCLUSION.................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Jenkins*,
No. 115745/03, 2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005) .........................11, 16

*AJ Energy LLC v. Woori Bank*,
No. 18-CV-3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019)................................. 6

*Arista Records LLC v. Lime Grp. LLC*,
784 F.Supp.2d (S.D.N.Y 2011) ............................................................................................ 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................... 6

*Bandler v. DeYonker*,
174 A.D.3d 461 (1st Dep't 2019) ............................................................................................ 9

*Becerra v. San Diego Cmty. Coll. Dist.*,
No. 17-CV-2489 (BAS), 2018 WL 4385370 (S.D. Cal. Sept. 14, 2018) ................................. 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................. 6

*Bellino v. Tallarico*,
No. 24-CV-0712 (LAK), 2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024).................... 13, 15, 16

*Beverley v. 1115 Health & Benefits Fund*,
420 F. Supp. 2d 47 (E.D.N.Y. 2005) ................................................................................... 15

*Brown v. Daikin Am. Inc.*,
756 F.3d 219 (2d Cir. 2014) ................................................................................................. 22

*Bueno v. Eurostars Hotel Co.*,
No. 21-CV-535 (JGK), 2022 WL 95026 (S.D.N.Y. Jan. 10, 2022) ...................................... 22

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
17 N.Y.3d 269 (2011)........................................................................................................... 24

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ................................................................................................... 6

*Cordero v. Epstein*,
22 Misc. 3d 161, 869 N.Y.S.2d 725 (Sup. Ct. N.Y. Cnty. 2008)........................................... 18

*Corrigan v. Town of Brookhaven*,
No. 22-CV-4688 (GRB), 2023 WL 7003936 (E.D.N.Y. Oct. 24, 2023) .................................. 7

*Cortner v. Israel*,
732 F.2d 267 (2d Cir. 1984) .................................................................................................. 25

*Davis v. Blige*,
505 F.3d 90 (2d Cir. 2007) ................................................................................................... 25

*Diaz v. City Univ. of N.Y.*,
No. 15-CV-1319 (PAC) (MHD), 2015 WL 13746673 (S.D.N.Y. Nov. 16, 2015) ................. 11

*DJL Rest. Corp. v. City of New York*,
96 N.Y.2d 91 (2001) ............................................................................................................ 14

*Doe v. Black*,
No. 23-CV-6418 (JGLC), 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) ............................ 15

*Doe v. Bloomberg L.P.*,
36 N.Y.3d 450 (2021) ........................................................................................................... 22

*Doe v. Combs*,
No. 23-CV-10628 (JGLC), 2024 WL 4987044 (S.D.N.Y. Dec. 5, 2024) ........................ 15, 17

*Drob Collectibles, LLC v. Leaf Trading Cards, LLC*,
No. 23-CV-63 (GHW) (JW), 2024 WL 897952 (S.D.N.Y. Feb. 15, 2024) ........................... 23

*Edmondson v. RCI Hosp. Holdings, Inc.*,
No. 16-CV-2242 (VEC), 2021 WL 4499031 (S.D.N.Y. Oct. 1, 2021) ................................... 9

*Fischer v. Forrest*,
No. 14-CV-1304 (PAE) (AJP), 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017) ....................... 9

*Gasery v. Kalakuta Sunrise, LLC*,
422 F. Supp. 3d 807 (S.D.N.Y. 2019) .................................................................................. 25

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019) ......................................................................10, 11, 12

*Ghartey v. St. John's Queens Hosp.*,
869 F.2d 160 (2d Cir. 1989) ................................................................................................... 6

*Gilmore v. Combs et al.*,
No. 24-CV-8440 (JPO), 2025 WL 1425326 (S.D.N.Y. May 16, 2025) .....................10, 11, 12

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429 (S.D.N.Y. 2018) .................................................................................. 15

*Klauber Bros., Inc. v. URBN US Retail LLC*,
No. 21-CV-4526 (GHW), 2022 WL 1539905 (S.D.N.Y. May 14, 2022) ............................ 26

*Krisko v. Marvel Ent., LLC*,
473 F. Supp. 3d 288 (S.D.N.Y. 2020) ............................................................... 26, 27

*Kwan v. Schlein*,
634 F.3d 224 (2d Cir. 2011) ........................................................................... 25

*Leonhard v. U.S.*,
633 F.2d 599 (2d Cir. 1980) ............................................................................. 7

*Levin v. Sarah Lawrence Coll.*,
747 F. Supp. 3d 645 (S.D.N.Y. 2024) ................................................................. 8

*Matter of Chwick v. Mulvey*,
81 A.D.3d 161 (2d Dep't 2010) ...................................................................... 13

*Muchira v. Al-Rawaf*,
850 F.3d 605 (4th Cir. 2017) ..................................................................... 18, 19

*Musiello v. CBS Corp.*,
518 F. Supp. 3d 782 (S.D.N.Y. 2021) ............................................................... 22

*New London Assocs., LLC v. Kinetic Soc. LLC*,
384 F. Supp. 3d 392 (S.D.N.Y. 2019) ............................................................... 26

*Nezaj v. PS450 Bar & Rest.*,
719 F. Supp. 3d 318 (S.D.N.Y. 2024) ............................................................... 22

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018) ............................................................... 21

*Overall v. Estate of Klotz*,
52 F.3d 398 (2d Cir. 1995) ............................................................................. 10

*Parker v. Alexander*,
No. 24-CV-4813 (LAK), 2025 WL 268436 (S.D.N.Y. Jan. 22, 2025) ...................... 13, 14, 15

*Rivers v. Combs*,
No. 25-CV-1726 (JSR), 2025 WL 2414117 (S.D.N.Y. Aug. 19, 2025) ...................... 10, 11

*Robinson v. Double R Records*,
No. 04-CV-4120 (KMV), 2007 WL 2049724 (S.D.N.Y. July 16, 2007) ...................... 25

*Roeder v. J.P. Morgan Chase & Co.*,
No. 21-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022) ........................................... 12

*Rossbach v. Montefiore Med. Ctr.*,
   No. 19-CV-5758, 2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) ...................................... 16, 17

*S.A. v. Bell*,
   No. 950279/2021, 2023 WL 8653131 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023).......................... 14

*S.S. v. Rockefeller Univ. Hosp.*,
   239 A.D.3d 424 (1st Dep't June 3, 2025) ........................................................................ 13, 17

*Satina v. City of New York*,
   No. 24-CV-1842 (JGLC), 2025 WL 902893 (S.D.N.Y. Mar. 25, 2025) .................................. 8

*Spirt v. Spirt*,
   83 Misc. 3d 1210(A), 211 N.Y.S.3d 910 (N.Y. Sup. Ct. 2024)................................................ 9

*Stuart v. Am. Cyanamid Co.*,
   158 F.3d 622 (2d Cir. 1998) ................................................................................................... 7

*Tesfay v. Hanes Brands Inc.*,
   No. 19-CV-3889 (GHW), 2019 WL 6879179 (S.D.N.Y. Dec. 17, 2019) .............................. 23

*United States v. Dann*,
   652 F.3d 1160 (9th Cir. 2011) ............................................................................................... 20

*United States v. Sebastian*,
   No. 20-CR-10170 (DJC), 2023 WL 2187895 (D. Mass. Feb. 23, 2023).............................. 21

*Zoe G v. Frederick F.G.*,
   208 A.D.2d 675 (2d Dep't 1994) .......................................................................................... 10

**Statutes**

18 U.S.C. § 1589(a) ...................................................................................................................... 19

18 U.S.C. § 1591 .......................................................................................................................... 21

18 U.S.C. § 1591(e)(3).................................................................................................................. 21

18 U.S.C. § 1595(c) ........................................................................................................................ 8

Cal. Civ. Code § 52.5 ...................................................................................................................... 8

Cal. Gov't Code § 12960(d)............................................................................................................ 9

Cal. Penal Code § 236.1................................................................................................................ 20

N.Y.C. Admin. Code § 2-201 ....................................................................................................... 15

N.Y.C. Admin. Code § 10-1104 ................................................................................................... 18

N.Y.C. Admin. Code § 10-1105 ................................................................................................ 9, 14

**Rules**

CPLR § 202 ................................................................................................................................ 7

CPLR § 215(3) ........................................................................................................................... 7

Defendants Sean Combs ("Combs"), Janice Combs Publishing LLC, Janice Combs Publishing Holdings Inc., Love Records Inc. (together, without Combs, the "Entity Defendants"), and Harve Pierre ("Pierre") (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Consolidated Motion to dismiss the Second Amended Complaint (ECF No. 172, the "SAC") with prejudice.

## PRELIMINARY STATEMENT

In her 237-paragraph, 18-count SAC, Plaintiff Dawn Richard seeks to transform narratives of alleged injuries *against others* into a headline-grabbing sex trafficking conspiracy *as to her*. But Plaintiff does not claim she engaged in sex with anyone, much less that she was trafficked or compelled to do so.   At base, her SAC tells a non-actionable story about the challenging environment in which she struggled to achieve fame in the music industry some 20 years ago, and her frustrations, decades later, at allegedly being undercompensated for her contributions, when she again elected to do business with Combs.   The allegations in the SAC fail to allege any timely and cognizable injuries as to Plaintiff.

First, with the exception of Plaintiff's (meritless) copyright claims, every single Cause of Action ("COA") is untimely.   The conduct giving rise to all such COAs allegedly occurred between 2004 and 2011 – thirteen to twenty years *before* this lawsuit was filed. The relevant statutes of limitations range from one to ten years.   All have run.   And Plaintiff does not plead any legally sufficient basis to toll them.   Nor is her claim under the New York City Gender Motivated Violence Law, §§10-1101, ("GMVL") revived by the 2022 amendment purporting to create a two-year revival window for time-barred GMVL claims (the "GMVL Revival Provision").   As Judge Kaplan has now held twice, the GMVL Revival Provision is preempted by New York State law which creates a comprehensive, detailed, and conflicting statutory scheme governing the revival of previously time-barred sexual assault claims and is not retroactive as against anyone not a

perpetrator.  Any remaining dispute on this issue is soon to be resolved by the Second Circuit in two related pending appeals, *Parker v. Alexander*, No. 25-486 and *Doe v. Black*, No. 25-564.

Second, her COAs suffer from numerous pleading deficiencies beyond being time-barred. For example, Plaintiff's federal sex trafficking claim fails because there are no allegations that Plaintiff engaged in any sex act at all, let alone a commercial sex act.  She does not plead any claim for forced labor because the SAC alleges at most that she was underpaid and/or subjected to difficult work conditions, not that she was subject to circumstances akin to indentured servitude. Plaintiff's employment claims are not viable, because Plaintiff does not allege that Defendants employed her.  Nor does she state a claim for violation of the right of publicity because, among other things, the SAC does not identify any specific instances where any Defendant used Plaintiff's voice, likeness, or image for advertising purposes without her consent.  And Plaintiff's copyright COAs are frivolous: The Copyright registration appended to the SAC confirms that Combs co-authored the work she claims he infringed: under settled law, a co-owner cannot sue another co-owner (or their licensees) for copyright infringement.  Moreover, the secondary infringement claim rests on facially deficient vague and conclusory pleadings.

Finally, Plaintiff executed multiple contracts with several of the Defendants containing broad releases that bar her forced labor, employment, publicity, and unjust enrichment claims here.

## **PROCEDURAL HISTORY**

The SAC is Plaintiff's third attempt to state viable claims.  Plaintiff initiated this action on September 10, 2024 with the Original Complaint (the "OC") containing twenty causes of action and naming twenty-four different defendants and twenty Doe defendants.  ECF No. 2.  Between October 21, 2024 and January 22, 2025, numerous defendants filed pre-motion letters conveying their intent to dismiss the OC on the grounds that Plaintiff's claims were time-barred and insufficiently pled.  *See* ECF Nos. 73, 82, 85, 121–22.  In response to Plaintiff's requests for a

four-week extension to respond to two of the defendants' letters, ECF Nos. 123–24, the Court declined to entertain a response from Plaintiff defending the OC's allegations and instead ordered her to file a new pleading. *See* ECF No. 125. On March 12, 2025, Plaintiff filed the First Amended Complaint (ECF No. 130, the "FAC"), which dropped some defendants, added Tri Star Sports and Entertainment Group Inc. ("Tri Star") as a defendant, and removed causes of action for fraud/intentional misrepresentation and for breach of the implied convent of good faith. *Compare* OC *with* FAC. On May 13, 2025, Plaintiff voluntarily dismissed Tri Star. ECF No. 142. On May 16, 2025, the remaining defendants filed a consolidated motion to dismiss. ECF No. 153. In August of this year, rather than respond to the motion, Plaintiff dismissed ten defendants and moved for leave to file the SAC. *See* ECF Nos 161–62. Plaintiff filed the SAC on August 23, 2025. ECF No. 172. This version of the complaint drops another cause of action and whittles the defendant-count down to five.

Since the initial filing of the action, four of the original twenty-one COAs were withdrawn, and nineteen of the twenty-four named defendants were voluntarily dismissed.

### FACTS ALLEGED IN THE SAC

Plaintiff asserts eighteen COAs, including federal and state human trafficking claims, violations of New York City local law, copyright infringement, multiple torts, and various state employment claims. *See generally* SAC. Fifteen of those COAs – that is, all of the non-copyright claims – are based entirely on conduct that occurred between 2004 and 2011 and are brought against Combs and Pierre. SAC ¶¶ 127–216.

Plaintiff's claims originate out of her decision in 2004 to participate in a reality TV show on MTV called *Making the Band*, which "centered around the formation and development of a new musical group under the mentorship of Combs." *Id*. ¶ 18. After filming one season of the show with Combs, Plaintiff and five other performers were chosen to form the musical group

*Danity Kane*. *Id.* ¶ 21. Plaintiff opted to return to the show and work with Combs for two additional seasons, which aired in 2008 and 2009, respectively. *Id.* ¶ 20.

According to Plaintiff, during this period, Combs refused requests for meals and rest from her and the other *Danity Kane* members. *Id.* ¶ 35. Pierre allegedly witnessed these "extreme conditions," and told them to continue following Combs's orders. *Id.* ¶¶ 39–40.

*Danity Kane* disbanded in 2009. *Id.* ¶ 45. Plaintiff then chose to continue working with Combs. *Id.* Starting in the fall of 2009, Plaintiff joined a new musical group with Combs and Witness 1 named *Diddy – Dirty Money*. *Id.* ¶ 46. The bulk of Plaintiff's claims arise from this period, 2009–2011. The SAC alleges that during her time as a member of *Diddy – Dirty Money*, Plaintiff witnessed Combs batter his then-girlfriend and attended parties where Combs performed sexual acts on inebriated women. *Id.* ¶¶ 55–58. The SAC does not allege Combs was violent toward, or engaged in sex with Plaintiff.

Plaintiff alleges that as a member of *Diddy – Dirty Money*, she once spent "three to four consecutive days recording without a break to eat or sleep." *Id.* ¶ 63. According to the SAC, Combs verbally threatened Plaintiff and "Witness 1" when they asked for food or rest. *Id.* ¶ 64. Plaintiff alleges that sometimes, when people working with Combs stood up to him "and refused his demands," he would fire them. *Id.* ¶ 70.

Between 2009 and 2011, *Diddy – Dirty Money* recorded music, rehearsed and toured. *See id.* ¶ 76. The SAC alleges that while assembling Plaintiff's performance wardrobes at a studio known as Daddy's House in New York City, Combs ordered Plaintiff "to strip down to her underwear" and touched her breasts and buttocks. *Id.* ¶¶ 22, 76, 79, 80, 83. Plaintiff contends she resisted what she perceived as Comb's sexual advances, and alleges he retaliated by "depriving her of professional opportunities," including by "denying her vocal parts" and "removing her from

songs;" the SAC does not identify any vocal parts or songs from which she was denied or removed. *Id.* ¶ 90.

The SAC alleges that on one occasion at a studio in New York in December 2010, Combs and Pierre raised their arms and swung their fists towards Plaintiff's face. *Id.* ¶ 93. They did not strike Plaintiff. *Id.* A person alleged to be Combs' bodyguard then escorted Plaintiff to a car parked outside the studio. *Id.* According to the SAC, the car had "no interior door handles," and Plaintiff was "locked inside with no way to escape." *Id.* ¶ 94. Plaintiff claims that after being released from the vehicle, Pierre led Plaintiff into a locked room at the studio for an unspecified amount of time until Pierre brought Plaintiff to see her father. *Id.* ¶ 97.

Throughout the nearly two decades in which Plaintiff continued to work with Combs, she entered into "various agreements with Mr. Combs and his companies" *Id.* ¶ 47; *see also id.* ¶ 201. In one such agreement between Richard and Janice Combs Publishing, Inc., executed on October 22, 2021, Richard released that entity and Combs, among others, from "all claims, demands, actions, causes of action, [and] suits" related to any of the parties' publishing contracts, or to any of her musical compositions as of that date. *See* Declaration of Erica Wolff ("Wolff Decl.") Ex. A at ¶ 3.

Two years later, Plaintiff worked with Combs on the release of a song co-authored by Combs and Plaintiff (with others), *Deliver Me*, which was released on *The Love Album: Off the Grid* in September 2025. Love Records paid Plaintiff $25,000 for her contributions. SAC ¶¶ 113–119. On November 6, 2023, a copyright registration was issued for the song. *See id.* ¶ 110; ECF No. 130-1, Ex. A. Despite Combs being a co-author, Plaintiff alleges Combs and the Entity Defendants infringed her copyright with that 2023 release.

5

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. While a court must accept as true well-pleaded factual allegations and draw reasonable inferences in the plaintiff's favor, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), a court "is not required to credit conclusory allegations unsupported by facts, . . . or to suspend common sense in conducting its analysis." *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019), *aff'd,* 829 F. App'x 533 (2d Cir. 2020).

"Where the dates in a complaint show that an action is barred by a statute of limitations," a defendant may move pursuant to Rule 12(b)(6) for dismissal on those grounds. *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

In considering a Rule 12(b)(6) motion to dismiss, a district court may consider "any statements or documents incorporated in [the complaint] by reference" and any document where the complaint "'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 152–53 (citation omitted).

## <u>ARGUMENT</u>

I.    **PLAINTIFF'S FIRST THROUGH SIXTEENTH CAUSES OF ACTIONS ARE UNTIMELY**

### A.  Assault, Battery, False Imprisonment, and Intentional Infliction of Emotional Distress (COAs 2, 6–10) Are Time-Barred

Assault, battery, false imprisonment and intentional infliction of emotional distress ("IIED") are subject to a one-year statute of limitations under New York State law.[1] *See* CPLR § 215(3) (applying one year limitations period to "action[s] . . . for assault, battery [and] false imprisonment"); *Corrigan v. Town of Brookhaven*, No. 22-CV-4688 (GRB), 2023 WL 7003936, at *2 (E.D.N.Y. Oct. 24, 2023) (§ 215(3)'s one-year limitations period applies also to "claims of intentional infliction of emotional distress").  In most situations, a plaintiff's claim "accrues" on the date of the alleged injury.  *Leonhard v. U.S.*, 633 F.2d 599, 613 (2d Cir. 1980).  In certain instances, a so-called "continuing wrong" claim is "deemed to have accrued on the date of the last wrongful act." *Id.*

The last time that either Combs or Pierre are alleged to have committed a "wrongful act" for tort purposes was in 2010.  *See* SAC ¶¶ 76–99; *see also id.* at ¶ 108. COAs 2 and 6 through 10 therefore expired in 2011, over a decade before Plaintiff commenced this action in September 2024.

### B.  Forced Labor and Sex Trafficking Claims Under Federal Law (COAs 3, 4) Are Time-Barred

The SAC asserts two claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595 – the Third COA for forced labor pursuant to 18 U.S.C. § 1589 and

---

[1] COAs 2 and 9 are brought under California law. To the extent California law provides a longer statute of limitations, New York's shorter statute of limitation controls. *See Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998) (New York's statutes of limitations apply to pendant state law claims except for claims accruing outside of New York State where the plaintiff is *not* a resident of New York, in which case "the court must apply the *shorter* limitations period . . . of either (1) New York; or (2) the state where the cause of action accrued.") (citing CPLR § 202).

the Fourth COA for sex trafficking pursuant to 18 U.S.C. § 1591.  *See* SAC ¶¶ 139–145, 146–152. As relevant here, the "statute of limitations for civil claims under the TVPRA is ten years from the date the cause of action arises."  *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 669–70 (S.D.N.Y. 2024) (cleaned up) (citing 18 U.S.C. § 1595(c)).

Plaintiff's TVPRA claims involve alleged conduct that occurred, at the latest, between 2009 and 2011.  *See* SAC ¶¶ 76–99.  Any claim was time-barred by no later than 2021, three years before Plaintiff filed this lawsuit.

### C.  State Law Trafficking Claim (COA 5) Is Time-Barred

Plaintiff's fifth COA asserts a claim for labor trafficking under California Civil Code § 52.5.  *See* SAC ¶¶ 153–159.  The statute of limitations under Section 52.5 is "seven years [from] the date on which the trafficking victim was freed from the trafficking situation."  Cal. Civ. Code § 52.5.  The alleged conduct underlying Plaintiff's claims took place between 2009 and 2011, which means her claims expired in 2018.

### D.  Employment Claims (COAs 11–15) Are Time-Barred

Plaintiff's COAs for sexual harassment, gender discrimination, and hostile work environment under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"), retaliation under the NYSHRL and California Government Code § 12940, and hostile work environment and discrimination under California Government Code § 12940 should be dismissed because the statutes of limitation have run.  Claims brought under the NYSHRL and NYCHRL "are subject to a three-year statute of limitations." *Satina v. City of New York*, No. 24-CV-1842 (JGLC), 2025 WL 902893, at *3 (S.D.N.Y. Mar. 25, 2025).  As explained *supra* n. 1, where shorter, New York's statute of limitations applies to Plaintiff's California employment claims. Because the relevant conduct underlying Plaintiff's Twelfth through Sixteenth COAs occurred between 2009 and 2011, her employment claims expired in

2015.  Plaintiff's employment claims would also be time-barred under California Government Code § 12940, which "requires that a plaintiff file an administrative charge with either the EEOC or the California Department of Fair Employment and Housing ("DFEH") within one year of the alleged unlawful act."  *Becerra v. San Diego Cmty. Coll. Dist.*, No. 17-CV-2489 (BAS), 2018 WL 4385370, at *5 (S.D. Cal. Sept. 14, 2018) (citing Cal. Gov't Code § 12960(d)).  The SAC does not allege compliance with this statutory requirement.

### E.  Right of Publicity and Unjust Enrichment Claim (COA 16) Is Time-Barred

Plaintiff's Sixteenth COA for violation of Plaintiff's right of publicity under Sections 50 and 51 of the New York Civil Rights Law and for unjust enrichment are also time-barred because the Civil Rights Law has a one-year statute of limitations.  *Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242 (VEC), 2021 WL 4499031, at *3 (S.D.N.Y. Oct. 1, 2021); *Fischer v. Forrest*, No. 14-CV-1304 (PAE) (AJP), 2017 WL 1063464, at *5 (S.D.N.Y. Mar. 21, 2017).  *See also Spirt v. Spirt*, 83 Misc. 3d 1210(A), 211 N.Y.S.3d 910 (N.Y. Sup. Ct. 2024) ("when a cause of action for unjust enrichment is based upon the same facts as . . . another cause of action, the unjust-enrichment claim is subject to the same statute of limitations as [that] cause of action")  (citing *Bandler v. DeYonker*, 174 A.D.3d 461, 462 (1st Dep't 2019)).

### F.  GMVL Claim (COA 1) Is Time-Barred

The GMVL carries a seven-year statute of limitations.  N.Y.C. Admin. Code § 10-1105(a).  Plaintiff's GMVL claim rests on conduct that allegedly occurred between 2009 and 2011.  *See* SAC ¶¶ 76–99.  As such, the statute of limitations on Plaintiff's GMVL claim expired in 2018 at the latest.  Because she did not bring her claim until September 2024, her claim is time-barred.  N.Y.C. Admin. Code § 10-1105(a).

### G. No Tolling Doctrine Applies to Save the Time-Barred COAs

Plaintiff concedes the statutes of limitations have run on her Second through Sixteenth COAs but states that "Mr. Combs is estopped from asserting the defense of the statute of limitations due to the duress he exerted upon Plaintiff which prevented her from bringing her legal claims within the statutorily proscribed period." SAC ¶¶ 145, 152, 157, 165, 170, 176, 181, 187, 192, 197, 205, 211, 216, 223. While it is unclear whether Plaintiff is invoking the doctrine of duress or equitable estoppel, her attempt fails under any either theory.

#### 1. Duress

Plaintiff's generalized allegations of duress do not save her time-barred claims. Under New York law, duress must be "an element of the cause of action alleged" and requires "both threats or force by the defendant, and the submission of the plaintiff's free will to those threats." *Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995). "Both elements of duress must continue" in order for duress tolling to apply. *Gilmore v. Combs et al.*, No. 24-CV-8440 (JPO), 2025 WL 1425326 (S.D.N.Y. May 16, 2025). That is, duress cannot be invoked based on discrete instances of the defendant's conduct, but instead requires "a course of conduct involving threats or force that continued without interruption" from the time of the alleged incident until the time the action was brought. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 175 (S.D.N.Y. 2019); *see also Rivers v. Combs*, No. 25-CV-1726 (JSR), 2025 WL 2414117, at *6 (S.D.N.Y. Aug. 19, 2025); *Zoe G v. Frederick F.G.*, 208 A.D.2d 675, 375 (2d Dep't 1994).

Plaintiff has not shown duress to be an element of each of her claims and she has not alleged that either Combs or Pierre threatened her or used force against her "without interruption" from the time of the alleged incidents until her filing in 2024. To the contrary, the last alleged threat was purportedly made in 2010—fifteen years prior to her filing this action. SAC ¶¶ 91–99. Nor has she alleged (as she must) that she continuously submitted her free will to those threats. In fact,

10

the SAC's allegations compel the opposite conclusion: in 2021 and 2023, years after the last purported threat and years before she filed this lawsuit, she chose to engage in business with Combs again. *See* Wolff Decl. Ex. A*; SAC ¶¶ 113–116. Like the Plaintiffs in *Gilmore* and *Rivers*, Richard "has not identified any specific instances that would constitute ongoing duress" over the past fifteen years. *Gilmore*, 2025 WL 1425326, at *4; *Rivers,* 2025 WL 2414117 at *6 (Plaintiff failed to "specifically allege that Combs employed any threats or force, much less the *continuous* threats or force that would warrant duress tolling."); *Geiss*, 383 F. Supp. 3d, at 175 (no duress tolling where plaintiff did not allege "course of conduct involving threats or force that continued without interruption—between the time immediately surrounding each assault" and the date of filing the complaint).

Moreover, general psychological stress, like Plaintiff's alleged fear of speaking out (*see* SAC ¶ 72), does not provide a basis for tolling. *See Gilmore*, 2025 WL 1425326, at *4 ("[T]olling is not available for 'general claims of psychological stress, even when allegedly caused by defendant.'") (quoting *Adams v. Jenkins*, No. 115745/03, 2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005)).

### 2. *Equitable Estoppel*

Plaintiff has not demonstrated that her time-barred claims are saved under the doctrine of equitable estoppel either. Equitable estoppel applies to save otherwise time-barred state law claims[2] where "(1) the defendants "induced [plaintiff] by fraud, misrepresentations or deception to refrain from filing a timely action"; (2) plaintiff[] reasonably relied on the defendants'

---

[2] Equitable estoppel is "strikingly similar to the federal principle" of equitable tolling. *See Diaz v. City Univ. of N.Y.*, No. 15-CV-1319 (PAC) (MHD), 2015 WL 13746673, at *6 (S.D.N.Y. Nov. 16, 2015), *report and recommendation adopted*, 2016 WL 958684 (S.D.N.Y. Mar. 8, 2016). Accordingly, Plaintiff has likewise not demonstrated that her federal claims are tolled under a theory of equitable tolling.

misrepresentations; and (3) plaintiff[] exercised "due diligence" in bringing the action "within a reasonable period of time after the facts giving rise to the . . . equitable estoppel claim have ceased to be operational." *Roeder v. J.P. Morgan Chase & Co.*, No. 21-552, 2022 WL 211702, at *2 (2d Cir. Jan. 25, 2022).

The SAC fails to plead any of the elements. Richard does not identify any act of deception, fraud, or misrepresentation by either Combs or Pierre, let alone any reasonable reliance by her on any such act that prevented her from filing suit for nearly twenty years. *See generally* SAC. To the contrary, she pleads that in 2004 through 2011 she was aware of her purported injuries. SAC ¶¶ 76–99. To the extent equitable estoppel may be based on a defendant's threats (and recent cases suggest that it cannot, *see e.g. Geiss*, 383 F. Supp. 3d, at 172–75), the doctrine does not apply unless there is a "pattern of continual and egregious acts of intimidation." *Id.* at 175. Here, there was no continual pattern of intimidation. Indeed, the SAC has no allegations of any purported intimidation beyond 2010. *See* SAC ¶¶ 76–99. Nor do the facts in the SAC permit an inference that Plaintiff diligently pursued her claims when the alleged intimidation ceased. To the contrary, according to her own allegations, in 2021 and 2023, over a decade after Combs purportedly intimidated Plaintiff, Plaintiff engaged in business with Combs again, including to release a co-authored song on a new album. *See* Wolff Decl. Ex. A; SAC ¶¶ 113–116. Plaintiff filed this suit at the end of 2024—not when any purported intimidation had ceased, but rather, when she saw an opportunity to cash-in on a wave of negative publicity.

Accordingly, the SAC does not support the application of equitable estoppel. *See Gilmore*, 2025 WL 1425326, at *3–4 (no equitable estoppel where Plaintiff did not identify communications with defendants that caused a delay in filing).

### H.  The GMVL Revival Provision Does Not Revive Any Time-Barred Claims

Nor can Plaintiff circumvent the applicable statutes of limitation by invoking the GMVL Revival Provision.  *See* SAC ¶ 133.  The GMVL Revival Provision purports to revive any civil claim or cause of action "brought under this chapter that is barred because the applicable period of limitation has expired."  On its face, it does not apply to non-GMVL claims. *S.S. v. Rockefeller Univ. Hosp.*, 239 A.D.3d 424, 426 (1st Dep't June 3, 2025).  Nor does it revive Plaintiff's expired GMVL claim because it is preempted by New York State law pursuant to the doctrines of conflict preemption and field preemption.  Specifically, the New York Child Victims Act, C.P.L.R. § 214-g ("CVA"), and the Adult Survivors Act, C.P.L.R. § 214-j ("ASA") provide a conflicting, "comprehensive and detailed regulatory scheme" for the revival of previously time-barred sexual assault claims.  *See Parker v. Alexander*, No. 24-CV-4813 (LAK), 2025 WL 268436, at *2–3 (S.D.N.Y. Jan. 22, 2025) (holding GMVL's revival window is preempted by the CVA and ASA); *Bellino v. Tallarico*, No. 24-CV-0712 (LAK), 2024 WL 1344075, at *1 (S.D.N.Y. Feb. 21, 2024) (same).[3]

#### 1.  Conflict Preemption

"[C]onflict preemption occurs when a . . . state law prohibits what a local law explicitly allows." *Matter of Chwick v. Mulvey*, 81 A.D.3d 161, 168 (2d Dep't 2010). The CVA and ASA revived previously time-barred GMVL claims for a limited period, prohibiting such claims from

---

[3]    This preemption question is currently before the Second Circuit in *Parker v. Alexander*, No. 25-487 (2d Cir.) and *Doe v. Black*, 25-564 (2d Cir.) (which have been ordered to proceed in tandem, *see Parker v. Alexander*, No. 25-487 (2d Cir.) at ECF No. 1).  Because the Court's decision on this issue will necessarily be affected by the Second Circuit's rulings, staying this case until those appeals have been decided would be an appropriate conservation of judicial resources (as multiple courts in this District have held). *See, e.g., Doe v. Combs*, No. 24-cv-07776 (NRB), Order (Apr. 24, 2025), ECF No. 69; *Doe v. Combs*, No. 24-cv-08813 (JGK), Order (Apr. 30, 2025), ECF No. 44; *Graves v. Combs*, No. 24-cv-07201 (AT), Order (July 17, 2025), ECF No. 68.

being brought after August 13, 2021 (for claims by alleged child victims) or after November 23, 2023 (for claims by alleged adult victims). CPLR §§ 214-g, 214-j.[4] The GMVL Revival Provision purported to permit the revival of all previously time-barred GMVL claims through February 28, 2025 (N.Y.C. Admin. § 10-1105(a)), that is, almost a year and a half longer than the state law deadline for adults, and more than three and half years longer than the state law deadline for minors. Thus, the city law explicitly allows that which the state law prohibits even though the state legislature intended the CVA and ASA to control "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary." *Id*. This is an unambiguous conflict.

### 2.  *Field Preemption*

Implicit field preemption occurs when the state legislature has "enacted a comprehensive and detailed regulatory scheme in a particular area;" under such circumstances, the local government is "precluded from legislating on the same subject matter unless it has received 'clear and explicit' authority to the contrary." *DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 95 (2001) (citation omitted).

The CVA and ASA constitute comprehensive schemes because they "apply to all civil claims by child and adult victims" of "conduct constituting sexual offenses" and do so "notwithstanding" any limitations period "to the contrary." *Parker*, 2025 WL 268436, at *2 (internal citations omitted). The CVA and ASA are "detailed": they "provide exact time frames during which claims may be brought." *Id.* And the timing of the ASA, which was passed four months *after* the GMVL Revival Provision was enacted, confirmed the legislature's intent to

---

[4]      The CVA and the ASA apply to expired GMVL claims. *See, e.g.*, CPLR §§ 214-g, 214-j (applying to "every civil claim or cause of action . . . for . . . injury . . . suffered as a result of conduct which would constitute a sexual offense"); *S.A. v. Bell*, No. 950279/2021, 2023 WL 8653131, at *1 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023).

preempt local New York City law, as "the state easily could have carved the [GMVL] out of the ambit of the ASA" yet "opted not to do so." *Id.* at *3.

Thus, as Judge Kaplan has twice held, the CVA and ASA preempt the GMVL Revival Provision. *See Parker*, 2025 WL 268436, at *2–3; *Bellino,* 2024 WL 1344075 at *1.[5]

## II.    PLAINTIFF FAILS TO STATE A GMVL CLAIM

The GMVL claim also fails in its entirety because the SAC does not allege that Plaintiff was subject to a gender motivated crime of violence, in New York City, that presented a serious risk of physical injury.  To state a GMVL claim, a Plaintiff must allege: (1) an "act [that] constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and ([5]) resulted in injury."  *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018) (emphasis added).  In addition, the alleged act of violence must occur within New York City.  *See* N.Y.C. Admin. Code § 2-201 ("jurisdictions and powers" of New York City are limited to the five boroughs); *Beverley v. 1115 Health & Benefits Fund*, 420 F. Supp. 2d 47, 56 (E.D.N.Y. 2005) (NYC Administrative Code "applies only to acts occurring within the boundaries of New York City.") (citation omitted).  Plaintiff fails to plead the requisite elements.

The only allegations involving conduct directed at *Plaintiff* in New York City are: (1) in December 2010, Combs and Pierre allegedly swung their hands towards Plaintiff, but never hit her (*id.* ¶ 93); (2) on unspecified "occasions between approximately 2009 and 2011 . . . Combs . . .

---

[5]    Judge Jessica G. L. Clarke issued two decisions rejecting the argument that the CVA preempts the GMVL.  *See Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 WL 4335453, at *3–7 (S.D.N.Y. Sept. 27, 2024); *Doe v. Combs*, No. 23-CV-10628 (JGLC), 2024 WL 4987044, at *2 (S.D.N.Y. Dec. 5, 2024).  Neither of those decisions substantively addressed, as *Parker* did, how the GMVL's Revival Provision could be given effect when it is inconsistent with the CVA and ASA's revival provisions.

groped Ms. Richard's body, including her bare buttocks and her chest area near her breasts" (*id.* ¶¶ 79–80); (3) that an individual alleged to be Combs' bodyguard, acting without any instruction from Combs or Pierre, placed Plaintiff in a car that allegedly lacked interior door handles and locked the doors (*id.* ¶¶ 93–94); and (4) after being released from the car, Pierre led Plaintiff into a locked room at the studio for an unspecified amount of time (*id.* ¶ 97).[6]

These allegations do not constitute crimes of violence motivated by gender. First, a "crime of violence" is defined as "an act . . . that would constitute a misdemeanor or felony . . . if the conduct presents a serious risk of physical injury." *Id.* § 10-1103. The facts alleged do not (i) amount to a violation of a misdemeanor or felony statute, or (ii) present a serious risk of physical injury. *See Rossbach v. Montefiore Med. Ctr.*, No. 19-CV-5758, 2021 WL 930710, at *11 (S.D.N.Y. Mar. 11, 2021) (allegations that Plaintiff was "groped" and subjected to "unwanted physical contact" insufficient to establish serious risk of injury); *see also Bellino*, 2024 WL 1344075, at *1 (allegations that the defendant engaged in forcible kissing and touching of breasts, buttocks, and genitals were insufficient to establish serious risk of injury); *Adams*, 2005 WL 6584554, at *3 (dismissing GMVL claim "based on [plaintiff's] allegations that defendant pushed and slapped her" and noting plaintiff did "not identify any felony statute allegedly violated, or otherwise show that the alleged assault was motivated by gender bias.").

Moreover, to the extent Plaintiff seeks to hold Combs or Pierre liable for the alleged acts of a purported bodyguard who allegedly forced Plaintiff into a car, such conduct – in addition to not constituting a crime presenting a serious risk of physical injury – also was not perpetrated *or* directed by Combs or Pierre. And neither can be held liable for purportedly enabling such conduct

---

[6]  The OC tellingly omitted any mention of the locked room, alleging instead that "Mr. Pierre ushered Ms. Richard's father between several rooms . . . where he waited for approximately two hours before being able to confront Mr. Combs." OC ¶ 103.

because at the time in question, the GMVL did not provide for such enabling liability and the 2022 amendment expanding liability to alleged enablers does not apply retroactively to conduct pre-dating 2022. *See, e.g.*, *S.S. v. Rockefeller Univ. Hosp.*, No. 159929/23, 2025 WL 1559583, at *1 (1st Dep't June 3, 2025) (holding that GMVL does not apply retroactively and dismissing "enabler" defendant in case involving conduct predating 2022); *Doe v. Combs*, No. 23-CV-10628 (JGLC), 2024 WL 4987044, at *4 (S.D.N.Y. Dec. 5, 2024) (same).

Second, Plaintiff fails to plead gender-motivated conduct and gender animus. The "animus element requires the plaintiff to present extrinsic evidence of the defendant's expressed hatred toward women as a group or allege specific actions and statements by the perpetrator during the commission of the alleged crime of violence." *Rossbach*, 2021 WL 930710, at *10 (quotation marks and citation omitted). The SAC does not allege any violent conduct by Combs towards Plaintiff was motivated by hatred towards women. Plaintiff merely makes generalized allegations of purported "animus" and asserts that the alleged acts "constitute 'crimes of violence motivated by gender.'" SAC ¶¶ 129–132.

As for Pierre, this third iteration of the complaint is the first time in the history of this lawsuit that Plaintiff even attempts to assert a direct GMVL claim against him – an attempt that comes following Plaintiff's apparent realization that enabler liability is unavailable. The Complaint and First Amended Complaint alleged Pierre "enabled" purported violence toward Plaintiff and was, therefore, liable as a third-party under the GMVA. OC ¶ 115; FAC ¶ 145; *see* NYC Admin. Code § 10-1104. This theory of Pierre's liability, though legally untenable,[7] was consistent with her allegation that Mr. Peirre *witnessed* a 2010 altercation between Combs and Plaintiff in the lobby of a Manhattan recording studio. *See* OC ¶¶ 98–100. Changing theories in

---

[7]        *See supra* pp. 15–17 and ECF No. 154 at Sections I.B & III.

the SAC, Plaintiff now asserts Pierre is liable as a principal under the GMVL.  *See* SAC ¶ 128. This new theory rests upon a revised account of the altercation.  Plaintiff now claims Pierre was not only present during the altercation but actively participated in it when he "raised his hand and swung it towards Plaintiff's face."  *Id.* at ¶ 93.  Despite these alterations, the SAC sheds no light on Pierre's feelings about women.  He is portrayed as an intermediary between the members of *Danity Kane* and Combs and as a civil and professional attendee at various Bad Boy events.  *See* SAC ¶¶ 37, 39-42, 53, 70, 78, 92.  The statements and acts attributed to Pierre fall well short of supporting an inference of animus.

The GMVL claim must be dismissed.  *See Cordero v. Epstein*, 22 Misc. 3d 161, 164, 869 N.Y.S.2d 725, 727 (Sup. Ct. N.Y. Cnty. 2008) (denying plaintiff's motion for leave to amend a GMVA claim where the proposed pleading "state[d] no facts to support the required animus" and "contain[ed] no more than the conclusory allegation that the [defendant's] alleged crimes of violence were 'motivated by gender'").

## III.    PLAINTIFF FAILS TO STATE CLAIMS FOR FORCED LABOR

### A.  Federal Forced Labor Claim

In her Third COA, Plaintiff asserts a claim of forced labor against Combs under the TVPRA, 18 U.S.C. § 1589.  "Section 1589 was passed to implement the Thirteenth Amendment against slavery or involuntary servitude." *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) (internal citation and quotation marks omitted).  "Typically, therefore, 'forced labor' situations involve circumstances such as squalid or otherwise intolerable living conditions, extreme isolation . . . , threats of inflicting harm upon the victim or others . . . , and exploitation of the victim's lack of education and familiarity with the English language, all of which are 'used to prevent [vulnerable] victims from leaving and to keep them bound to their captors.'" *Id.* at 618–19 (internal citation and quotation marks omitted).  None of the allegations in the SAC come close to

meeting the type of conduct the statute is intended to address.  At most, Plaintiff alleges she was underpaid and/or subjected to difficult work conditions.

Under Section 1589, a plaintiff may bring a cause of action against "[w]hoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of" several enumerated means, which include: means of force, threats of force, physical restraint, or threats of physical restraint, and means of serious harm or threats thereof.  18 U.S.C. § 1589(a).

Plaintiff alleges Combs obtained Plaintiff's labor or services through "threats of serious harm, physical restraint, and other means of coercion."  SAC ¶ 140.  The facts alleged in the SAC do not support a TVPA claim.  First, "other means of coercion" – in addition to being vague and conclusory – is not one of the enumerated means of conduct prohibited by Section 1589 and therefore, cannot form the basis of Plaintiff's forced labor claim.

Second, the SAC alleges no facts that Combs obtained Plaintiff's labor through physical restraint.   In   the   section   of   the   SAC   where   Plaintiff   alleges   Combs "Subjects Ms. Richard to Labor Trafficking and Oppressive and Hostile Working Conditions," Plaintiff does not mention physical restraint at all.  *See* SAC ¶¶ 63–75.  Moreover, the contracts Plaintiff incorporates by reference in the SAC demonstrate she actually agreed to do the very things she claims were "forced."

Finally, none of the allegations in the SAC support an inference that Combs threatened Plaintiff with "serious harm."  For a defendant to violate Section 1589 by threatening serious harm, they must have "intend[ed] to cause a person in his employ to believe that if she does not continue to work, she will suffer the type of serious harm . . . that would compel someone in her circumstances to continue working to avoid that harm."  *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011).  The SAC alleges only that Combs verbally insulted Plaintiff and made

hyperbolic statements that no reasonable person would construe as presenting a risk of serious harm. *See, e.g.,* SAC ¶ 64 (alleging Combs said, "'you're a bitch,' 'I don't want to see your fucking face,' 'I make n****s go missing,' and 'I make things go away'").

Plaintiff alleges that after hearing such alleged statements, she "returned to the studio immediately, fearing that Mr. Combs was capable of following through with his threats." *Id.* While these alleged statements are unpleasant, Plaintiff fails to allege that (a) Combs said them with the intent to cause her to suffer harm if she does not work or, more importantly, (b) that Plaintiff was compelled to continue providing labor or services against her will. There are simply no allegations supporting an inference that Plaintiff was forced to work for Combs under conditions even remotely akin to what this statute was intended to prevent (i.e. slavery).

### B. State Law Claims for Forced Labor

Plaintiff's Fifth COA asserts a forced labor claim under California's human trafficking law, California Civil Code § 52.5, alleging that she "is a victim of trafficking within the meaning of Cal. Penal Code § 236.1." SAC ¶ 154. Cal. Penal Code § 236.1 requires a plaintiff to plead that: (1) the defendant *intended* to (2) cause the plaintiff to engage in labor (3) through acts or threats of acts physical injury. Cal. Penal Code § 236.1(a), (h)(5). As with Plaintiff's federal forced labor claim, the SAC fails to allege any facts showing Combs threatened, forced, or coerced Plaintiff into providing labor against her will. Plaintiff's state forced labor claim fails for the additional reason that the SAC contains no non-conclusory allegations that Combs engaged in any conduct with the *intent* to make Plaintiff provide labor. At most, the SAC alleges that Plaintiff was underpaid and/or subjected to difficult work conditions, not that she was an indentured servant. *See* SAC ¶¶ 63–75.

20

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR SEX TRAFFICKING

Plaintiff's Fourth COA asserts a claim of sex trafficking under the TVPRA, 18 U.S.C. § 1591, against Combs.  To state a claim under the Section 1591, a plaintiff must plead, *inter alia*, that the defendant knowingly "recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person. . . to cause the person to engage in a commercial sex act." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018) (quoting 18 U.S.C. § 1591).  Under the statute, "commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person," 18 U.S.C. § 1591(e)(3).

There are no allegations in the SAC that Plaintiff engaged in any sexual act with Combs, let alone a commercial sex act.  The closest Plaintiff comes to alleging any sexual conduct involving her is her allegation that on a few occasions, Combs groped Plaintiff's buttocks and breasts.  *See* SAC ¶¶ 80, 83, 84, 89.  This conduct does not constitute a commercial sex act.

The undersigned counsel is not aware of any court finding that a defendant's alleged groping of body parts other than genitalia and without any sexual gratification meets the statutory definition of "any sex act."  *Cf. United States v. Sebastian*, No. 20-CR-10170 (DJC), 2023 WL 2187895, at *14 (D. Mass. Feb. 23, 2023) (collecting cases of courts interpreting "any sex act" to include masturbation in addition to oral and genital intercourse).  Accordingly, because Plaintiff fails to allege that she and Combs engaged in any sexual acts, much less a commercial sex act, her cause of action under Section 1591 should be dismissed.

## V.    NYSHRL DISCRIMINATION CLAIM IS INSUFFICIENTLY PLED

Plaintiff's Eleventh COA against Combs for sexual harassment, gender discrimination, and hostile work environment under the NYSHRL fails because Plaintiff cannot establish an employment relationship with Combs. "An essential element of a claim under the NYSHRL or NYCHRL is the existence of an employer-employee relationship."  *Musiello v. CBS Corp.*, 518 F.

Supp. 3d 782, 789 (S.D.N.Y. 2021) (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) (internal quotation marks omitted)). Here, Plaintiff states conclusorily that at all relevant times, "Combs met the definition of an 'employer' of Ms. Richard under all relevant statutes." SAC ¶ 10. These threadbare allegations are insufficient.

First, the SAC fails to explain how Combs was her "employer" as defined in the NYSHRL. Plaintiff offers no facts to support the assertion that she had an employee-employer relationship with Combs. Indeed, the contracts referenced in the SAC demonstrate Richard had agreements with various entities – not an employment relationship with Combs. *See, e.g.*, Wolff Decl. Ex. A.

Second, even if Plaintiff had adequately pled that any of the companies affiliated with Combs were her employers (*see* SAC ¶ 10), Combs would still not be liable for her claims under the NYSHRL because the New York Court of Appeals made clear that "where a corporate entity is the plaintiff's employer, an individual affiliated with the entity cannot himself qualify as the employer, that is so even if the individual holds a high post at the employer or owns the entity." *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 329 (S.D.N.Y. 2024) (citing *Doe v. Bloomberg L.P.*, 36 N.Y.3d 450, 459 (2021); *Bueno v. Eurostars Hotel Co.*, No. 21-CV-535 (JGK), 2022 WL 95026, at *7 (S.D.N.Y. Jan. 10, 2022) ("a corporate employee—even its owner and CEO—no longer qualifies as an 'employer' under [NYSHRL].") (citations omitted).

## VI.    RIGHT OF PUBLICITY AND UNJUST ENRICHMENT CLAIM IS BASELESS

Plaintiff's Sixteenth COA – alleging violations of Plaintiff's right of publicity under Sections 50 and 51 of the New York Civil Rights Law and for unjust enrichment against Combs – is insufficiently pled for at least four reasons. First, the SAC does not identify any particular unauthorized use of Richard's voice or likeness nor does it specify how the same was used for "advertising and promotion [sic] purposes and for the purpose of trade." SAC ¶ 219. These bare, conclusory assertions warrant dismissal, particularly where, as here, Plaintiff has already been

given a third chance to make particularized allegations with the SAC. *Tesfay v. Hanes Brands Inc.,* No. 19-CV-3889 (GHW), 2019 WL 6879179, at *6 (S.D.N.Y. Dec. 17, 2019) (dismissing right of publicity claim where complaint "contains the conclusory allegation that [defendant] 'has been using Plaintiff's image, likeness, and picture for advertising or trade purposes within the State of New York ... without Plaintiff's written consent.'").

Second, to the extent this COA is premised on Plaintiff's allegation that she "perform[ed] at and attend[ed] numerous parties and promotional events as part of Diddy – Dirty Money," SAC ¶ 218, this allegation provides no basis for a right of publicity cause of action, because Plaintiff alleges that such activities were performed pursuant to her contractual obligations. Her objection seems to be that she was supposedly not paid, not that she had failed to provide her consent.

Third, unjust enrichment is duplicative of Plaintiff's New York Civil Rights Law claim and must be dismissed. *Drob Collectibles, LLC v. Leaf Trading Cards, LLC*, No. 23-CV-63 (GHW) (JW), 2024 WL 897952, at *6 (S.D.N.Y. Feb. 15, 2024), *report and recommendation adopted*, No. 1:23-CV-00063-GHW-JW, 2024 WL 895315 (S.D.N.Y. Mar. 1, 2024).

Fourth, it is "absolutely and indisputably the case that an individual who does not reside in New York cannot bring a claim under New York's Right of Publicity Law." *Drob*, 2024 WL 897952, at *6 (citation omitted). Plaintiff alleges she "was/is a resident of the States of California and New York" at "all relevant times herein," SAC ¶ 9. This ambiguous allegation combined with her failure to allege when any violations of the New York Civil Rights Act purportedly took place, fails to allege facts sufficient to infer she resided in New York at the time of any purported violation, thus rendering her Sixteenth COA insufficiently pled.

## VII.    FORCED LABOR, EMPLOYMENT, RIGHT OF PUBLICITY, AND UNJUST ENRICHMENT CLAIMS ARE BARRED BY CONTRACTUAL RELEASES

Plaintiff's forced labor, employment, right of publicity, and unjust enrichment claims should also be dismissed for the independent reason that Plaintiff released such claims in at least one binding contract which is incorporated in, and integral to, the SAC.

In October 2021, Plaintiff signed an agreement with Janice Combs Publishing, Inc. pursuant to which she recovered certain publishing rights and, in consideration, released Janice Combs Publishing, Inc. and Sean Combs and each of their predecessors, successors, assigns, officers, and affiliates from "all claims, demands, actions, causes of action, [and] suits" which Richard had as of that date "by reason of any matter, cause of thing whatsoever arising from or related to" any of the musical compositions she had authored as of that date or to any of her prior agreements with Janice Combs Publishing, Inc.  Wolff Decl. Ex. A at ¶ 3.

Plaintiff's claims for forced labor, employment discrimination/hostile work environment, violation of the right of publicity, and unjust enrichment – all of which are premised on allegations that she was injured in connection with her authorship and performance of musical compositions and her agreements relating thereto between 2004 and 2011 (*see* SAC ¶¶ 18–99) – fall squarely within the unambiguous release of this contract.  The release requires dismissal of those claims. *See, e.g., Centro Empresarial Compresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) (contractual release required dismissal).

## VIII.    PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

Plaintiff asserts that her purported copyright in a song she co-authored with Combs and three other authors, *Deliver Me*, was infringed when it was included on Combs' 2023 album and in related marketing of that song.  *See* SAC ¶¶ 105, 108, 118, 120, 122.  Plaintiff brings claims for direct copyright infringement against Combs and Love Records (Seventeen COA) and for

secondary (vicarious or contributory) copyright infringement against these same Defendants as well as the two Janice Combs Publishing entities (Eighteen COA). *Id.* ¶¶ 224–230, 231–237.

### A.    Both Copyright Claims Fail Because Combs Is a Co-Author

Whether styled as "direct" or "secondary" infringement, Plaintiff's copyright allegations fail as a matter of established law.  "[C]oauthors cannot sue one another for copyright infringement." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011).  The Copyright Registration that Plaintiff attaches to her SAC confirms she is just one of five co-authors—along with Combs, and that Love Records holds the relevant "Rights and Permissions" to the work.  *See* ECF No. 131, Ex. A; SAC ¶ 105.  This alone defeats Plaintiff's allegations of infringement: "the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him; nor can a joint owner of a copyright sue his co-owner for infringement."  *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) (citations omitted).  "[E]ach joint author has the right to use or to license the work," *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007), and Combs, as co-owner, did just that.  *See Robinson v. Double R Records*, No. 04-CV-4120 (KMV), 2007 WL 2049724, at *2 (S.D.N.Y. July 16, 2007) (dismissing infringement claim against co-owner and imposing Rule 11 sanctions).  Nor can Combs' label, Love Records, be liable.  As a co-author, Combs had the right to grant them an implied, non-exclusive license to use *Deliver Me* in connection with marketing and releasing his 2023 album.  *See Davis*, 505 F.3d at 100; *Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807, 817 (S.D.N.Y. 2019) (dismissing infringement claims because a co-owner may unilaterally license use of a work to others).  Plaintiff's Certificate acknowledges that Love Records held the Rights and Permissions to *Deliver Me.*  ECF No. 131, Ex. A.

### B.  Plaintiff's Secondary Infringement Claim Also Fails to Satisfy Rule 8

Even if Plaintiff could plausibly plead direct infringement, her secondary infringement claim, which is asserted against Combs, Love Records, Inc., Janice Combs Publishing LLC, and

Janice Combs Publishing Holdings Inc., would still be subject to dismissal on two additional grounds.

*First*, Plaintiff's claims for vicarious and contributory infringement rest on the sort of "vague and conclusory" allegations that courts routinely dismiss.  *New London Assocs., LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 410 (S.D.N.Y. 2019).  To plead contributory copyright infringement, Plaintiff was required to plead facts to plausibly establish that each Defendant knowingly and materially contributed to infringing acts; to plead vicarious infringement, Plaintiff was required to plead that each Defendant had both the ability to control the alleged infringement and a direct financial interest in it.  *Arista Records LLC v. Lime Grp. LLC*, 784 F.Supp.2d at 432 (S.D.N.Y 2011).  Instead, Plaintiff pleads only that each of the four Defendants collectively "committed vicarious and/or contributory copyright infringement with actual or constructive knowledge of, or have recklessly disregarded, Ms. Richard's copyrights" (SAC ¶ 236) and "had the right and ability to supervise the creation and exploitation of *Deliver Me* and/or had a direct financial interest in the same" (SAC ¶ 233).  These boilerplate allegations of secondary infringement must be dismissed.  *Klauber Bros., Inc. v. URBN US Retail LLC*, No. 21-CV-4526 (GHW), 2022 WL 1539905, *10-11 (S.D.N.Y. May 14, 2022).

*Second*, Plaintiff's disjunctive "and/or" pleading (SAC ¶ 233) is also insufficient to plead vicarious infringement because the two elements for vicarious liability for infringement are *conjunctive. See Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 308 (S.D.N.Y. 2020) ("Vicarious liability for copyright infringement exists where the defendant has the right and ability to supervise the infringing activity *and also* has a direct financial interest in such activities.") (citations omitted).

## <u>CONCLUSION</u>

For all the reasons set forth above, Defendants respectfully request that the Court dismiss the SAC in its entirety with prejudice and grant such other and further relief as the Court deems proper and just.

Dated:  New York, New York
October 8, 2025

Respectfully submitted,

SHER TREMONTE LLP

LAW OFFICES OF SCOTT E. LEEMON PC

_____*/s/ Erica A. Wolff*_____
Erica A. Wolff
Michael Tremonte
Michael Bass
90 Broad Street, 23rd Floor
New York, NY 10004
(212) 202-2600
mtremonte@shertremonte.com
ewolff@shertremonte.com
mbass@shertremonte.com

*Attorneys for Defendants Sean Combs, Janice Combs Publishing Holdings, Inc., Love Records, Inc., and Janice Combs Publishing LLC*

_____*/s/ Scott E. Leemon*_____
Scott E. Leemon
41 Madison Avenue, 31st Floor
New York, NY 10010
(212) 696-9111
scott@leemonlaw.com

Jonathan Savella, Esq.
40 Exchange Place, Ste. 1800
New York, NY 10005
(646) 801-2184
jon@jonathansavella.com

*Attorneys for Defendant Harve Pierre*

27

## **CERTIFICATION**

The undersigned hereby certifies that the Memorandum of Law in Support of Defendants'
Motion to Dismiss complies with the 8,750-word limit set forth in Rule 7.1(c) of the Local Rules
of the United States District Court for the Southern  and Eastern Districts of New York (the
"Local Rules") and in Rule 4(B) of the Individual Rules of Practice in Civil Cases of the Hon.
Katherine Polk Failla (the "Individual Rules").  The word count, exclusive of the caption, tables,
and signature blocks, is 8,575 according to the word-processing system used to prepare the
document.

Dated:   October 8, 2025


                                            */s/ Erica A. Wolff*
                                             Erica A. Wolff