DAWN ANGELIQUE RICHARD,

          Plaintiff,

v.

SEAN COMBS, HARVE PIERRE, JANICE
COMBS PUBLISHING LLC, JANICE
COMBS PUBLISHING HOLDINGS INC,
LOVE RECORDS INC, DOE
CORPORATIONS  1-10, AND DOE
DEFENDANTS 11-20,

          Defendants.

Civil Action No. 24-cv-06848-KPF

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' CONSOLIDATED
MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT**

Hon. Katherine Polk Failla

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

PROCEDURAL HISTORY .............................................................................................. 2

FACTUAL BACKGROUND ........................................................................................... 2

LEGAL ARGUMENT ...................................................................................................... 4

    I.     PLAINTIFF'S CLAIMS ARE TIMELY UNDER EQUITABLE ESTOPPEL
          AND EQUITABLE TOLLING PRINCIPLES ........................................................ 4

        A.  Equitable Estoppel Bars Defendant from Benefiting from His Wrongdoing .... 4

        B.  Estoppel by Duress ........................................................................................ 7
            i.   Combs' Pattern of Specific, Credible Threats of Targeted Harm
                 Toward Plaintiff Caused Lasting Psychological Trauma ...................... 7
            ii.  Combs' Misconduct Continued Uninterrupted .................................... 8

        C.  Equitable Tolling ........................................................................................... 9
             i.   Plaintiff Exercised Reasonable Diligence in Filing Her Lawsuit ......... 9
            ii.  Extraordinary Circumstances Prevented Plaintiff's Timely
                 Filing ............................................................................................... 10

    II.    PLAINTIFF SUFFICIENTLY ALLEGES SEX TRAFFICKING ........................ 12

    III.   PLAINTIFF DID NOT RELEASE FORCED LABOR, EMPLOYMENT, OR
          UNJUST ENRICHMENT CLAIMS ................................................................... 13

    IV.   FORCED LABOR IS SUFFICIENTLY PLED ................................................. 14

    V.    PLAINTIFF HAS SUFFICIENTLY ALLEGED AN EMPLOYMENT
          RELATIONSHIP ............................................................................................... 16

    VI.   PLAINTIFF'S RIGHT OF PUBLICITY CLAIMS ARE PROPERLY PLED AND
          NOT TIME BARRED ....................................................................................... 17

        A.  Plaintiff Has Adequately Pled Specific Violations ......................................... 17
        B.  The Contractual Performance Argument Fails ................................................ 17
        C.  Residency Requirements are Satisfied ............................................................ 17

    VII.  PLAINTIFF'S UNJUST ENRICHMENT CLAIMS ARE VIABLE AND NOT
          DUPLICATIVE ................................................................................................. 18

        A.  Unjust Enrichment Claims Are Not Automatically Preempted ....................... 18
        B.  Plaintiff's Unjust Enrichment Claims Address Distinct Conduct .................... 18

VIII.  THE CONTRACT RELEASE IS INAPPLICABLE AND DOES NOT BAR
       PLAINTIFF'S CLAIMS ............................................................................19
       A. Integration and Reference Standards Not Met ...................................19
       B. Scope and Applicability of Releases ..................................................19

IX.    PLAINTIFF'S COPYRIGHT INFRINGMENT CLAIMS ARE PROPERLY
       STATED ...............................................................................................19

       A. Exceptions to Co-Author Immunity from Infringement Claims....................20
             i.   Licensing Authority Limitations and Exclusive
                  Licensing Prohibition..........................................................20
             ii.  The Derivative Works Exception to Co-Author Immunity ................20

       B. Distinct Copyright Nature of Musical Compositions and Sound Recordings .21

       C. Accounting Duties and Fiduciary Obligations.................................22

X.     PLAINTIFF'S VICARIOUS/CONTRIBUTORY COPYRIGHT
       INFRINGEMENT CLAIMS ARE PROPERLY PLED.........................................22

XI.    PLAINTIFF'S GMVL CLAIM IS NOT PREEMPTED ......................................23

XII.   PLAINTIFF SUFFICIENTLY ALLEGES VIOLATION OF THE GMVL .........24

       A. Combs and Pierre Committed Crimes of Violence Against Plaintiff.............25
             i.   Unlawful Imprisonment ........................................................26
             ii.  Assault.................................................................................26
             iii. Sexual Offenses ..................................................................27
             iv.  Forced Labor.......................................................................27

       B. The GMVL Does Not Require a Serious Risk of Physical Injury.................27

       C. Defendants' Crimes Were Motivated By Gender Animus .............................28

CONCLUSION.....................................................................................................30

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Ardolf v. Weber*,
   332 F.R.D. 467 (S.D.N.Y. 2019) ................................................. 12

*Arista Records LLC v. Lime Group LLC*,
   784 F. Supp. 2d 398 (S.D.N.Y. 2011) .................................... 22, 23

*Ashwood Capital, Inc. v. OTG Management, Inc.*,
   99 A.D.3d 1 (2012) ..................................................................... 18

*Baldayaque v. United States*,
   338 F.3d 145 (2d Cir. 2003) ....................................................... 10

*Baldwin v. TMPL Lexington LLC*,
   *23 CIV. 9899 (PAE)*, 2024 WL 3862150 (SDNY Aug. 19, 2024) ................................ 25, 27, 28

*Bianco v. Warner*,
   562 F. Supp. 3d 526 (C.D. Cal. 2021) ......................................... 8

*Breest v. Haggis*,
   180 AD3d 83 (1st Dept 2019) ..................................................... 29

*Brown v. Riverside Church in City of New York*,
   231 A.D.3d 104 (2024) ........................................................ 22, 23

*Brownstein v. Lindsay*,
   742 F.3d 55 (3d Cir. 2014) ................................................... 19, 20

*Cadogan Management, LLC v. Wright*,
   38 Misc.3d 1231(A) (Sup Ct 2011) ............................................. 18

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ................................................. 19, 26

*Chenango Forks Cent. Sch. Dist. v. N.Y. State Pub. Empl. Rels. Bd.*,
   95 A.D.3d 1479 (3d Dep't 2012) ................................................. 13

*Clark v. Hanley*,
   89 F.4th 78 (2d Cir. 2023) ........................................................... 9

*Cohen v. Paramount Pictures Corp.*,
   845 F.2d 851 (9th Cir. 1988) ...................................................... 22

*Davis v. Blige*,
   505 F.3d 90 (2d Cir. 2007) .................................................... 20, 23

*Doe v. United States*,
    76 F.4th 64 (2d Cir. 2023) ..........................................................................9, 10, 11

*Doe v. Warren & Baram Mgmt. LLC*,
    No. 20-CV-9522 (ER) (VF), 2024 WL 2941222 (S.D.N.Y. May 3, 2024) ...................... 5, 9, 10

*Dolmetta v. Uintah Nat'l Corp.*,
    712 F.2d 15 (2d Cir. 1983) ................................................................................. 18

*Dun & Bradstreet Software Servs., Inc., v. Grace Consulting, Inc.*,
    307 F.3d 197 (2002) ........................................................................................... 20

*Facenda v. N.F.L. Films, Inc.*,
    542 F.3d 1007 (3d Cir. 2008) ............................................................................. 17

*Franco v. Diaz*,
    51 F. Supp. 3d 235 (E.D.N.Y. 2014) ............................................................... 9, 14

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ............................................................... 4, 7

*General Stencils, Inc. v. Chiappa*,
    18 N.Y.2d 125 (1966) .......................................................................................... 4

*Gilliam v. American Broadcasting Cos.*,
    538 F.2d 14 (2d Cir. 1976) ................................................................................. 22

*Gilmore v. Combs*,
    No. 24-CV-8440 (JPO), 2025 WL 1425326 (S.D.N.Y. May 16, 2025) ...................... 7

*Greenfield v. Philles Records, Inc.*,
    98 N.Y.2d 562 (2002) ......................................................................................... 13

*Guobadia v. Irowa*,
    103 F. Supp. 3d 325 (E.D.N.Y. 2015) ................................................................. 15

*Holland v. Florida*,
    560 U.S. 631 (2010) ........................................................................................ 9, 10

*Hughes v. Twenty-First Century Fox, Inc.*,
    304 F Supp 3d 429 (SDNY 2018) ....................................................................... 28

*In re Cellco Partnership*,
    663 F.Supp.2d 363 (S.D.N.Y. 2009) ................................................................... 21

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
    157 F.3d 933 (2d Cir. 1998) ................................................................................. 9

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir.1995) ..................................................................................... 19

*Kennedy v. Berkel & Co. Contractors, Inc.*,
   319 F. Supp. 3d 236 (D.D.C. 2018) .................................................. 10

*Kwan v. Schlein*,
   634 F.3d 224 (2d Cir. 2011) ............................................................ 20

*MAK Technology Holdings Inc. v. Anyvision Interactive Technologies Ltd.*,
   42 N.Y.3d 570 (2024).................................................................... 19

*Mangini v. McClurg*,
   24 N.Y.2d 556, 301 N.Y.S.2d 508, 249 N.E.2d 386 [1969]..................... 13

*Matter of Pasini*,
   204 A.D.3d 1187 (3d Dep't 2022) .................................................... 16

*Matthew Bender & Co., Inc. v. West Pub. Co.*,
   158 F.3d 693 (2d Cir. 1998) ............................................................ 22

*Maurizio v. Goldsmith*,
   84 F.Supp.2d 455 (S.D.N.Y. 2000) ................................................... 21

*MGM Studios, Inc. v. Grokster Ltd.*,
   545 U.S. 913 (2005)...................................................................... 23

*Noble v. Weinstein*,
   335 F.Supp.3d 504 (S.D.N.Y. 2018) ................................................. 12

*Overall v. Estate of Klotz*,
   52 F.3d 398 (2d Cir. 1995) ........................................................... 4, 7

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
   286 F. Supp. 3d 430 (E.D.N.Y. 2017) ............................................... 14

*Parker v. Alexander*,
   779 F. Supp. 3d 361 (S.D.N.Y. 2025) ............................................... 24

*Reach Music Pub., Inc. v Warner/Chappell Music, Inc.*,
   2009 WL 3496115 (S.D.N.Y Oct. 23, 2009)........................................ 21

*Rockefeller Univ. Hosp.*,
   2025 WL 1559583 (N.Y. App. Div. June 3, 2025) .................................. 2

*Roeder v. J.P. Morgan Chase & Co.*,
   523 F. Supp. 3d 601 (S.D.N.Y. 2021) ............................................ 4, 8, 9

*Rowe v. Great Atl. & Pac. Tea Co.*,
   46 N.Y.2d 62 (1978)...................................................................... 13

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989)......................................................... 22

*Segal v. Cooper,*
　95 A.D.3d 545 (1st Dept 2012) ................................................................. 18

*Simcuski v. Saeli,*
　44 N.Y.2d 442 (1978) ............................................................................... 9

*Stephano v. News Group Publ'ns, Inc.,*
　64 N.Y.2d 174 (1984) ............................................................................... 17

*Stoll v. Runyon,*
　165 F.3d 1238 (9th Cir. 1999) ................................................................. 10

*Topat Equip. Co. v. Porter,*
　50 A.D.2d 1098 (4th Dep't 1975) ............................................................ 13

*Torres v. Barnhart,*
　417 F.3d 276 (2d Cir. 2005) ...................................................................... 9

*TufAmerica v. Codigo Music,*
　162 F.Supp.3d 295 (S.D.N.Y. 2016) ........................................................ 21

*United States v. Calimlim,*
　538 F.3d 706 (7th Cir. 2008) .............................................................. 14, 15

*United States v. Dann,*
　652 F.3d 1160 (9th Cir. 2011) ................................................................. 14

*United States v. Kozminski,*
　487 U.S. 931 (1988) ................................................................................. 14

*United States v. Zhong,*
　26 F.4th 536 (2d Cir. 2022) ..................................................................... 14

*Weissmann v. Freeman,*
　868 F.2d 1313 (2d Cir. 1989) .................................................................. 20

*Zoe G. v. Frederick F.G.,*
　208 A.D.2d 675 (1994) .............................................................................. 4

*Zoll v. Jordache Enterprises, Inc.,*
　No. 01 CIV. 1339 (CSH), 2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002) ...............17

*Zucker v. Waldmann,*
　46 Misc.3d 1214(A) (NY Sup 2015) ........................................................ 18

## Regulations

17 U.S.C. § 106 .......................................................................................... 20

17 U.S.C. § 201(a) ..................................................................................... 19

18 U.S.C. § 1589 ................................................................................... 14, 15, 24, 27

18 U.S.C. § 1591 ......................................................................................... 12, 24, 27

28 U.S.C.A ……………………………………………………………………………20

Cal. Civ. Code § 52.5 ................................................................................... 14, 16

Fed. R. Civ. Pro. 8 ........................................................................................... 22

Fed. R. Civ. Pro. 50(a) ................................................................................... 20

N.Y. Civ. Rights Law §50 ………………………………………….……………17, 18

N.Y. Civ. Rights Law §51 ............................................................................. 17, 18

N.Y. Penal Law § 130 ..................................................................................... 23

N.Y. Penal Law § 135.10 ................................................................................ 26

N.Y. Penal Law § 110.01 ................................................................................ 26

N.Y. Penal Law § 120.14(2) ........................................................................... 24

N.Y. Penal Law § 130.52 ................................................................................ 27

N.Y. Penal Law § 135.05 ................................................................................ 26

N.Y. Penal Law § 135.10 ................................................................................ 24

N.Y. Penal Law § 135.35 ................................................................................ 27

N.Y. C.P.L.R. § 214 ........................................................................................ 23

N.Y.C. Admin. Code § 10-1103 ............................................................. 24, 25, 28

N.Y.C. Admin. Code § 10-1104 ...................................................................... 24

## **PRELIMINARY STATEMENT**

Plaintiff Dawn Richard's Second Amended Complaint ("SAC") sets forth a detailed account of yearslong gender-based violence, sexual abuse, and coercive and hostile working conditions perpetrated by Defendants Sean Combs and Harve Pierre.

Defendants' poor attempt to minimize their unlawful acts as mere "challenging" industry conditions ignores well-pleaded facts that must be accepted as true. Plaintiff has sufficiently alleged gender-motivated violence, sex trafficking, forced labor, employment claims, violation of the right of publicity, and copyright violations.

Defendants' statute of limitations defense fails as the SAC alleges continuing duress sufficient to invoke equitable estoppel – an inherently factual issue inappropriate for resolution at the pleading stage.

With respect to Plaintiff's New York City Gender-Motivated Violence Law §§ 10-1101 ("GMVL") claim, Defendants overemphasize the impact of a pending Second Circuit appeal concerning preemption which does not control here, because it applies only to GMVL claims premised exclusively on sexual offenses. Plaintiff's GMVL claim is also based on multiple non-sexual offenses and thus falls outside the scope of the issue on appeal.

Finally, Defendants' challenges to Plaintiff's intellectual property claims do not address the scope of the claims and, per precedent, cannot be resolved on a motion to dismiss.

For these reasons, set forth more fully below, Defendants' motion should be denied in its entirety.

///

///

///

1

## PROCEDURAL HISTORY

Plaintiff filed her Complaint on September 10, 2024. On March 12, 2025, she filed her First Amended Complaint ("FAC") dismissing several claims and corporate defendants and adding a corporate defendant.

On May 16, 2025, four days into Combs' criminal trial, the remaining defendants filed a motion to dismiss. The criminal trial, which concluded June 4, 2025, supplied information that Plaintiff sought to incorporate into her pleading. Moreover, on June 3, 2025, the Appellate Division, First Department held in *SS v. Rockefeller Univ. Hosp.*, 2025 WL 1559583 (N.Y. App. Div. June 3, 2025) that the 2022 amendment expanding the GMVL to enabling parties did not apply retroactively. Accordingly, shortly thereafter, Plaintiff dismissed the corporate defendants and filed her SAC to include information revealed at the criminal trial.

## FACTUAL BACKGROUND

In 2004, Plaintiff was selected to participate in Combs' reality TV show *Making The Band.* SAC ¶¶ 18-19. Plaintiff was one of five women selected for the band, *Danity Kane.* SAC ¶ 21. Combs regularly called them "bitches" and "hoes" and deprived them of basic necessities. SAC ¶¶ 27-29; 35-38, 91-92. Combs and Pierre threatened them when they pleaded for meals or rest. SAC ¶¶ 39-42.

In 2009, when Combs, Plaintiff, and Witness 1 formed a new musical group, *Diddy – Dirty Money*, Combs' behavior worsened. SAC ¶¶ 23, 32; 45-46; 63-73. Combs raged, screamed, threw objects, and made threats. SAC ¶¶ 44; 70. Combs and his bodyguards regularly carried firearms. SAC ¶ 71. Combs hired law enforcement as security guards for massive parties where girls who appeared underage were sexually violated. SAC ¶¶ 62; 65.

2

Combs beat his girlfriend Casandra Ventura on numerous occasions. SAC ¶¶ 48-50; 57-61. After one such occasion, Combs locked Plaintiff in his studio and threatened "consequences" unless she stayed silent, stating "people end up missing." SAC ¶ 51. On other occasions, Combs raged: "you bitches want to die today" and "you could be missing." SAC ¶ 62. Combs demanded that Plaintiff spend days recording without breaks to eat or sleep. SAC ¶¶ 63; 66. If she left, Combs called and threatened: "I make n****s go missing," and "I make things go away." The prolonged denial of adequate sustenance and rest caused Plaintiff to be hospitalized. *Id.* ¶ 68.

On numerous occasions, Combs groped Plaintiff's buttocks and breast area. SAC ¶¶ 79-80, 89. Combs conditioned Plaintiff's career success on her compliance with his sexual assaults. SAC ¶¶ 81-83. When Plaintiff deflected Combs' advances, he removed her from vocal parts and songs, sabotaged her performances, and withheld compensation. SAC ¶ 90.

When Plaintiff once stood up to Combs' gender-based slurs (SAC ¶ 92), Combs and Pierre attempted to strike Plaintiff, and Combs' bodyguard locked Plaintiff inside a car. SAC ¶¶ 93-94. Pierre subsequently imprisoned her in a room. SAC ¶¶ 96-97. Combs later threatened Plaintiff and her father: "think about your family" and "you don't call your dad unless you're in the hospital." SAC ¶¶ 98-99.

Contrary to Defendants' contention, Plaintiff's work with Combs ceased in 2012. In 2021, a representative of Janice Combs Publishing sent Plaintiff a proposed contract restoring certain publishing royalties, which Plaintiff signed. The transaction did not involve or require any contact between Plaintiff and Combs.

In 2023, Combs released an album that included Plaintiff's 2009 recording, *Deliver Me*. Plaintiff never granted a license to Defendants in *Deliver Me*. SAC ¶¶ 115, 119. This unauthorized release of *Deliver Me* did not involve any collaboration between Plaintiff and Combs.

Though Plaintiff's work with Combs had ceased, his open-ended threats of physical harm endured, leading Plaintiff to fear that coming forward would put her and her family's lives in danger. SAC ¶¶ 31, 42, 60, 69, 71, 87-88.

## LEGAL ARGUMENT

## I.    PLAINTIFF'S CLAIMS ARE TIMELY UNDER EQUITABLE ESTOPPEL AND EQUITABLE TOLLING PRINCIPLES

### A.  Equitable Estoppel Bars Defendant from Benefiting from His Wrongdoing

Equitable estoppel prevents a defendant from invoking statutes of limitations where his affirmative wrongdoing – such as threats, coercion, or other misconduct – caused a plaintiff's delay in filing a legal action. *See Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 616 (S.D.N.Y. 2021), aff'd, 2022 WL 211702 (2d Cir. Jan. 25, 2022); *Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995) (quoting *Zoe G. v. Frederick F.G.*, 208 A.D.2d 675 (1994)); *General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 127–28 (1966).

Combs' wrongdoing – including threats, violence, and psychological control – cultivated an environment of pervasive fear and intimidation that led Plaintiff to reasonably believe that any action other than silence and compliance would endanger herself and her family. SAC ¶¶ 31, 42, 60, 69, 71, 87-88. Her delay in filing was the direct result of Combs' calculated efforts to instill enduring terror and prevent disclosure of his misconduct.

Both estoppel by duress and equitable tolling principles operate to estop Combs from invoking a statute of limitations defense in this action. Plaintiff sufficiently pleads the elements of estoppel by duress by alleging (1) threats or force by the defendant, (2) the submission of her free will, and (3) the tortious conduct continued uninterrupted. *Overall v. Estate of Klotz*, 52 F.3d 398, 405 (2d Cir. 1995); *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 175 (S.D.N.Y.

2019). Plaintiff also satisfies the requirements of equitable tolling by alleging that (1) she pursued her rights diligently and (2) an extraordinary circumstance – defendant's silencing tactics and threats – prevented timely filing. *Doe v. Warren & Baram Mgmt. LLC*, No. 20-CV-9522 (ER) (VF), 2024 WL 2941222, at *4 (S.D.N.Y. May 3, 2024), report and recommendation adopted sub nom. *Doe v. Baram, No.* 20-CV-9522 (ER), 2024 WL 3342602 (S.D.N.Y. July 9, 2024) ("*Warren*").

Plaintiff's detailed allegations explain how and why Combs' conduct instilled her with lasting fear that reasonably deterred her from coming forward sooner. SAC ¶ 126. Combs deliberately cultivated an environment of intimidation and control that reinforced his threats of physical harm – threats that still exist. For instance, upon learning Plaintiff was emotionally supporting Ms. Ventura, Combs threatened her: "**You want to die today**," "**I make n****s go missing**," "**I end people**." SAC ¶ 5. Similarly, after Plaintiff witnessed Combs assault Ms. Ventura, Combs warned her: "**If you say anything there will be consequences**;" "**[P]eople end up missing**." SAC ¶ 51. Combs repeatedly screamed at Plaintiff: "**I end artists**;" "**I shelve careers**," "**You bitches want to die today**," and "**You could be missing**," SAC ¶ 62. When Plaintiff begged to eat or sleep, Combs threatened: "**I make n****s go missing**;" "**I make things go away**." SAC ¶ 64.

These threats – especially coming from someone as powerful as Combs – would place a reasonable person in indefinite fear of serious harm. Though Defendants mischaracterize the SAC as containing "no allegations of intimidation beyond 2010," its 237 paragraphs provide important context of Plaintiff's first-hand experiences with Combs' aggression and violence dating back to 2004 that amplified Combs' threats and made her fear Combs indefinitely. For example, Plaintiff alleges that she witnessed:

- Combs abuse his late wife Kim Porter (SAC ¶ 30);

- Combs regularly assault Ms. Ventura (SAC ¶¶ 3-4, 57–61);

- Combs flying into rages, throwing objects at walls and at people (SAC ¶ 70);

- Combs and his bodyguards regularly carrying firearms (SAC ¶ 71); and

- Combs barricading doors at parties and confiscating guests' phones. SAC ¶ 55.

Combs engaged in a pattern of humiliation, sexual intimidation, and psychological control that effectively coerced Plaintiff into silence and submission. He held meetings in his underwear despite her objections, called her "bitch" and "whore" when she protested, intruded when she was undressed, and routinely groped her body, including her buttocks and breasts, SAC ¶¶ 44, 77, 80-83. These acts were designed to degrade Plaintiff and remind her of Combs' power.

Combs demonstrated a disregard for Plaintiff's safety – pushing her past her physical limits and responding to her pleas with degradation and threats. SAC ¶¶ 35-39; 63-66. When Plaintiff was hospitalized in 2010, Combs ignored her doctors' orders and directed her to work the next day. SAC ¶ 68. Combs' indifference to her suffering confirmed her belief that Combs would show similar disregard for her life if she ever spoke out against him.

In fact, on the singular occasion that Plaintiff dared to request that Combs stop using gender-based slurs in front of others, he attempted to strike her and imprisoned her in a vehicle. SAC ¶¶ 91-96. Combs then threatened her and her father: "Think about your family." SAC ¶¶ 97-99. Combs' willingness to use violence over this minor act of defiance led Plaintiff to reasonably believe that Combs could kill her and her family if she ever disclosed his wrongdoing.

In an attempt to undermine Plaintiff's allegations of fear, Defendants grossly mischaracterize the 2021 and 2023 negotiations to claim that Plaintiff "engaged in business" with Combs. This argument is highly disingenuous. Plaintiff did not collaborate or otherwise work with

Combs after leaving his employ in 2012. No facts are pled in Plaintiff's SAC to suggest that she did. The negotiations to which Defendant refers – which were conducted through attorneys and are commonplace in an industry where publishing rights are frequently modified – have no bearing on Plaintiff's fear of bringing the legal claims that are the subject of this action.

### B.  Estoppel by Duress

Duress tolling requires "threats or force by the defendant, and the submission of the plaintiff's free will to those threats." *Overall v. Estate of Klotz*, 52 F.3d 398, 405 (2d Cir. 1995). "The tortious conduct must continue uninterrupted." *Id*. at 405; *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 175 (S.D.N.Y. 2019). Plaintiff has met these requirements.

### i.  Combs' Pattern of Specific, Credible Threats of Targeted Harm Toward Plaintiff Caused Lasting Psychological Trauma

Plaintiff alleges direct acts of intimidation that resulted in an indefinite fear of retaliation. Defendants' contention that Plaintiff experienced "generalized duress" (Mot., at 10) mischaracterizes the SAC. Plaintiff does not describe an industry-wide atmosphere of fear. To the contrary, the SAC details specific, personal threats. SAC ¶¶ 42, 51, 62, 70. Defendants' attempt to recast the allegations as "psychological stress" (Mot., at 11) fares no better. The SAC details Plaintiff's ongoing PTSD, anxiety, insomnia, and panic attacks, reflecting deep psychological trauma and ongoing fear for Plaintiff's life *far exceeding* ordinary psychological stress and directly tied to Combs' threats and abuse. SAC ¶ 125.

Defendant's reliance on *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019) and *Gilmore v. Combs*, No. 24-CV-8440 (JPO), 2025 WL 1425326, at 3 (S.D.N.Y. May 16, 2025) is misplaced. Unlike the plaintiffs in *Geiss,* who alleged "little or no threatening behavior by defendants," 383 F. Supp. 3d at 175, and unlike the plaintiff in *Gilmore*, where the plaintiff failed to allege any "threats or other misconduct" directed at her personally,

Plaintiff alleges specific, repeated, and targeted death threats and assaults by Combs. SAC ¶¶ 5, 42, 51, 62, 64-66, 70 92-95; *see also Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 619 (S.D.N.Y. 2021).

### ii.    Combs' Misconduct Continued Uninterrupted

Plaintiff alleges threats of physical harm and death. Logically, such threats do not expire with one's employment but rather persist for as long as the perpetrator remains willing and able to act on them. There is no indication that Combs' ability or willingness to act on his threats ever ceased, or that their coercive effect on Plaintiff was ever lifted.

Courts have recognized that coercion's deterrent effects, particularly in abuse or trafficking cases, may persist long after the conduct ends. *Bianco v. Warner*, 562 F. Supp. 3d 526, 534 (C.D. Cal. 2021) (noting that threats by a perpetrator can "still hav[e] a deterrent effect" long after a sexually abusive relationship ends, especially where the defendant was an influential figure).

Indeed, in September 2024, *while incarcerated*, Combs tampered with a key witness in Plaintiff's case (SAC ¶¶ 123–124), validating Plaintiff's ongoing fear and demonstrating his continued efforts to intimidate her and manipulate the narrative to discredit her claims. Prosecutors opposed bail, citing his pattern of witness tampering, obstruction and regular use of violence, threats and coercion. (*United States v. Combs,* No. 1:24-cr-00542, Doc. 5.) The Court, in turn, denied bail *four* times, accepting the government's position that Combs posed a continuing danger.[1]

///

---

[1] *United States v. Combs*, Nos. 24-cr-542 & 24-2606 (S.D.N.Y.), ECF Nos. 10 (Sept. 17, 2024), 35 (Oct. 11, 2024), 92 (Nov. 27, 2024) (order denying bail and citing the government's characterization of Combs as a "serial obstructor"), 490 (Aug. 4, 2025).

### C. __Equitable Tolling__

Equitable tolling, which is similar to equitable estoppel under New York law, requires that (1) the plaintiff has pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Roeder v. J.P. Morgan Chase & Co.,* 523 F. Supp. 3d 601, 617 (S.D.N.Y. 2021), *aff'd*, No. 21-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022).

Questions of equitable tolling are generally unsuitable for resolution at the pleading stage; courts have repeatedly held that questions of a plaintiff's diligence and the effect of a defendant's conduct on delayed filing are factual issues that necessitate a developed record. *See Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 943 (2d Cir. 1998); *Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005); *Doe v. United States*, 76 F.4th 64, 70 (2d Cir. 2023); *Franco v. Diaz*, 51 F. Supp. 3d 235, 248 (E.D.N.Y. 2014); s*ee also Simcuski v. Saeli*, 44 N.Y.2d 442, 45 (1978). The Second Circuit has held that a district court abused its discretion by failing to hold an evidentiary hearing to resolve a plausible equitable tolling claim. *Clark v. Hanley*, 89 F.4th 78, 95-96 (2d Cir. 2023).[2]

### i.  **Plaintiff Exercised Reasonable Diligence in Filing Her Lawsuit**

The standard for equitable tolling requires reasonable diligence, not maximum feasible diligence, in pursuing one's rights. *Holland v. Florida*, 560 U.S. 631, 653 (2010). Tolling may apply where delay stems from fear or trauma, so long as the plaintiff acts to vindicate their rights as soon as they are able to do so. *Warren, supra*, at 5.; *Doe v. United States*, *supra*, 76 F.4th at 73. The appropriate question is whether she acted "as diligently as reasonably could have been expected under the circumstances." *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003)

---

[2] Should the Court find further factual development necessary, an evidentiary hearing would be appropriate. Plaintiff's involvement in Defendant's criminal proceedings, including her letter to the judge urging Combs' continued incarceration due to the danger he poses, and other facts not yet in the record but directly relevant to tolling, warrant further factual analysis.

(emphasis in original); *Doe v. United States*, *supra*, 76 F.4th at 73. In analyzing the reasonable diligence prong, the Supreme Court has cautioned against the application of "an overly rigid ... approach." *Holland, supra,* 560 U.S. at 653; *Doe v. United States*, *supra*, 76 F.4th at 73.

Plaintiff's fears began to alleviate in late 2023 when other victims came forward against Combs (SAC ¶ 152), and she diligently filed this action within one year of Ms. Ventura's complaint. The SAC amply describes the enduring effects of Combs' threatening conduct, which warrant equitable tolling.

### ii.   Extraordinary Circumstances Prevented Plaintiff's Timely Filing

"Among the extraordinary reasons that may justify equitable tolling of a statute of limitations is a defendant's efforts to threaten or retaliate against a plaintiff if she files a claim against him." *Warren, supra*, at 5. This District recognizes extraordinary circumstances where the defendant's silencing tactics included retaliation, threats, and manipulation. *Id.* Like Combs, the defendant in *Warren* had a history of using his financial resources, political power, influence, and threats of force to intimidate his victims. *Id.* His tactics included threats to destroy careers, having victims followed, engaging in murder-for-hire plots, hiring thugs to intimidate victims, and death threats. *Id.* (recognizing that "the existence of a justifiable fear of violent reprisal by potential defendants or defendants' allies can also toll the limitations period").

The psychological impact of long-term or extreme sexual abuse may constitute an extraordinary circumstance sufficient to justify equitable tolling even after the abuse has ended. *See, e.g.*, *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999); *Kennedy v. Berkel & Co. Contractors, Inc.*, 319 F. Supp. 3d 236, 251-52 (D.D.C. 2018). The Second Circuit has recognized that "[t]he effect of a threat can depend on factors including the nature of the threat and the relative power of its source and its target." *Doe v. United States, supra,* 76 F.4th at 72.  The fact that the

defendant's sexual assaults and contact with the plaintiff ceased after 2014 did not "foreclose a conclusion that [defendant's] power over [plaintiff] continued to be so severe as to prevent her from pursuing her claim." *Id.* The Court explained:

> "Shortly after the last time [defendant] allegedly raped [plaintiff, [defendant] told [plaintiff] that he would kill her if she spoke—a threat made real by the extensive violence [defendant] had shown himself to be capable of and his intimate knowledge of [plaintiff's] life. The district court could therefore reasonably conclude from [plaintiff's] testimony that an extraordinary circumstance continued to stand in [plaintiff's] way even after [defendant] and [plaintiff] were no longer in communication." *Id.*

Taken together, *Warren* and *Doe v. United States* confirm that equitable tolling may apply even years after the last direct threat, where intimidation by a defendant or his allies continues to prevent a victim from coming forward. That is precisely what occurred here.

Plaintiff's fear extended not only to Combs but also to Pierre – Combs' close associate, the president of Bad Boy Entertainment, and an ally in Combs' campaign of coercion. Pierre mirrored Combs' threats, at one point raising his hand and swinging toward Plaintiff's face to hit her (SAC ¶ 93), and responding to her requests for food and rest with menacing questions like "Where are you going to go?" and "What are you going to do?" SAC ¶ 42. He reiterated Combs' chilling warnings: "It gets dark and lonely" and "You could be in a dark and lonely place," leaving Plaintiff in fear that Pierre, too, would retaliate if she defied Combs' control. *Id.*

Plaintiff sufficiently alleges extraordinary circumstances that justify equitable tolling. The SAC details numerous examples of ongoing intimidation and coercion, showing that any assertion of autonomy by Plaintiff or others was met with rage, violence, or threats of harm. As in *Doe v. United States*, Plaintiff lived in constant fear of Combs – a man with the power, resources, and proven capacity for violence to carry out his threats. Her fear was not abstract but grounded in

years of tangible harm and credible danger. These are precisely the extraordinary circumstances that warrant equitable tolling.

## II.    PLAINTIFF SUFFICIENTLY ALLEGES SEX TRAFFICKING

Under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1591, a plaintiff must show that the defendant (1) recruited, enticed, harbored, transported, provided, obtained, or maintained the victim, (2) knowing that means of fraud or force would be used, (3) to cause the person to engage in a commercial sex act. 18 U.S.C. §§1591, 1595; *Noble v. Weinstein*, 335 F.Supp.3d 504 (S.D.N.Y. 2018); *Canosa v. Ziff et al.*, 18 Civ. 4115 (SDNY Jan. 28, 2019). Plaintiff sufficiently alleges that Combs recruited and enticed Plaintiff with fraudulent promises of professional support and career success such as "if you wear what I tell you and let me do what I do, you will go to the top," while groping Plaintiff's buttocks and breast area without her consent. SAC ¶¶ 79-84.

Defendants' assertion that the SAC alleges no sex act or commercial sex act is both legally and factually incorrect. The TVPRA defines "commercial sex act" expansively as "*any* sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3) (emphasis added). "[T]he use of the modifier 'any' signals Congress's intent to define 'sex act' broadly to include more than contact between, or penetration by, two sets of genitalia." *Ardolf v. Weber*, 332 F.R.D. 467, 478 (S.D.N.Y. 2019). Nothing in the statute confines a "sex act" to intercourse or penetration.

Like in *Ardolf,* where the court held that grabbing and fondling the plaintiff's genitals constituted a "sex act" under Section 1591, the SAC easily meets that standard. Combs repeatedly groped Plaintiff's buttocks and breasts under the fraudulent guise of "shaping" her image and helping her "reach the top" of her career. SAC ¶¶ 80–83, 89.

III.    **PLAINTIFF DID NOT RELEASE FORCED LABOR, EMPLOYMENT, OR UNJUST ENRICHMENT CLAIMS**

Defendants' assertion that the release in the 2021 contract with Janice Combs Publishing covers more than the publishing royalties restored to Plaintiff is absurd.  Plaintiff's claims encompass a much broader exploitation of her person, performances, compositions and services. SAC ¶ 219. In *Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 569 (2002) the court held that "scope of releases in entertainment industry often requires factual development*."* A release may be invalidated for "duress, illegality, fraud, or mutual mistake" (*Mangini v. McClurg,* 24 N.Y.2d 556, 562-63, 301 N.Y.S.2d 508, 249 N.E.2d 386 [1969]), all of which are factual determinations.

A release must be "clear, unmistakable and without ambiguity" to effect a waiver of a known right. *Chenango Forks Cent. Sch. Dist. v. N.Y. State Pub. Empl. Rels. Bd.*, 95 A.D.3d 1479, 1484 (3d Dep't 2012), *aff'd*, 21 N.Y.3d 255 (2013). General release language cannot be stretched to cover claims outside the subject matter contemplated by the parties. "If, from the recitals therein or otherwise, it appears that the release is to be limited to only particular claims, demands, or obligations, the instrument will be operative as to those matters alone, and will not release other claims." *Topat Equip. Co. v. Porter*, 50 A.D.2d 1098, 1098–99 (4th Dep't 1975) (quoting 49 N.Y. Jur. Release & Discharge § 33). Likewise, courts are "extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 72 (1978).

The purpose and scope of the 2021 contract concerns publishing royalties, not the unlawful conduct of Combs. The absence of any reference to "employment," "forced labor," "unjust enrichment," or any analogous terms in this attorney-drafted contract is deliberate. Had the parties intended to release a decade of workplace-related claims, they could have and would have made that explicit. Defendants' attempt to stretch a narrowly-tailored release to bar decades

13

of coerced labor and employment-based violations ignores both the text of the agreement and the governing law.

## IV.    **FORCED LABOR IS SUFFICIENTLY PLED**

Plaintiff sufficiently alleges violation of 18 U.S.C. § 1589 and California Civil Code § 52.5. Defendants' attempt to reframe years of violent and coercive conduct as merely "unpleasant" or "difficult work conditions" (Mot., at 19–20) misstates the SAC and the law. Section 1589 does not require victims to be imprisoned under "literal lock and key." *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 439 (E.D.N.Y. 2017) (quoting *Franco v. Diaz*, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014)). Congress enacted Section 1589 to reach modern forms of forced labor achieved through nonphysical coercion: serious harm, threats of harm, psychological domination, or abuse of process. It expressly expanded the statute beyond *United States v. Kozminski*, 487 U.S. 931 (1988) to include psychological, financial, and reputational harm sufficient to compel continued labor. 18 U.S.C. § 1589(a), (c)(2).

Courts consistently recognize that such nonphysical threats can constitute forced labor. *See United States v. Dann*, 652 F.3d 1160, 1169-72 (9th Cir. 2011); *United States v. Calimlim*, 538 F.3d 706, 712-14 (7th Cir. 2008); *Paguirigan*, *supra,* 286 F. Supp. 3d at 437-38. Defendants' contention that Plaintiff failed to allege "physical restraint" is therefore unavailing: Section 1589(a) also prohibits obtaining labor by means of "threats of force" or "threats of serious harm."

The fact that Plaintiff initially agreed to work with Combs (Mot., at 19) is immaterial. Victims "may come to a job voluntarily," yet their "continued labor may become forced." *United States v. Zhong*, 26 F.4th 536, 550 (2d Cir. 2022). That is precisely what occurred here: once Plaintiff began working for Combs, the relationship devolved into one of domination and coercion. The SAC details that Combs intentionally manipulated Plaintiff's circumstances to ensure total

compliance, depriving her of food, water, and rest until she was hospitalized. SAC ¶¶ 63-75, 108-116. She was forced to spend three to four consecutive days recording without a break. SAC ¶ 63. When Plaintiff tried to leave the studio, Combs screamed, "Where the f*** are you? We have an album to make," "You're a bitch," "I don't want to see your f***ing face," and "I make n****s go missing." SAC ¶ 64. Even after Plaintiff's hospitalization for severe dehydration, anemia, and exhaustion, Combs ordered her to return to work the next day. SAC ¶ 68. He also "ordered her to appear and perform with *Diddy–Dirty Money*, often with little to no notice and without any discussion of payment," while "she was not free to decline, as Mr. Combs' demands were always accompanied by implicit or explicit threats." SAC ¶ 75.  His actions created a reasonable fear that defiance would result in serious physical, psychological, and reputational harm.

Defendant's argument that Plaintiff fails to allege (1) that Combs intended to harm her if she did not work, or (2) that she was compelled to continue working against her will (Mot., at 19-20) misstates the requirements of Section 1589, which requires a showing of a "scheme, plan, or pattern" intended to make a person believe that failure to perform labor will result in serious harm. *United States v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008); *Guobadia v. Irowa*, 103 F. Supp. 3d 325, 333-34 (E.D.N.Y. 2015). Plaintiff has alleged a scheme, plan and pattern in which Combs deprived Plaintiff of basic necessities, behaved violently, and made repeated, credible death threats – all intended to make her believe that failure to continue working would result in serious physical, psychological, and professional harm. SAC ¶¶ 63-75, 108-116. Defendants' effort to minimize such conduct as mere "verbal insults" or "hyperbolic statements" (Mot. at 19-20) falls flat.

The SAC details Combs' obtainment of Plaintiff's labor through threats of serious harm, coercion, and psychological domination, sufficiently pleading violations of the TVPRA and California Civil Code section 52.5.

## V.    PLAINTIFF HAS SUFFICIENTLY ALLEGED AN EMPLOYMENT RELATIONSHIP

Defendants' argument that Plaintiff's NYSHRL claim must be dismissed for failure to establish an employment relationship is unavailing.[3] The primary consideration in determining whether an employment relationship exists is the extent of control the alleged employer exercises over the manner and means of the plaintiff's work. See *Matter of Pasini*, 204 A.D.3d 1187, 1188 (3d Dep't 2022). This includes not only control over the results, but more significantly, control over how those results are achieved. *Id.*

Plaintiff alleges that Combs exerted significant control over the conditions of her work. He supervised her rehearsals, recording sessions, and performances and held meetings with her. SAC ¶¶ 34, 76-77. He dictated her work schedule, often subjecting her to long hours. SAC ¶¶ 36, 63-67. Plaintiff's contributions – live performances, recorded music, and public appearances – were central to Combs' business success. SAC ¶ 75.

Plaintiff has therefore adequately pled the existence of an employment relationship, or at the very least, her allegations raise a factual issue that precludes dismissal at the pleading stage. *See Matter of Pasini*, *supra*, 204 A.D.3d at 1188 (the existence of an employment relationship is a factual issue).

## VI.    PLAINTIFF'S RIGHT OF PUBLICITY CLAIMS ARE PROPERLY PLED AND NOT TIME BARRED

### A.    Plaintiff Has Adequately Pled Specific Violations

Plaintiff adequately pled right of publicity claims under New York Civil Rights Law §§50 and 51. SAC ¶ 219. Plaintiff was required to "perform at and attend numerous parties and promotional events" (SAC ¶ 218) and Combs knowingly used her voice, likeness, image, persona

---

[3] Defendants do not argue a lack of an employment relationship in connection to the remaining employment claims (Causes of Action 12 through 16).

and services without her consent for advertising and trade without remuneration. Combs'
mandated performances under threat of harm or serious retaliation constituted commercial use of
Plaintiff's persona and likeness for Combs' financial benefit in brand partnerships with
*DiddyBeats*, *FlipCamera*, *Ciroc*, *NFL*, etc. SAC ¶¶ 218-221.

### B.  <u>The Contractual Performance Argument Fails</u>

The mere existence of a contract does not automatically waive all right of publicity
protections. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1027-28, 1032 (3d Cir. 2008).  While
promotion of *Diddy-Dirty Money* is conceded, there is no automatic inferred agreement to promote
other Combs' products with separate contractual duties. Consent must be specific and not inferred
broadly.

Combs' abusive threats overrode Plaintiff's consent exceeding any contractual scope to
use her voice/likeness/image/persona for his separate brands. SAC ¶¶ 218-222. The statutes apply
when "the plaintiff … has not given written consent for a particular use" or "the defendant has
otherwise exceeded the limitations of the consent." *Stephano v. News Group Publ'ns, Inc.,* 64
N.Y.2d 174, 183 (1984).

### C.  <u>Residency Requirements are Satisfied</u>

Under New York conflict of law rules, right of publicity claims are governed by the
substantive law of the plaintiff's domicile. *Zoll v. Jordache Enterprises, Inc.* (S.D.N.Y., Dec. 24,
2002, No. 01 CIV. 1339 (CSH)) 2002 WL 31873461, at *4.   Plaintiff allegations sufficiently
establish dual residency. SAC ¶ 9 ("Plaintiff was/is a resident of the States of California and New
York at all relevant times herein").

///

///

## VII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIMS ARE VIABLE AND NOT DUPLICATIVE

### A.   Unjust Enrichment Claims Are Not Automatically Preempted

Plaintiff's unjust enrichment allegations (SAC ¶¶ 219-222) address conduct beyond §§ 50-51 and are not duplicative. Analysis is fact-specific and inappropriate for dismissal. To prevail, plaintiff must establish 1) defendant benefitted; 2) at plaintiff's expense; and 3) equity requires restitution. *Dolmetta v. Uintah Nat'l Corp.,* 712 F.2d 15, 20 (2d Cir. 1983).

### B.   Plaintiff's Unjust Enrichment Claims Address Distinct Conduct

Claims are based on Combs' receipt of benefits from mandated services and creative contributions beyond contractual coverage. *Ashwood Capital, Inc. v. OTG Management, Inc.* 99 A.D.3d 1 (2012) (allowing unjust enrichment where contract did not cover all disputed services). Combs demanded Plaintiff's presence at parties to perform or be photographed alongside his brands, profiting without compensation.  SAC ¶¶ 218-223.

Plaintiff's claims specify economic benefits Combs obtained through threats and coercion – separate from statutory violations. *Segal v. Cooper,* 95 A.D.3d 545 (1st Dept 2012) (declined dismissing unjust enrichment claims).  Such claims should proceed against defendants who received benefits but are not parties to relevant contracts. *Zucker v. Waldmann*, 46 Misc.3d 1214(A) (NY Sup 2015) and *Cadogan Management, LLC v. Wright,* 38 Misc.3d 1231(A) (Sup Ct 2011).

## VIII.   THE CONTRACT RELEASE IS INAPPLICABLE AND DOES NOT BAR PLAINTIFF'S CLAIMS

### A.   Integration and Reference Standards Not Met

Defendants' contract submission lacks specifics on how release terms shield Combs on right of publicity, unjust enrichment or copyright claims.  The contract is not sufficiently integrated into evidence to warrant consideration on dismissal.  When material outside the complaint is

presented "the motion shall be treated as one for summary judgment" unless the document is incorporated by reference or integral to the complaint. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

### B.  Scope and Applicability of Releases

Plaintiff's publishing royalties were redirected in the contract. Broader interpretations constitute factual questions inappropriate for resolution a motion to dismiss. Any agreement's scope must be determined through factual development, not dismissal. *MAK Technology Holdings Inc. v. Anyvision Interactive Technologies Ltd.,* 42 N.Y.3d 570, 576 (2024) (rejected interpretations based on speculation). Plaintiff urges proper discovery of all agreements predating the 2021 agreement for clarification of what was released, and to ascertain who acquired Plaintiff's rights.

## IX.  PLAINTIFF'S COPYRIGHT INFRINGMENT CLAIMS ARE PROPERLY STATED

Copyright vests immediately upon work creation. 17 U.S.C. §201(a); *Brownstein v. Lindsay*, 742 F.3d 55, 66 (3d Cir. 2014).  Plaintiff created the original work in 2009. SAC ¶¶ 105, 225.

Defendants sought permission to exploit *Deliver Me* but refused pre-negotiated copyright percentages; thus, no license issued. SAC ¶¶ 100-103, 225-226. Defendants then granted exclusive rights to their publisher who published it September 14-15, 2023, illegally exploiting Plaintiff's composition/performance/name/voice/image.  SAC ¶¶ 104, 108-109, 113-119, 121, 226. Defendants ignored Plaintiff's objections citing infringement and refusal of the performance fee; such fee does not cover composition copyrights.  SAC ¶¶ 112, 115, 117-119.

///

### A.  Exceptions to Co-Author Immunity from Infringement Claims

Defendants' argument that co-authors cannot sue each other citing *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011), is inapplicable. Second Circuit law establishes exceptions permitting liability between co-authors, particularly in musical composition and sound recording contexts. Infringement is viable where one co-author exceeds rights or violates agreements. Issues of material fact should go to the jury. Fed. Rule Civ. Pro. 50(a), 28 U.S.C.A. *Brownstein*, *supra,* 742 F.3d at 75.

#### i.  Licensing Authority Limitations and Exclusive Licensing Prohibition

Defendants' exclusive licensing of *Deliver Me* to its publisher is infringement because co-author authority prohibits granting exclusive licenses without consent. *Davis v. Blige*, 505 F.3d 90, 99-100 (2d Cir. 2007) distinguished permissible non-exclusive licensing from prohibited exclusive licensing. A co-owner cannot unilaterally grant exclusive licenses as it impairs other co-owners' interests. *Id.*, at 99-101.

#### ii.  The Derivative Works Exception to Co-Author Immunity

Original authors must consent to derivative work creation—unauthorized creation constitutes infringement. 17 U.S.C. § 106; *Dun & Bradstreet Software Servs., Inc., v. Grace Consulting, Inc.*, 307 F.3d 197, 212-13 (2002).

As *Deliver Me* co-author, Plaintiff retains copyrights in her original composition. SAC ¶¶ 108-111.  When one co-author creates a derivative work incorporating joint material, they must account to collaborators for profits. *Weissmann v. Freeman*, 868 F.2d 1313, 1317 (2d Cir. 1989). "A duty to account action under the Copyright Act lies when a co-author exploits the work in question but declines to share royalties with his co-author." *Reach Music Pub., Inc. v. Warner/Chappell Music, Inc.*, 2009 WL 3496115, at *2 (S.D.N.Y Oct. 23, 2009). The Southern

District in *Maurizio v. Goldsmith*, 84 F.Supp.2d 455, 467 (S.D.N.Y. 2000) determined that the defendant had to account to the plaintiff for use of jointly created material. Even if no reasonable trier of fact could find that the plaintiff was a joint author of the book at issue (considering distinction from the underlying works), summary judgment would be improper because a joint author must account to his co-author for use of their joint work in a derivative work.

Here, similarly, Defendants owe Plaintiff an accounting for *Deliver Me.* SAC ¶¶ 120-21, 228-30.

### B.  Distinct Copyright Nature of Musical Compositions and Sound Recordings

*In re Cellco Partnership*, 663 F.Supp.2d 363, 368-69 (S.D.N.Y. 2009) recognized separate rights bundles in musical compositions and sound recordings, explaining sound recordings are "derivative" works of preexisting compositions with distinct ownership rights supporting co-author infringement claims. On information and belief, Defendants own copyrights in the sound recording and the derivative; Combs owns copyrights for his vocals.

When one co-author publishes a sound recording without securing proper licensing from composition co-authors, they exceed the scope of their joint ownership rights and create liability. Ownership of the original work includes the exclusive right to authorize subsequent derivative works. *TufAmerica v. Codigo Music*, 162 F.Supp.3d 295, 319 (S.D.N.Y. 2016).

Defendants failed to establish permission/license and violated the duty to account for profits. SAC ¶¶ 228-230. Plaintiff deserves the ability to prove Defendants granted exclusive rights without consent from all authors.

### C.  Accounting Duties and Fiduciary Obligations

Defendants used *Deliver Me* on Defendants' 2023 album without permission and without providing proper accounting or compensation.  Plaintiff states viable claims for breach of fiduciary

21

duty and failure to account. SAC ¶¶ 224-230.  Co-authors owe each other fiduciary duties regarding exploitation of joint works. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087-89 (9th Cir. 1989). A licensee infringes the owner's copyright if its use exceeds license scope. *Gilliam v. American Broadcasting Cos.,* 538 F.2d 14, 20 (2d Cir. 1976). The license must be construed in accordance with federal copyright law purposes, chief among these being author's rights protection. *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 854 (9th Cir. 1988).

## X.    PLAINTIFF'S VICARIOUS/CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIMS ARE PROPERLY PLED

Plaintiff's secondary infringement claims are sufficient under Fed. Rule Civ. Proc. 8 as she sufficiently alleges: "[Defendants] had the right and ability to supervise the creation and exploitation of *Deliver Me* and/or had a direct financial interest in the same." SAC ¶ 233.

Defendants criticize the "and/or" pleading, but alternative pleading is expressly permitted under Rule 8(d)(2). *Brown v. Riverside Church in City of New York*, 231 A.D.3d 104 (2024) explicitly rejected restrictive approaches.

Plaintiff provides sufficient notice by alleging Defendants were involved in distribution, marketing, and exploitation, providing both supervisory control and financial interest necessary for secondary liability. SAC ¶¶ 231-237. See *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011).  A defendant may be held liable for contributory infringement if, "with knowledge of the infringing activity," it "materially contributes to the infringing conduct." *Matthew Bender & Co., Inc. v. West Pub. Co.*, 158 F.3d 693, 706 (2d Cir. 1998). Unlike an inducement claim, contributory infringement *does not* require showing that the defendant intended to foster infringement. *See MGM Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913, 942 (2005) (Ginsburg, J., concurring). Rather, to establish a "material contribution" claim, a plaintiff must show that the defendant (1) had actual or constructive knowledge of the infringing activity, and

(2) encouraged or assisted others' infringement, or provided machinery or goods that facilitated infringement. *Arista Records LLC, supra*, 784 F. Supp. 2d at 432.  Those facts are alleged and dismissal is unwarranted.

In *Davis v. Blige*, *supra*, the plaintiff, Davis, established that defendant Miller exceeded his authority by granting a third party an exclusive license without joining Davis to the agreement. *Id.*, at 104, fn. 13 (creating liability under contributory infringement theories).

## XI.    PLAINTIFF'S GMVL CLAIM IS NOT PREEMPTED

The question of whether the New York Child Victims' Act, C.P.L.R. § 214-g ("CVA") and Adult Survivors Act, C.P.L. R. § 214-j ("ASA") preempts New York City's GMVL is before the Second Circuit in *Parker v. Alexander*, No. 25-487 (2d Cir.) and *Doe v. Black*, 25-564 (2d Cir.), which will proceed in tandem. *See Parker*, No. 25-487 (2d Cir.) at ECF No. 1. However – *critically* – the preemption question before the Second Circuit is limited to GMVL claims arising out of conduct that violates N.Y. Penal Law § 130 ("Sexual Offenses). Plaintiff's GMVL claim arises out of other, non-sexual offenses, and thus will not be affected by the Second Circuit's ruling. The preemption question on appeal applies *only* to GMVL claims based on sexual crimes because the CVA and ASA exclusively pertain to sexual crimes. Plaintiff's GMVL claim is also based on various non-sexual crimes and is therefore not subject to preemption by the CVA or ASA.

The CVA and ASA, which revived the statute of limitations for certain civil claims in connection with specified sexual offenses, narrowly defined applicable offenses as "conduct which would constitute a sexual offense as defined in [§130] of the penal law." The GMVL broadly defines a crime of violence as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law…" NYC Admin. Code § 10-1103.

In *Parker*, Judge Kaplan explained:

[T]he ASA and CVA preempt the VGMVPL Revival Amendment **to the extent that the Amendment purports to revive civil claims arising from violations of sexual offense provisions of the New York Penal Law**…Plaintiff correctly notes that the conduct covered by the [GMVL] on the one hand and the ASA and CVA on the other hand do not fully overlap. Not all crimes of violence motivated by gender necessarily are sexual offenses under New York Penal Law. **Plaintiff's claims therefore are ineligible for revival under the [GMVL] revival amendment only if they arise from a predicate sexual offense under the New York Penal Law…"**

*Parker v. Alexander*, 779 F.Supp.3d 361, 370 (S.D.N.Y. 2025) (emphasis added).

Thus, even if the Second Circuit affirms *Parker*, its decision will have no bearing on Plaintiff's GMVL claim, which is based on NY Penal Law sections other than Section 130, and on federal law, specifically:

- P.L. § 110/120.00(1) – Attempted Assault in the Third Degree
- P.L. § 120.15 – Menacing in the Third Degree
- P.L. § 120.14(2) – Menacing in the Second Degree
- P.L. § 135.05 – Unlawful Imprisonment in the Second Degree
- P.L. § 135.10 – Unlawful Imprisonment in the First Degree
- P.L. § 135.35(3) – Labor Trafficking
- 18 U.S.C. § 1589 – Forced Labor
- 18 U.S.C. § 1591 – Sex Trafficking

Insofar as Plaintiff's GMVL claim is premised on the above-listed offenses, her GMVL claim is not preempted, and is eligible for revival under the GMVL's revival provision.

## XII.   <u>PLAINTIFF SUFFICIENTLY ALLEGES VIOLATION OF THE GMVL</u>

The GMVL creates a cause of action for "any person claiming to be injured by a party who commits…a crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104; *Baldwin v. TMPL Lexington LLC*, 23 CIV. 9899 (PAE), 2024 WL 3862150, at *11 (SDNY Aug. 19, 2024). Plaintiff sufficiently pleads that Combs sexually touched and groped her, and that Combs and Pierre imprisoned and assaulted her. These acts meet the GMVL's definitions of "crimes of violence" and "crimes of violence motivated by gender," and were committed in New York City.

24

Plaintiff timely filed this action on September 10, 2024, within Section 10-1105(a)'s revival window.

Defendants' argument that Combs' and Pierre's conduct does not constitute "crimes of violence" is unavailing as it is based on case law misinterpreting the statutory definition of a "crime of violence" that was later clarified in *Baldwin*. Combs' and Pierre's conduct constitute "misdemeanors and/or felonies against the person" and fall squarely within the definition of a "crime of violence." N.Y.C. Admin Code § 10-1103. Moreover, Plaintiff has amply pled the requisite gender-based animus.

## A.    Combs and Pierre Committed Crimes of Violence Against Plaintiff

A crime of violence is defined as an "**act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law** or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction." N.Y.C. Admin Code § 10-1103 (emphasis added).

Plaintiff has sufficiently alleged conduct by Combs and Pierre that constitutes state and federal crimes. Plaintiff alleges that Combs and Pierre attempted to strike her, Combs' bodyguard locked her in a vehicle, and Pierre imprisoned her in a room. SAC ¶¶ 93-94; 97. Plaintiff further alleges multiple incidents of nonconsensual sexual contact (SAC ¶¶ 79-83) as well as the obtainment of her labor by the use of threats and coercion (SAC ¶¶ 63–75, 108–116). These crimes were undeniably committed against Plaintiff's person, not against property, obviating the need to allege a risk of serious injury – though she does, regardless. *Id.*; *Baldwin*, *supra*, 2024 WL 386215. Combs and Pierre's conduct constitutes the following state and federal crimes:

///

### i.  Unlawful Imprisonment

NY Penal Law § 135.05 provides that a person is guilty of Unlawful Imprisonment in the Second Degree, a misdemeanor, "when he restrains another person." When the restraint is under circumstances that present a risk of serious physical injury, it is a felony. N.Y. Penal Law § 135.10. Plaintiff alleges that Combs' bodyguard "closed and locked [a vehicle's] doors with [Plaintiff] inside" (SAC ¶ 93), there was "no way to escape" (SAC ¶ 94) and Plaintiff was "locked in the car alone for over two hours." *Id.* It was winter, the ignition was off, Plaintiff did not have her coat, and she began to feel cold and to experience "sheer panic, terror, and feelings of claustrophobia…with no way to communicate or call for help." SAC ¶ 94-95. Pierre subsequently led Plaintiff into a small room and locked her inside. SAC ¶ 97.

Defendants' argument that it was a bodyguard who locked Plaintiff in the car raises a factual question improper for resolution on the pleadings. Mot., at 16. Defendants do not claim that Combs' bodyguard was not his agent or acting under his direction. Regardless, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor.  *Chambers v. Time Warner*, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

### ii.  Assault

Combs' and Pierre's attempts to strike Plaintiff constitute misdemeanors under N.Y. Penal Law §§ 110.01(Attempt to commit a crime), 120.00(1) (Assault in the third degree), and 120.15 (Menacing in the Third Degree). Specifically, Combs "swung his fist toward [Plaintiff's] face" (SAC ¶ 93) and Pierre "raised his hand and swung it towards [Plaintiff's] face." *Id.*[4]

///

---

[4] Pierre incorrectly claims that the SAC is the first time Plaintiff alleges that he attempted to strike her (Mot., at 17-18). These allegations are pled in the FAC. *See* FAC ¶ 110. Regardless, this weight of the evidence issue is immaterial at the pleading stage.

### iii.    Sexual Offenses

Combs' non-consensual groping of Plaintiff's buttocks and breast area (SAC ¶¶ 79-84) violated the TVPRA, 18 U.S.C. §1591.[5] *See* section II, *supra*.

### iv.    Forced Labor

Combs violated 18 U.S.C. § 1589. SAC ¶¶ 63–75, 108–116. *See* Section IV, *supra*. This conduct also constitutes a violation of NY Penal Law § 135.35 (Labor Trafficking), where a person compels labor by "using force or engaging in any scheme, plan, or pattern" to compel or induce a person to engage in labor by instilling a fear that the actor will "cause physical injury, serious physical injury, or death" or "engage in other conduct constituting a felony or unlawful imprisonment in the second degree."

### B.  <u>The GMVL Does Not Require a Serious Risk of Physical Injury</u>

Defendants' argument that the GMVL requires a plaintiff to plead a serious risk of physical injury misinterprets the statute's text. The serious risk requirement applies ***only*** where the alleged conduct constitutes a misdemeanor or felony "against *property*," not against "the person." *Baldwin v TMPL Lexington LLC*, 23 CIV. 9899 (PAE), 2024 WL 3862150, at *11 (SDNY Aug. 19, 2024) (Emphasis in the original.) This Court explained:

> Construing the text of the definition of a "crime of violence," the "serious risk of physical injury" requirement applies only when a GMVPA claim is premised on a "misdemeanor or felony against *property*" not against "the person." N.Y.C. Admin Code §1103 (emphasis added)..[t]his construction suggests that among the two alternative categories of predicate offenses, the qualifying clause—beginning with "if"—that contains the requirement of a "serious risk of physical injury" and that appears after the second category modifies only that category. Notably,

---

[5] Combs' nonconsensual touching of Plaintiff's intimate areas constitutes a violation of NY Penal Law § 130.52 (Forcible Touching) and § 130.55 (Sexual Abuse in the Third Degree. These Section 130 sexual offenses provide an alternate basis for Plaintiff's GMVL claim but are subject to the Second Circuit's preemption ruling. If the Court is inclined to find Plaintiff's GMVL claim insufficient based on the non-sexual offenses, Plaintiff asks the Court to stay Plaintiff's GMVL claim until the appeals are resolved.

courts interpreting the almost identical (albeit no longer operative) language in the VAWA construed it this way. *Id.* at *11 (internal citation omitted).

In their quoting of Section 10-1103, Defendants improperly omit the critical phrase "against property" through the use of an ellipsis. (Mot., at 16.)  Notwithstanding this misleading omission, and though Plaintiff need not allege a serious risk of physical injury, Plaintiff has alleged such facts. Two males attempting to strike a female presents a serious risk of physical injury, as does locking a person in a car for hours in the winter with no coat or heat. SAC ¶ 95.

### C. <u>Defendants' Crimes Were Motivated By Gender Animus</u>

"The term 'crime of violence motivated by gender' means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." N.Y.C. Admin Code § 10-1103. It is immaterial whether Combs or Pierre were also motivated by other factors; what matters is that gender animus was ***one of*** their motives – "due, ***at least in part***, to an animus based on the victim's gender." N.Y.C. Admin Code § 10-1103. (Emphasis added); *see also Hughes v Twenty-First Century Fox, Inc.*, 304 F Supp 3d 429, 455 (SDNY 2018).

Combs' pervasive gender animus is detailed throughout Plaintiff's complaint: Combs used gender-based insults such as "fat," "ugly," "bitches," and "hoes," controlled female artists' bodies and denied them basic nourishment (SAC ¶¶ 28-29; 3562, 64-65, 76, 86, 91-92), routinely beat his girlfriend, Ms. Ventura (SAC ¶¶ 48-50, 57-62, 69), held one-on-one meetings with Plaintiff in his underwear (SAC ¶ 44), left a female assistant stranded in the United Kingdom after a "gangbang" (SAC ¶ 86), and  hosted parties where he arranged for busloads of "exotic" young girls and plied them with alcohol and drugs to provide a sexual "buffet" for his guests. SAC ¶¶ 54, 56. Combs' hostility toward women further manifested in sexualized acts of domination, specifically, intruding into Plaintiff's changing room and groping her intimate areas without consent. SAC ¶¶ 79–82.

Pierre's gender animus is evident from his role as the enforcer of Combs' demands. In steadfastly reinforcing Combs' orders, refusing Plaintiff's pleas for help, and echoing Combs' threats (SAC ¶ 39-42), Pierre approved Combs' treatment of women, evidencing his own gender-based animus.

Underscoring their gender animus, Combs and Pierre attempted to assault Plaintiff in response to her rebuffing Combs' sexist tirade where he screamed "Where the fuck were you **bitches**? You **bitches** don't want to win…" SAC ¶¶ 91-92. Notably, only after a ***male*** (Plaintiff's father) arrived demanding to see Plaintiff did Pierre release Plaintiff from the locked vehicle. SAC ¶ 96. Pierre's responsiveness to a man's authority and indifference to the women's pleas underscore his gender animus toward women.

Plaintiff's allegations of groping and sexual touching plainly satisfy the animus requirement. Malice or ill will based on gender is apparent from the commission of the [sexual] act itself. *Breest v Haggis*, 180 AD3d 83, 94 (1st Dept 2019). "Animus inheres where consent is absent." *Id.* Plaintiff specifically alleged that she did not consent to these sexual acts. SAC ¶¶ 81, 83.

Of all the alleged acts of violence by Defendants, only **one** needs to plausibly allege the elements of the GMVL for the claim to proceed. Plaintiff has alleged multiple acts of violence that satisfy the elements of the GMVL. Defendants' attempts to downplay the sufficiency of these claims amounts to evidentiary disputes that are inappropriate at the pleading stage where Plaintiff need not prove any of the elements of a GMVL claim – only plausibly allege them. She has certainly done so. Plaintiff's GMVL claim should proceed.

## **CONCLUSION**

For all the reasons set forth above, this Court should deny Defendants' motion to dismiss in its entirety.

Dated: November 5, 2025

Respectfully submitted,

THE BLOOM FIRM

*/s/ Lisa Bloom*
Lisa Bloom
Arick Fudali
Yasmine Meyer
Alan Goldstein
Devin Meepos
26565 Agoura Road, Suite 200
Calabasas, CA 91302
(818) 934-7397
lisa@thebloomfirm.com
arick@thebloomfirm.com
yasmine@thebloomfirm.com
avi@thebloomfirm.com
devin@thebloomfirm.com

*Attorneys for Plaintiff Dawn
Angelique Richard*

IP LEGAL STUDIO, LLC

*/s/ Lisa Cervantes*
Lisa A. Cervantes
984 Surfbird Way
Oceanside, CA 92057
(323) 333-2553
iplegalstudio@gmail.com

*Attorney for Plaintiff Dawn
Angelique Richard*

## **CERTIFICATION**

The undersigned hereby certifies that the Opposition to Defendants' Motion to Dismiss complies with the 8,750-word limit set forth in Rule 7.1(c) of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York (the "Local Rules") and in Rule 4(B) of the Individual Rules of Practice in Civil Cases of the Hon. Katherine Polk Failla (the "Individual Rules"). The word count, exclusive of the caption, tables, and signature blocks, is 8,729 according to the word-processing system used to prepare the document.


Dated: November 5, 2025

                                         */s/ Lisa Bloom*_____
                                         Lisa Bloom