# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                     :

DEXTER WITHERS,                          :

                                 :

                 Plaintiff,        :

                                 :

          -v-               :         24 Civ. 8852 (JPC)

                                 :

SEAN COMBS, *et al.*,            :        OPINION AND ORDER

                                 :

                 Defendants.      :

                                 :

----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Dexter Withers, a Georgia resident, alleges that he was drugged and raped by Defendant Sean Combs, globally known by his stage name "P. Diddy," at a party in New York City in approximately 2022. He brings a single cause of action under New York City's Victims of Gender-Motivated Violence Protection Law (the "VGMVPL"), N.Y.C. Admin. Code §§ 10-1101 *et seq.*, against Combs, seven businesses that belong to Combs (the "Company Defendants"), ten anonymous organizations, and ten anonymous individuals. Combs and the Company Defendants (collectively, "Defendants") move to dismiss for failure to state a claim. Because Plaintiff has not plausibly alleged that Combs acted "due . . . to an animus based on the [Plaintiff's] gender," *id.* § 10-1103, an element of a cause of action under the VGMVPL, the Court dismisses the Amended Complaint. But if Plaintiff believes he can cure the pleading deficiencies discussed herein, he may file a further amended complaint.[1]

---

[1] The Court determines that oral argument is not necessary to resolve the motion to dismiss and thus denies Defendants' request for oral argument, Dkt. 47 ("Motion") (cover page stating "Oral Argument Requested").

## I. Background

### A. Facts[2]

In approximately 2022, Plaintiff, then thirty-nine years old, attended a party in New York City hosted by Combs.  Am. Compl. ¶¶ 36-37.  After drinking an alcoholic beverage served by someone at the party, Plaintiff began feeling disoriented, lost control of his body, and "blacked out."  *Id.* ¶¶ 38-39.  He believes Combs or Combs's agents laced his drink with drugs, "including but not limited to GHB and/or ecstasy," consistent with "a pattern of Combs and his agents/employees drugging unsuspecting victims in order to make it easier for Combs to sexually assault" them.  *Id.* ¶ 38.

Plaintiff awoke to find Combs "on top of him, sodomizing him" on a bed in a dark room.  *Id.* ¶ 40.  Still "severely disoriented," Plaintiff fought Combs off and escaped to a bathroom where he discovered that his anus was bleeding.  *Id.* ¶ 41.  Plaintiff then fled the party.  *Id.* ¶ 42.  The assault traumatized Plaintiff, who continues to suffer from severe emotional distress.  *Id.* ¶ 43.

### B. Procedural History

Plaintiff filed the initial Complaint on November 20, 2024, under a pseudonym.  Dkt. 1. On March 28, 2025, the Court denied Plaintiff's motion to appear anonymously and ordered Plaintiff to file an Amended Complaint with his true name.  *Doe v. Combs*, No. 24 Civ. 8852 (JPC), 2025 WL 950685, at *6 (S.D.N.Y. Mar. 28, 2025).  Plaintiff filed the Amended Complaint under his true name on April 8, 2025, dropping one entity purportedly associated with Combs but without

---

[2] The Court takes these allegations from the Amended Complaint, Dkt. 51 ("Am. Compl."). In considering Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the Amended Complaint's factual allegations as true and draws all reasonable inferences in Plaintiff's favor.  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  For the avoidance of doubt, the Court emphasizes that its recitation of Plaintiff's allegations does not reflect any factual findings made by the Court.  These allegations are merely assumed true for purposes of resolving Defendants' motion to dismiss.

otherwise altering the pleading. Dkt. 51.[3]  The Amended Complaint's sole count alleges that Defendants violated the VGMVPL.  Am. Compl. ¶¶ 44-54.  Plaintiff alleges that Combs committed a "crime of violence motivated by gender" within the meaning of the VGMVPL, *id.* ¶ 45, and that the Company Defendants "enabled and conspired with Combs" to violate the VGMVPL, *id.* ¶¶ 47-50.  Plaintiff elaborates that the Company Defendants should face liability because Combs assaulted Plaintiff at a party related to their businesses, and because they failed to protect Plaintiff from a known danger, failed to properly supervise, and placed Combs "in positions of power and authority" even though they knew or should have known of his practice of committing sexual assaults, including on premises that they owned or operated.  *Id.* ¶¶ 47-50.  Plaintiff seeks, *inter alia*, compensatory and punitive damages, attorneys' fees, and costs.  *Id.* at 17-18.

On April 1, 2025, Defendants filed a motion to dismiss the initial Complaint, *see* Dkts. 45-47, which the Court applies to the Amended Complaint, given that the latter did not substantively alter the original Complaint's pleadings.  Plaintiff opposed the motion on April 30, 2025, Dkt. 54 ("Opposition"), and Defendants submitted their reply on May 23, 2025, Dkt. 55 ("Reply").  On October 27, 2025, Defendants filed a letter advising the Court of a ruling in their favor with respect to the Company Defendants' liability in *Kelly v. Combs*, No. 24 Civ. 8024 (VEC), 2025 WL 2978058 (S.D.N.Y. Oct. 22, 2025).  Dkt. 56.

## II.  Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court

---

[3] Plaintiff voluntarily dismissed Bad Boy Records LLC on February 27, 2025.  Dkt. 32.

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

### III. Applicable Law

Defendants' motion turns on the proper construction of the VGMVPL. In interpreting any statute, the Court starts with its plain text and "giv[es] the statutory terms their ordinary or natural meaning." *United States v. Lockhart*, 749 F.3d 148, 152 (2d Cir. 2014) (citation modified), *aff'd*, 577 U.S. 347 (2016); *accord Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 696 N.E.2d 978, 980 (N.Y. 1998) ("In construing statutes, it is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning." (citation modified)). "When the language of a statute is unambiguous, judicial inquiry is complete." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 290 (2d Cir. 2002) (citation modified).

First enacted in 2000, the VGMVPL creates a private right of action for injured victims of "a crime of violence motivated by gender," N.Y.C. Admin. Code § 10-1104, which the statute defines as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender," *id.* § 10-1103.[4] In passing that law, the

---

[4] A "crime of violence," in turn, is defined as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would

4

City Council employed the exact language of the federal Violence Against Women Act ("VAWA"), 42 U.S.C. § 13981 (2000), which the Supreme Court had recently invalidated for exceeding the limits of the U.S. Constitution's Commerce Clause, *see United States v. Morrison*, 529 U.S. 598 (2000); U.S. Const. art. I, § 8, cl. 3. *See* N.Y.C. Admin. Code § 10-1102 ("Declaration of legislative findings and intent" explaining the VGMVPL fills "the void left by the [S]upreme [C]ourt's decision"); *see also* Civil Rights Remedies for Gender-Motivated Violence Act, Pub. L. No. 103-322, § 40301, 108 Stat. 1796, 1941 (1994), *invalidated by*, *Morrison*, 529 U.S. 598. Defendants do not dispute that Combs's alleged rape of Plaintiff would constitute a "crime of violence" under the VGMVPL and that Plaintiff alleges injury. *See* Motion at 3. So for purposes of resolving their motion, the Court need only construe the meaning of "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." N.Y.C. Admin. Code § 10-1103.

That provision sets out two independent conditions that a plaintiff must satisfy to establish a defendant's liability under the VGMVPL. *See Black v. Nunwood, Inc.*, No. 13 Civ. 7207 (GHW), 2015 WL 1958917, at *4 (S.D.N.Y. Apr. 30, 2015) (interpreting New York law and noting the "basic canon of statutory construction that the term 'and' joins a conjunctive list"). First, the defendant must have committed the crime of violence "because of gender or on the basis of gender." N.Y.C. Admin. Code § 10-1103. This looks at whether gender, generally, was the basis for the crime. The Court will refer to this first condition as the "causal-factor clause." Second, the defendant must have committed the crime "due, at least in part, to an animus based on the

---

constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction." N.Y.C. Admin. Code § 10-1103.

victim's gender." *Id.* This entails an evaluation of the defendant's feelings towards the victim's gender. The Court will refer to this second condition as the "animus clause."

While the word "animus" has multiple definitions, the most suitable one here is "[a] feeling of animosity" or "ill will." *Animus*, The American Heritage Dictionary of the English Language (4th ed. 2000). Another plausible but ultimately inapplicable definition is "[a]n attitude that informs one's actions" or a "disposition." *Id.*; *see Animus*, Merriam-Webster's Collegiate Dictionary (10th ed. 1998) (defining "animus" as "1. basic attitude or governing spirit: DISPOSITION, INTENTION," and "2. a usu[ally] prejudiced and often spiteful or malevolent ill will"); *Animus*, Black's Law Dictionary (7th ed. 1999) ("1. [i]ll will; animosity" and "2. [i]ntention").

Because "every part of a statute is to be given effect and meaning," *Ivey v. State*, 606 N.E.2d 1360, 1363 (N.Y. 1992), courts should avoid "statutory construction[s] which render[] one part meaningless." *Wang v. James*, 227 N.E.3d 323, 327 (N.Y. 2023) (citation modified). Construing "animus" to mean "ill will," rather than an "attitude that informs one's actions" or a "disposition," gives effect to both of the provision's clauses. Under that construction, the causal-factor clause first asks whether gender was the basis for the crime, while the animus clause then asks whether the defendant was (at least partly) driven by hostility based on the victim's gender. By contrast, construing "animus" to mean a general "disposition" or "intention" largely collapses those two inquiries. That is because, if the animus clause requires only that a defendant act "due . . . to" a disposition or intention based on the victim's gender, then satisfying the animus clause would usually—if not always—satisfy the causal-factor clause's lone requirement that gender be the basis for the crime, thus watering down the causal-factor clause's independent meaning. And conversely, it would be "redundant to say that a crime is committed 'because of

6

gender or on the basis of gender' [(*i.e.*, the causal-factor clause)] and that the crime is due in part because of animus based on gender [(*i.e.*, the animus clause)], where animus is defined as an 'attitude or governing spirit' based on the victim's gender." *Breest v. Haggis*, 115 N.Y.S.3d 322, 330 (1st Dep't 2019). Thus, to give full effect to all the words of the VGMVPL, the Court construes the animus clause to require a showing of "ill will" towards the victim's gender. *See id.* at 330 (defining "animus" for purposes of the VGMVPL to mean "malice or ill will"); *id.* at 331-32 (Tom, J.P., concurring) (defining animus as "hostility"). *But see Crisonino v. N.Y.C. Hous. Auth.*, 985 F. Supp. 385, 391 (S.D.N.Y. 1997) (referring to "animus" as "[i]ntent" when interpreting the identical language in the VAWA).

Unfortunately, further understanding of the VGMVPL's animus clause cannot be discerned from caselaw interpreting the VAWA. Though the VGMVPL's text is identical to the VAWA's, caselaw interpreting the latter during the six years when that statute was operative does not clarify the VGMVPL's meaning. To be sure, when one statute "transplant[s]" text "from . . . other legislation, it brings the old soil with it." *Hall v. Hall*, 584 U.S. 59, 73 (2018) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 537 (1947)). But that principle "applies only when the term's meaning was 'well-settled' before the transplantation." *Kemp v. United States*, 596 U.S. 528, 539 (2022) (citation modified). Constructions of the VAWA were varied greatly by the time the Supreme Court invalidated it in 2000. *See* J. Rebekka S. Bonner, Note, *Reconceptualizing VAWA's "Animus" for Rape in States' Emerging Post-VAWA Civil Rights Legislation*, 111 YALE L.J. 1417, 1439-48 (2002) (surveying federal courts' "nonuniform" interpretations of the VAWA and characterizing them as "confused and muddied"). For example, some courts construed animus to mean intent or motivation, *see, e.g.*, *Crisonino*, 985 F. Supp. at 391; *Culberson v. Doan*, 65 F. Supp. 2d 701, 705-06 (S.D. Ohio

7

1999); *Wesley v. Don Stein Buick, Inc.*, 42 F. Supp. 2d 1192, 1204-05 (D. Kan. 1999), whereas others read it to mean hostility, *see, e.g.*, *Jugmohan v. Zola*, No. 98 Civ. 1509 (DAB), 2000 WL 222186, at *4 (S.D.N.Y. Feb. 25, 2000), and yet at least one other interpreted it as "a strong emotion," *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000) ("[A]nimus . . . is not necessarily overt hostility . . . .  [I]t is sufficient if a strong emotional response to the victim's gender or sexual identity is partly the cause of the assault.").  And of immediate relevance to this case, courts divided over whether animus must be assessed on a case-by-case basis or if all rapes and sexual assaults categorically satisfy the statute.  *Compare, e.g.*, *id.* at 1202-03 (categorical approach), *with, e.g.*, *Braden v. Piggly Wiggly*, 4 F. Supp. 2d 1357, 1361-62 (M.D. Ala. 1998) (case-by-case approach), *and Anisimov v. Lake*, 982 F. Supp. 531, 541 (N.D. Ill. 1997) (same).  With the VAWA's soil so muddy, the City Council cannot be said to have incorporated any specific meaning of the VAWA into the VGMVPL.

Thus, the Court begins by laying out the elements of a claim under the VGMVPL: a plaintiff must adequately allege that (1) the defendant committed a crime of violence as defined in Section 10-1103, *see supra* n.4, (2) the defendant's act was "committed because of" or "on the basis of" gender, (3) that act was due, at least in part, to ill will based on the plaintiff's gender, and (4) the act resulted in injury.  What suffices to establish that the crime was committed due to ill will based on the plaintiff's gender is explored below.

## IV.  Discussion

### A.    The Amended Complaint Fails to State a Claim Against Combs.

Defendants do not dispute that Plaintiff's allegation that Combs sodomized him while unconscious plausibly pleads a "crime of violence" for purposes of the VGMVPL.  *See* Am. Compl. ¶ 40; *see also* N.Y. Penal L. § 130.35 (defining rape in the first degree).  Nor do they

8

dispute that Plaintiff plausibly alleges physical injury resulting from that attack. *See* Am. Compl. ¶¶ 41, 43. At issue is the sufficiency of Plaintiff's allegations with respect to the second and third elements: whether that crime of violence was "committed because of" or "on the basis of" gender and whether the crime was due, at least in part, to animus based on Plaintiff's gender. N.Y.C. Admin. Code § 10-1103; *see* Motion at 3 ("Plaintiff has failed to allege that the alleged misconduct was perpetrated because of plaintiff's gender and in part because of an animus against plaintiff's gender." (citation modified)).

Like with the VAWA, *see supra* III, courts have "struggled with how to determine defendants' motivation and animus" under the VGMVPL for a long time. *Baldwin v. TMPL Lexington LLC*, No. 23 Civ. 9899 (PAE), 2024 WL 3862150, at *13 (S.D.N.Y. Aug. 19, 2024) (quoting *Doe v. Olive Leaves, Inc.*, No. 18 Civ. 5734 (HG) (TAM), 2024 WL 3048373, at *11 (E.D.N.Y. Feb. 16, 2024)). "Some interpreted gender animus to require that plaintiffs show extrinsic evidence of the defendant's expressed hatred toward[, *e.g.*,] women as a group," while "others applied the totality of the circumstances analysis borrowed from Title VII requiring that gender-based animus be shown through actions and statements by the perpetrator during the commission of the alleged crime of violence." *Id.* (citation modified).

Plaintiff advocates another path, one articulated by the New York Appellate Division, First Department, in *Breest*: a categorical approach that requires neither extrinsic evidence of the perpetrator's gender-based animus nor allegations of actions or statements by the perpetrator during the commission of the offense reflecting such animus. Opposition at 3-4. Rather, according to Plaintiff, the alleged rape, on its own, "clearly demonstrate[s] gender-based animus[] both on its face" and under *Breest*. *Id.* at 4; *see also id.* at 3 ("Courts have repeatedly held that sexual violence *inherently* demonstrates gender-based animus." (emphasis added)).

9

This Court declines to adopt such a categorical approach, which would treat all rapes and sexual assaults as automatically demonstrating gender-based animus. First, this Court is persuaded that the New York Court of Appeals would reject a broad categorical holding based on principles of statutory construction. Next, because *Breest* does not control, the Court turns to whether Plaintiff pleads sufficient facts to allege that Combs acted "due . . . to an animus based on [his] victim's gender." N.Y.C. Admin. Code § 10-1103. Because those statutory terms must be given meaning and the Amended Complaint is bereft of any factual allegations indicating such animus, the Court dismisses the Amended Complaint, but grants Plaintiff leave to amend should he be able to file a second amended complaint that pleads sufficient facts showing animus based on his gender.

1.    **The Court Declines to Follow *Breest* Because a Categorical Construction of the Animus Clause Creates Superfluity.**

Plaintiff argues that the First Department in *Breest* held that all rapes and sexual assaults categorically meet the second and third elements of the VGMVPL, and that such a categorical approach must be applied here as well. Opposition at 3-4. Defendants respond that *Breest*'s holding covers only opposite-sex rapes and sexual assaults, so Combs's alleged rape of another man does not necessarily mean that he acted out of "an animus based on [his] victim's gender," N.Y.C. Admin. Code § 10-1103. Motion at 5 n.3; Reply at 1-2.

Assuming without deciding that Plaintiff's reading of *Breest* is correct, this Court nevertheless departs from that decision. "Decisions of New York's intermediate appellate courts are helpful indicators of how the Court of Appeals would decide, but [federal courts] are not strictly bound by decisions of the Appellate Division, particularly when [federal courts] have persuasive data that the Court of Appeals would decide otherwise." *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007) (citation modified). This Court believes that the New York Court

10

of Appeals would reject *Breest*'s categorical approach because it is incompatible with the statutory text. Indeed, it would render superfluous certain of the VGMVPL's text.

In *Breest*, the plaintiff, a female, alleged that a male professional acquaintance sexually assaulted and raped her. 115 N.Y.S.3d at 324-25. The First Department focused on only the third element of a VGMVPL violation: whether those plausible allegations of sexual assault and rape were adequate to allege a crime of violence "due, at least in part, to an animus based on the victim's gender." *Id.* at 326 (quoting N.Y.C. Admin. Code § 10-1103).[5] The court answered in the affirmative, holding that the plaintiff's allegations of rape and sexual assault, without further factual allegations going towards animus, satisfied the VGMVPL's third element. *Id.* at 330 ("[P]laintiff's claims . . . that she was raped and sexually assaulted are sufficient to allege animus on the basis of gender. She need not allege any further evidence of gender-based animus.").

The lack of consent was central to the First Department's analysis. As an initial matter, the *Breest* court construed animus to mean "malice or ill will." *Id.* The court then explained that "[a]nimus inheres where consent is absent"—that is, animus is a necessary condition of non-consent. *Id.* It also stated that "[r]ape and sexual assault are, by definition, actions taken against the victim without the victim's consent." *Id.* Therefore, the court reasoned, rape and sexual assault necessarily involve animus (*i.e.*, malice or ill will). *See id.* ("Malice or ill will based on gender is apparent from the alleged commission of the act itself."). But what is that animus based on? The *Breest* court said only that the animus is "based on gender." *Id.* The court did not say that the animus is based on *the victim's* gender, as the statute requires. N.Y.C. Admin. Code § 10-1103

---

[5] The parties in *Breest* did not dispute that the alleged rape and sexual assault were "committed because of" or "on the basis of" gender, thereby satisfying the second element of the VGMVPL. 115 N.Y.S.3d at 325-26 (quoting N.Y.C. Admin. Code § 10-1103). The plaintiff's allegations also met the first and fourth elements: the commission of a crime of violence and resulting injury. *Id.*

11

(requiring that the defendant acted out of "an animus based on *the victim's* gender" (emphasis added)).

*Breest*'s categorical approach, without a specific inquiry into whether the perpetrator's animus was based at least partly on the victim's gender, is incompatible with the VGMVPL's text and thus contrary to established principles of statutory interpretation in New York.  New York's highest court has directed that "an interpretation that renders words or clauses superfluous should be rejected."  *Mestecky v. City of New York*, 88 N.E.3d 365, 367 (N.Y. 2017); *see Alvarez v. Annucci*, 187 N.E.3d 1032, 1040 (N.Y. 2022) (Wilson, J., dissenting) (collecting cases articulating New York's anti-superfluity and anti-redundancy canons).  A categorical approach fashioned out of the principle that rapes and sexual assaults always involve "[m]alice or ill will based on gender," *Breest*, 115 N.Y.S.3d at 330, and thus always satisfy the statute, reads the words "the victim's gender" out of the animus clause, N.Y.C. Admin. Code § 10-1103, rendering that statutory language superfluous.  The court in *Breest* simply did not grapple with the phrase "based on the victim's gender," let alone provide any grounds for implying that all rapes and sexual assaults necessarily give rise to an inference that *the victim's* gender was partly the basis for the perpetrator's animus.  N.Y.C. Admin. Code § 10-1103.  Its reading eliminates the victim's gender from the analysis despite the legislature's clear intent, reflected in the statutory text, that it be considered.  *Cf. United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used.").  The New York Court of Appeals would therefore probably reject *Breest*'s reading of the provision.

Indeed, if any categorical approach is appropriate with respect to rapes and sexual assaults, it falls within the causal-factor clause's ambit, not the animus clause's, as rapes and sexual assaults definitionally are "committed . . . on the basis of gender."  N.Y.C. Admin. Code § 10-1103; *see*

N.Y. Penal L. § 130.00 (defining terms for the Penal Law's article on Sex Offenses); *id.* § 130.35 (defining rape in the first degree); *id.* § 130.95 (defining predatory sexual assault).[6] This is also the view of then-Associate Justice Peter Tom, who in concurring in *Breest* criticized the majority opinion as "conflat[ing] . . . two somewhat different showings": "that gender was the reason for the sexual assault," as is "obviously" the case with rape, and that "an animus—a hostility—against the victim related to *her gender*, not the female gender generally, . . . motivated the sexual assault." 115 N.Y.S.3d at 332 (Tom, J.P., concurring). And though the majority baldly asserted that non-consensual sexual acts "violat[e] . . . the victim's bodily autonomy and . . . express[] . . . the perpetrator's contempt for that autonomy," it did not explain the connection, if any, between "bodily autonomy" and gender or why "the perpetrator's contempt" is necessarily based on the victim's gender. *Id.* at 330.[7]

Based on the New York Court of Appeals' repeated instruction to reject interpretations that render statutory phrases superfluous, *Mestecky*, 88 N.E.3d at 367; *see Alvarez*, 187 N.E.3d at 1040 (Wilson, J., dissenting), this Court is persuaded that New York's highest court would not read into the VGMVPL a categorical rule for rapes and sexual assaults that would disregard the "based on

---

[6] Of course, that rapes and sexual assaults are categorically "crime[s] of violence committed because of gender or on the basis of gender," N.Y.C. Admin. Code § 10-1103, is not to say that they are the *only* acts that satisfy the causal-factor clause.

[7] The First Department in *Breest* also noted that "[t]he legislative history of [the VGMVPL] does not invoke the 'not all rapes' language from VAWA's legislative history." 115 N.Y.S.3d at 329. But the court did not explain how the VGMVPL's legislative history can overcome its plain statutory text. *Cf. id.* at 329 n.10 (acknowledging that while "the City Council made certain changes to the VAWA civil rights cause of action," it "incorporated the animus provision verbatim from VAWA," so the court was "not free to ignore" that provision). Similarly, the court in *Breest* referred to the City Council's hearing minutes that "reflect the Council's intent" that the VGMVPL should cover "transgender, gay[,] and lesbian victims of gender-based violence." *Id.* at 326 n.1. Putting aside that such an intent would not necessarily reflect a categorical approach to same-sex rapes and sexual assaults, *see infra* IV.A.2, minutes from a City Council hearing are a particularly unreliable indicator of legislative intent and certainly cannot overcome a statute's text.

the victim's gender" language of the statute's animus clause.  Therefore, the Court is not bound to follow a reading of *Breest* that such a categorical rule applies, and *Breest* thus does not dispose of Defendants' motion.[8]

### 2.     Plaintiff Fails to Plead Facts Permitting a Reasonable Inference of Animus Based on His Gender.

Having determined that *Breest* does not control, the Court must predict how the New York Court of Appeals would address this issue.  *Donohue v. Hochul*, 32 F.4th 200, 207 (2d Cir. 2022) ("Absent law from a state's highest court, a federal court sitting in diversity . . . has to predict how the state court would resolve an ambiguity in state law." (citation modified)).  This Court predicts that the New York Court of Appeals would interpret "due, at least in part, to an animus based on the victim's gender," N.Y.C. Admin. Code § 10-1103, such that the Amended Complaint fails to plead sufficient facts to satisfy that element.

As noted above, *supra* IV.A, the allegations in the Amended Complaint plainly satisfy the first (crime of violence) and fourth (injury) elements of a VGMVPL violation.  This Court also has no pause in concluding that the alleged rape is a crime that was "committed because of gender or on the basis of gender."   N.Y.C. Admin. Code § 10-1103; *see* N.Y. Penal L. § 130.35(3) (defining rape in the first degree); *Breest*, 115 N.Y.S.3d at 332 (Tom, J.P., concurring) (explaining

---

[8] In reaching this conclusion, the Court respectfully departs from courts in this District that have previously applied *Breest*'s categorical rule. *See, e.g.*, *Cooper v. Tisci*, No. 25 Civ. 4758 (LAK), 2025 WL 3470022, at *8 (S.D.N.Y. Dec. 3, 2025) (extending *Breest*'s categorical rule to allegations of male-on-male sexual assault); *Baldwin*, 2024 WL 3862150, at *13 (applying *Breest*'s categorical rule to opposite-sex forcible touching).  The one time this Court previously applied *Breest* is distinguishable, as the complaint in that case contained several allegations of malice or ill will towards the plaintiff's gender in addition to rape and sexual assault allegations. *See Doe v. Gross*, No. 23 Civ. 6325 (JPC), 2024 WL 3729007, at *1-2 (S.D.N.Y. Aug. 7, 2024) (describing, *inter alia*, the defendant's comments about the plaintiff's sexuality).

that for rape, gender is "obviously" the "reason for the sexual assault"). That meets the causal-factor clause, the VGMVPL's second element.

For reasons previewed above, however, the third element—animus—is not adequately pleaded. Defendants argue, first, that the Amended Complaint fails to plausibly allege "an animus based on the victim's gender" under the fact-based approach and, second, that the Court should not apply a categorical approach to the animus clause for all allegations of same-sex rape. *See* Motion at 3-5, 5 n.3; Reply at 2.

Starting with the fact-based approach, the Court agrees that Plaintiff fails to plead sufficient facts. The Amended Complaint does not "present extrinsic evidence of [Combs's] expressed hatred toward [men, *i.e.*, Plaintiff's gender] as a group or allege specific actions and statements by [Combs] during the commission of the alleged crime of violence" indicating that he harbored ill will based on Plaintiff's male gender. *Rossbach v. Montefiore Med. Ctr.*, No. 19 Civ. 5758 (DLC), 2021 WL 930710, at *10 (S.D.N.Y. Mar. 11, 2021) (citation modified); *see, e.g.*, *Doe v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 7773 (OEM), 2024 WL 3553435, at *8 (E.D.N.Y. July 26, 2024) (finding animus based on "the use of misogynistic language"); *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018) (collecting cases that dismissed claims "based on the plaintiff's failure to state any facts showing that [the] defendant's alleged acts demonstrated any hostility based on gender" (citation modified)); *Roelcke v. Zip Aviation, LLC*, No. 15 Civ. 6284 (DAB), 2018 WL 1792374, at *13 (S.D.N.Y. Mar. 26, 2018) (finding animus because the defendant "use[d] . . . gendered terms while assaulting" the plaintiff). And in discussing Combs's history of sexual assaults and violence, Am. Compl. ¶¶ 7-21, the Amended Complaint alleges that he targeted men and women alike, not that he harbored malice towards men like Plaintiff because of their gender. *See id.* ¶¶ 7 (alleging a "persistent and pervasive pattern of abuse towards women,

15

men, and minors"), 21 (alleging that Combs's history "establishes that his actions are motivated by gender—both men and women," reflects his "profound contempt for women and a desire to dominate both minors and other men," and "shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women, and children").  Though the Amended Complaint asserts that Combs's abusive "practices and desires are different for men, women, and children," *id.* ¶ 21, it pleads no facts showing how his conduct towards Plaintiff differed based on his gender, why any such differences were the result of animus towards males, or how animus based on Plaintiff's gender led to Combs's alleged abuse of him.

Without specific factual allegations showing animus based on Plaintiff's gender, the Amended Complaint can avoid dismissal only if the Court can infer that kind of animus merely from the alleged rape itself, as the First Department did with respect to the allegations of male-on-female rape and sexual assault in *Breest*.  *See* Opposition at 4 (contending that Combs's sexual violence "clearly demonstrate[s] gender-based animus" and further arguing that Plaintiff is not required "to show animus directed at an entire gender group").  Defendants counter that although it may be reasonable to infer that "a man who sexually assaults a woman thereby expresses an animus towards women, it does not necessarily follow that a man assaulting a man is doing so out of a self-loathing hatred of his own gender."  Motion at 5 n.3.

The Court declines to adopt a categorical approach to instances of same-sex rape or sexual assault with respect to the animus clause.  As discussed above, such a categorical reading would render the animus clause of the VGMVPL superfluous.  *See* IV.A.1.  Further, even if the First Department in *Breest* was correct that a man's rape or sexual assault of a woman necessarily implies his animus based on her gender (a finding that this Court does not necessarily endorse), it does not follow that a man's sexual assault of another man implies the same gender-based animus.

16

Plaintiff does not put forward any argument, separate from merely pointing to *Breest*, indicating that the VGMVPL or caselaw demands, or even supports, such an inference. *See* Opposition at 3-4. To be sure, a man who sexually assaults another man almost certainly has ill will towards his victim, but the fact that the victim is a man is not necessarily a reason for the assailant's hostility.

Without alleging facts indicating that Plaintiff's gender gave rise to Combs's animus, Plaintiff fails to adequately allege that Combs's conduct was "due, at least in part, to an animus based on [his] victim's gender," N.Y.C. Admin. Code § 10-1103, notwithstanding how egregious and appalling that alleged conduct may be. *See Hughes*, 304 F. Supp. 3d at 455. The Amended Complaint thus fails to adequately plead the third element of a cause of action under the VGMVPL, so Plaintiff's claim fails.

Accordingly, the Court grants Defendants' motion to dismiss as to Combs. This conclusion by no means deprives all victims of same-sex "crime[s] of violence motivated by gender" the protection of the VGMVPL. Nothing in the statute's text limits the right of action to any particular sex or to opposite-sex crimes. *See* N.Y.C. Admin. Code §§ 10-1103, 10-1104. But the statute's text *does require* that the crime be "due . . . to an animus based on the victim's gender." *Id.* § 10-1103. Victims thus must plausibly allege the requisite gender-based animus to sufficiently state a claim. In the event Plaintiff believes that he can plausibly allege additional facts to establish Combs's animus based on his gender, the Court will allow him to file a second amended complaint.[9]

---

[9] Plaintiff has not requested leave to amend, but "it is within the Court's discretion to *sua sponte* grant leave to amend." *In re Bystolic Antitrust Litig.*, 583 F. Supp. 3d 455, 496 (S.D.N.Y. 2022) (citation modified); *see Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (stating that the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)").

**B.      The Amended Complaint Fails to State a Claim Against the Company Defendants.**

The VGMVPL allows for indirect liability against a party that "directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104.  Plaintiff's theory of liability for the Company Defendants is premised on Combs's direct liability under the VGMVPL.  *See* Am. Compl. ¶¶ 47-50.  For the reasons stated above, *supra* IV.A, the Amended Complaint fails to allege that Combs violated the VGMVPL.  Since the Company Defendants cannot be indirectly liable under that statute based on Plaintiff's allegations, the Amended Complaint also is dismissed with respect to them, but Plaintiff is similarly granted leave to amend as to those Defendants.

## V.  Conclusion

For the foregoing reasons, Defendants' motion is granted and the Amended Complaint is dismissed without prejudice.  Because it may be possible for Plaintiff to address the pleading deficiencies discussed above through additional factual allegations, the Court will allow Plaintiff to amend his pleading once again.  Accordingly, within fourteen days of this Opinion and Order, Plaintiff may file a second amended complaint if he believes that pleading additional facts will fix the defects identified herein.

The Clerk of Court is respectfully directed to close Docket Number 45.

SO ORDERED.

Dated: March 30, 2026
　　　 New York, New York

_____
JOHN P. CRONAN
United States District Judge